**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CASA SYSTEMS, INC., *et al.*,[1] | Case No. 24-10695 (KBO) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING
DEBTORS' LIMITED USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO SECURED LENDER,
(III) MODIFYING AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this motion (the "<u>Motion</u>"):[2]

## <u>RELIEF REQUESTED</u>

1.    The Debtors seek entry of an order (the "<u>Proposed Order</u>"), substantially in the form

attached hereto as **<u>Exhibit A</u>**, granting, among other things, the following relief:

    a.    authorizing, but not directing, the Debtors to:

        i.    use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>"), solely in accordance with the terms of the Proposed Order annexed hereto as **<u>Exhibit A</u>**;

        ii.    subject to the Carve-Out, granting and affirming the adequate protection being provided to the Prepetition Secured Parties (as defined below);

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are Casa Systems, Inc. (8867), Casa Systems Securities Corporation (1151), and Casa Properties LLC (6767). The Debtors' service address is 100 Old River Road, Andover, MA 01810.

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Edward Durkin in Support of Chapter 11 Petitions and First Day Pleadings* and the *Declaration of Brian Whittman in Support of the Debtors' Motions to Use Cash Collateral, Approve Bidding Procedures, and Approve the Cloud/RAN Sale, and Other First Day Pleadings,* as applicable (collectively, the "<u>First Day Declarations</u>"), filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the First Day Declarations, as applicable.

      iii.    modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Proposed Order;

      iv.    waive any applicable stay with respect to the effectiveness and enforceability of the Proposed Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

    b.   granting related relief.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion, to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal bases for the relief requested in this Motion are sections 105, 361, 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2.

## BACKGROUND OF THE DEBTORS

5.      The Debtors operate a global communications technology business that offers end-to-end physical, virtual, and cloud-native 5G infrastructure and customer premise networking equipment solutions. These solutions, in turn, enable the Debtors' customers to transform and

expand their public and private high-speed data and multi-service communications networks. The Debtors' solutions are commercially deployed in over 70 countries by more than 475 customers, including regional as well as some of the world's largest Tier 1 communications service providers, serving millions of subscribers globally.

6.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under sections 101–1532 of the Bankruptcy Code in the Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

7.      Additional information regarding the Debtors' business, capital structure, and the circumstances preceding the Petition Date may be found in the First Day Declarations.

## BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2 CONCISE STATEMENTS

8.      Pursuant to Bankruptcy Rules 4001(b) and (d) and Local Rule 4001-2(a), the Debtors submit the following concise statement of the material terms of the Proposed Order.

| Summary of Material Terms | | Location |
|---|---|---|
| **Parties with an Interest in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | The Prepetition Agents, for themselves and on behalf of the lenders from time to time party thereto (such lenders, the "Prepetition Lenders" and, together with the Prepetition Agents, the "Prepetition Secured Parties"). | ¶ E |
| **Purposes for Use of Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | To provide working capital and funding for general corporate purposes and to pay certain costs of administration of these cases. | ¶ F(ii) |
| **Cash Collateral Budget**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | A 10-week cash distribution and receipts budget (the "Cash Collateral Budget") is attached as Exhibit 1 to the Proposed Order. The Budget is subject to Permitted Variances as set forth in Paragraph 3 of the Proposed Order. | ¶ 3 |
| **Termination Events**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii), Local Rule 4001- | Unless a Termination Event is waived by the Superpriority Agent (acting at the direction of the Required Consenting Term Loan Lenders) in writing, subject to the applicable notice periods and other terms set forth in paragraph 11 of the Proposed Order, the Debtors' right to use Cash Collateral shall terminate, without prior | ¶ 10 |

| Summary of Material Terms | | Location |
|---|---|---|
| 2(a)(i)(M) | order of this Court or any further action by the Prepetition Secured Parties, on the earliest to occur of any of the following (each, a "<u>Termination Event</u>"): | |

order of this Court or any further action by the Prepetition Secured Parties, on the earliest to occur of any of the following (each, a "<u>Termination Event</u>"):

- The Debtors' failure to comply with any material provision of the Interim Order and such failure to comply (if curable) shall not have been cured within three (3) business days after provision of notice of such failure from the Superpriority Agent;
- the Debtors shall have breached the Variance Covenant for any Testing Period with respect to an Approved Budget;
- the failure of the Debtors to make any payment due under the Interim Order within five (5) business days after such payment becomes due;
- the date of the Debtors' filing of an application, motion, or other pleading seeking to amend, modify, reverse, revoke, stay, rescind, vacate, supplement, or extend the Interim Order without the prior written consent of the Required Consenting Term Loan Lenders;
- the Interim Order ceases, for any reason to be in full force and effect;
- the Court shall have entered an order amending, reversing, revoking, staying, rescinding, vacating, supplementing, extending, or otherwise modifying the Interim Order in any material respect without the consent of the Required Consenting Term Loan Lenders;
- the date of the Debtors' filing of any application, motion, or other pleading seeking approval of debtor in possession financing without the consent of the Required Consenting Term Loan Lenders, or the entry of an order approving debtor in possession financing for the Debtors without the consent of the Required Consenting Term Loan Lenders;
- the entry of any postpetition judgment against the Debtors in excess of $500,000
- except with respect to applications for the payment of fees of Retained Professionals, the date an application, motion, or other pleading is filed by the Debtors for the approval of any superpriority claim or any lien that is *pari passu* with or senior to the Adequate Protection Claims, the Adequate Protection Liens, the Prepetition Liens or the Prepetition Secured Obligations without the prior written consent of the Required Consenting Term Loan Lenders;
- the date any of the Debtors or any affiliate of the Debtors files any pleading or commences any action against any Prepetition Secured Party challenging the validity or enforceability of any of the Prepetition Secured Obligations or any of the Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition Secured Parties arising under or related to any of the Prepetition Secured Obligations;
- the date any court enters an order dismissing these chapter 11 cases, converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (each, a "<u>Successor Case</u>"), appointing a chapter 11 trustee in any of these chapter 11 cases, or an examiner with expanded powers relating to the operation

| Summary of Material Terms | | Location |
|---|---|---|
| | of the Debtors or administration of any of these chapter 11 cases, or terminates the Debtors' exclusive periods under Bankruptcy Code section 1121, unless, in each case, consented to in writing by the Required Consenting Term Loan Lenders;<br>• the Court has entered an order granting relief from the automatic stay in order to permit any party to proceed against any Prepetition Collateral or Adequate Protection Collateral with a fair market value in excess of $500,000;<br>• the Restructuring Support Agreement shall have been terminated in accordance with its terms; and<br>• the Milestones (defined below) are not met, unless extended or waived by the Required Consenting Term Loan Lenders (as defined in the Restructuring Support Agreement). | |
| **Adequate Protection Provided for Use of Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iv) | The Prepetition Secured Parties are entitled to adequate protection of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), to the extent of any Diminution in Value of their interests therein.  As adequate protection, the Prepetition Agents, for the benefit of the Prepetition Secured Parties, are hereby granted the following Adequate Protection Obligations:<br>• <u>Superpriority Adequate Protection Liens</u>. To the extent of any Diminution in Value of their interests in the Prepetition Collateral, the Superpriority Agents, for the benefit of the Superpriority Secured Parties, are hereby granted (effective and automatically perfected upon the Petition Date and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements), additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "<u>Superpriority Adequate Protection Liens</u>") any and all tangible and intangible pre- and postpetition property of the Debtors, whether existing before, on or arising after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, goods, investment property, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under Bankruptcy Code section 552(b) or otherwise, of all the foregoing, excluding causes of action under chapter 5 of the Bankruptcy Code ("<u>Avoidance Actions</u>") but, upon entry of the Final Order, including proceeds of Avoidance Actions (collectively, the "<u>Adequate Protection Collateral</u>"), without the necessity of the execution, recordation or other filing of any security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents. | ¶¶ 6–7 |

| Summary of Material Terms | Location |
|---|---|

- To the extent of any Diminution in Value of their interests in the Prepetition Collateral, the Stub Agent, for the benefit of the Stub Secured Parties, is hereby granted (effective and automatically perfected upon the Petition Date and without the necessity of the execution by Casa of security agreements, pledge agreements, mortgages, financing statements or other agreements), additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "Stub Adequate Protection Liens" and, together with the Superpriority Adequate Protection Liens, the "Adequate Protection Liens"), the Adequate Protection Collateral solely of Casa, without the necessity of the execution, recordation or other filing of any security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.

- Ranking of Liens.  The Carve-Out, the Prepetition Permitted Liens, the Prepetition Liens and the Adequate Protection Liens granted hereunder shall have the following priority on the Shared Collateral and Non-Shared Collateral:

| Shared Collateral | Non-Shared Collateral |
|---|---|
| *First*, the Carve-Out | *First*, the Carve-Out |
| *Second*, the Prepetition Permitted Liens | *Second*, the Prepetition Superpriority Permitted Liens |
| *Third*, Adequate Protection Liens[3] | *Third*, the Superpriority Adequate Protection Liens |
| *Fourth*, the Prepetition Liens[4] | *Fourth*, the Prepetition Superpriority Liens |
|  | *Fifth*, the Stub Adequate Protection Liens |

- Superpriority Section 507(b) Claims. To the extent of any Diminution in Value of their interests in the Prepetition Collateral, the Superpriority Agents, for the benefit of the Superpriority Secured Parties, are hereby granted allowed administrative expense claims against each Debtor with the priority set forth in section 507(b) of the Bankruptcy Code (the "Superpriority Adequate Protection Claims"); provided, that the Superpriority Adequate Protection Claims shall be subject and subordinate to the Carve-Out.  The Superpriority Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions.

- Stub Section 507(b) Claims. To the extent of any Diminution in Value of their respective interests in the Prepetition

---

[3]     For the avoidance of doubt, the Superpriority Adequate Protection Liens and the Stub Adequate Protection Liens shall be *pari passu*.

[4]     For the avoidance of doubt, the Prepetition Superpriority Liens and the Prepetition Stub Liens shall be *pari passu*.

| Summary of Material Terms | | Location |
|---|---|---|
| | Collateral, the Stub Agent, for the benefit of the Stub Secured Parties, is hereby granted an allowed administrative expense claim against Casa with the priority set forth in section 507(b) of the Bankruptcy Code (the "Stub Adequate Protection Claims" and, together with the Superpriority Adequate Protection Claims, the "Adequate Protection Claims"); provided, that the Stub Adequate Protection Claims shall be subject and subordinate to the Superpriority Adequate Protection Claims and the Carve-Out. The Stub Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral at Casa, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions.<br>• Reporting. The Debtors shall comply with all reporting requirements set forth in the Superpriority Credit Documents.<br>• Right to Seek Additional Adequate Protection. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request additional or different forms of adequate protection at any time or any party in interest's right to object thereto. | |
| **Carve Out**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii) | The Proposed Order provides for a "Carve Out" for certain statutory fees and allowed professional fees of the Debtors and any Creditors' Committee appointed pursuant to section 1103 of the Bankruptcy Code, including Professional Fees incurred prior to delivery of a Trigger Notice, a $750,000 Debtor Post-Trigger Cap for Debtor Professional Fees incurred after delivery of the Carve Out Notice, and a $250,000 Committee Post-Trigger Fee Cap for Committee Professional Fees incurred after delivery of a Trigger Notice as more fully detailed in the Proposed Order. | ¶ 4 |

| Local Rule 4001-2 Concise Statements | | Location |
|---|---|---|
| **The Amount of Cash Collateral the Debtors Seek Permission to Use**<br><br>Local Rule 4001–2(a)(i)(A) | The Debtors shall be allowed to use Cash Collateral in the amount set forth in the Approved Budget subject to Permitted Variances (defined below). | ¶ 2 |
| **Fees**<br><br>Local Rule 4001–2(a)(i)(B) | None. | N/A |
| **Provisions that Limit the Court's Discretion**<br><br>Local Rule 4001–2(a)(i)(C) | None. | N/A |
| **Funding of Non-Debtor Affiliates With Cash Collateral**<br><br>Local Rule | The Debtors shall be allowed to use Cash Collateral in the amount set forth in the Approved Budget subject to Permitted Variances (defined below). | ¶ 2 |

| Local Rule 4001-2 Concise Statements | | Location |
|---|---|---|
| 4001–2(a)(i)(D) | | |
| **Budget, Reporting, and Variance Covenants**<br><br>Local Rule 4001–2(a)(i)(E) | Attached to the Interim Order as **Exhibit 1** is a 10-week cash flow forecast for the 10-week period commencing on the Petition Date, approved by the Required Consenting Term Loan Lenders, which reflects on a line-item basis, the Debtors' and non-Debtor affiliates' budgeted cash receipts, disbursements and liquidity (the "<u>Approved Budget</u>").  The Debtors shall deliver an updated budget to the Prepetition Secured Parties on the Friday of every fourth week after the Petition Date covering the 10-week period commencing on the first day (which, for the avoidance of doubt, shall be Tuesday) of each such week, respectively (each, the "<u>Proposed Updated Budget</u>" and, together with the Approved Budget, the "<u>Budgets</u>") and shall deliver to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases any Approved Budget.  The Proposed Updated Budget shall constitute an Approved Budget only if such Proposed Updated Budget is acceptable to the Required Consenting Term Loan Lenders in their sole discretion, as set forth in writing by the Required Consenting Term Loan Lenders.  Unless the Debtors receive a written acknowledgement from the Required Consenting Term Loan Lenders that a Proposed Updated Budget is acceptable to such lenders in their sole discretion, the then most recent Approved Budget shall remain in full force and effect.  Each Proposed Updated Budget shall be accompanied by such supporting documentation as reasonably requested by the Prepetition Secured Parties.  Each Budget shall be prepared in good faith based upon assumptions believed by the advisors to the Debtors to be reasonable.<br><br><u>Variance Reports</u>.  On the Friday of each calendar week following the Petition Date and for each calendar week thereafter, by no later than 5:00 p.m. New York City time, the Debtors shall deliver to the Prepetition Agents and the legal and financial advisors to the the Superpriority Lenders (with such advisors permitted to share with the Superpriority Lenders) a variance report (each, a "<u>Variance Report</u>") setting forth, in reasonable detail, cumulative receipts, disbursements and net cash of the Debtors and any variances between the actual amounts and those set forth in the then in effect Approved Budget for the Testing Period (as defined below), together with an informational rolling 10-week cash flow forecast. For the avoidance of doubt, for the week starting from the Petition Date through the last day of such week, the Debtors shall deliver the Variance Report by April 12, 2024, at 5:00 p.m. New York City time.  The Variance Report shall also provide a reasonably detailed explanation for any variance on a cumulative basis.<br><br><u>Budget Testing</u>.    The term "<u>Testing Period</u>" shall mean, with respect to any Variance Report (as defined below) required to be delivered, starting with the report to be delivered on April 12, 2024, the period starting from the Petition Date through the last day of the prior week.  The Debtors shall not permit the aggregate cumulative actual (i) "total receipts" for any Testing Period to be less than the projected "total receipts" by more than $1,000,000; (ii) "total disbursements" (excluding the fees and expenses of Retained Professionals and counsel and other advisors to the Prepetition Secured Parties) for any Testing Period to exceed the projected | ¶ 3 |

| Local Rule 4001-2 Concise Statements | Location |
|---|---|
| | |

<table>
<tr><td></td><td>"total disbursements" by more than $1,250,000; (iii) "total disbursements" (excluding the fees and expenses of counsel and other advisors to the Prepetition Secured Parties) for any Testing Period to exceed the projected "total disbursements" by more than $2,000,000; or (iv) "net cash flow" (excluding fees and expenses of counsel and other advisors to the Prepetition Secured Parties) for any Testing Period to be less than the projected "net cash flow" by more than $1,000,000 (such permitted variances, the "<u>Permitted Variance</u>" and such limitations, the "<u>Variance Covenant</u>").<br><br><u>Accounts Payable Reports</u>. The Debtors shall deliver to the legal and financial advisors, as applicable, to the Prepetition Agents and the Superpriority Lenders on or before 5:00 p.m. (prevailing Eastern Time) on Friday of each week (commencing on the Friday of the first full calendar week following the entry of this Interim Order) an accounts payable report providing the current estimate of the Debtors' accrued and unpaid accounts payable, each of which shall be prepared by the financial advisors to the Debtors as of the last day of the prior week or other period then most recently ended<br><br>Except as otherwise agreed to by the Superpriority Agents, acting at the direction of the Required Consenting Term Loan Lenders, or as expressly permitted herein, the Debtors' use of the Cash Collateral shall be permitted solely pursuant to the terms of, and in accordance with, the Approved Budget, subject to Permitted Variances. The Prepetition Secured Parties (i) may assume that the Debtors will comply with the Approved Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be directly or indirectly obligated to pay any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget. Nothing in any Approved Budget shall constitute an amendment or other modification of the Prepetition Credit Documents or the lending limits set forth therein. The consent of the Prepetition Secured Parties to the use of Cash Collateral pursuant to this Interim Order shall not be construed as consent to the use of Cash Collateral after the occurrence of an Event of Default (other than funding the Carve-Out as set forth herein), regardless of whether the aggregate funds shown on the Approved Budget have been expended.</td><td></td></tr>
<tr><td><b>Carve Out</b><br><br>Local Rule 4001–2(a)(i)(F)</td><td>Notwithstanding anything to the contrary herein, the Debtors' obligations to the Prepetition Secured Parties, and the liens, security interests and superpriority claims granted by this Interim Order or under the Prepetition Credit Documents, and the payment of all such obligations, shall be subject and subordinate in all respects to payment of the following fees and expenses: (i) all unpaid fees required to be paid to the Clerk of the Court or statutory fees payable to the U.S. Trustee under 28 U.S.C. § 1930, with interest at the statutory rate pursuant to 31 U.S.C. § 3717 (the "<u>Government Fees</u>"), which shall not be limited by any Budget; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Bankruptcy Code section 726(b) (the "<u>Chapter 7 Expenses</u>"), (iii) to the extent allowed at any time (whether by interim order, final order, procedural order or otherwise), all unpaid fees and expenses (collectively, the "<u>Professional Fees</u>") incurred by persons or firms retained by the Debtors</td><td>¶ 4</td></tr>
</table>

| Local Rule 4001-2 Concise Statements | Location |
|---|---|
| (the "Debtor Professionals") or any official committee of unsecured creditors appointed in the chapter 11 cases (a "Committee" and such professionals to the Committee, the "Committee Professionals" and together with the Debtor Professionals, the "Retained Professionals") pursuant to Bankruptcy Code section 327, 328, 363 or 1103, as applicable, at any time before or on the first business day following delivery of a Trigger Notice (defined below) and without regard to whether such fees and expenses are provided for in any Approved Budget or were invoiced after the Carve-Out Trigger Notice Date, whether allowed by the Court prior to or after delivery of the Trigger Notice (the "Pre-Trigger Fees" and such amounts, the "Pre-Trigger Fee Cap"); and (iv) the Professional Fees of (x) Debtor Professionals in an aggregate amount not to exceed $750,000 (the "Debtor Post-Trigger Cap") and (y) Committee Professionals in an aggregate amount not to exceed $250,000 (the "Committee Post-Trigger Fee Cap" and, together with the Debtor Post-Trigger Cap, the "Post-Trigger Fee Cap" and, together with the Pre-Trigger Fee Cap, the "Carve-Out Cap") incurred after the first business day following delivery of a Trigger Notice (as defined herein) (the "Post-Trigger Fees"). Any payment or reimbursement made to any Retained Professionals on or after the delivery of the Trigger Notice shall permanently reduce the Carve-Out on a dollar-for-dollar basis (the foregoing clauses (i) through (iv), collectively, the "Carve-Out").<br><br>Trigger Notice. Trigger Notice. For purposes of the Carve-Out, a "Trigger Notice" is a written notice delivered by the Superpriority Administrative Agent (acting at the direction of the Required Consenting Term Loan Lenders) by email through counsel to (i) the Debtors, (ii) any statutory committee appointed in these chapter 11 cases, (iii) any chapter 11 trustee, chapter 7 trustee or examiner appointed in these cases or subsequent chapter 7 cases, and (iv) the U.S. Trustee (collectively, the "Carve-Out Notice Parties"), in each case following the occurrence and during the continuation of a Termination Event (as defined below), subject to any applicable grace period, waiver or forbearance, stating that the Post-Trigger Fee Cap has been invoked. The term "Carve-Out Trigger Notice Date" shall mean the day on which a Trigger Notice is received by the Debtors. On the Carve-Out Trigger Notice Date, the Trigger Notice shall constitute a demand to the Debtors to transfer cash in an amount equal to the Carve-Out Cap less any amount then held in the Carve-Out Account (as defined below).<br><br>Carve-Out Account. Within three (3) business days of entry of this Order, the Debtors shall fund into a segregated account (the "Carve-Out Account") not subject to the control of the Prepetition Agents or any of the Prepetition Secured Parties an amount equal to the total budgeted Retained Professional fees for the first week set forth in the Approved Budget. Thereafter, the Debtors shall transfer into the Carve-Out Account cash on a weekly basis in an amount equal to the total budgeted Retained Professional fees for that week set forth in the Approved Budget, *plus* or *minus* the difference between the actual fees and expenses incurred by Retained Professionals during the immediately preceding week and such budgeted amount. The Debtors shall use such funds held in the Carve-Out Account to | |

| Local Rule 4001-2 Concise Statements | Location |
|---|---|
| pay Retained Professional fees as they become allowed and payable pursuant to monthly, interim or final orders from the Court; provided, that the Debtors' obligations to pay the allowed fees and expenses of the Estate Professionals shall not be limited or deemed limited to funds held in the Carve-Out Account. | |

Immediately following receipt of a Trigger Notice, and prior to the payment of any Prepetition Secured Obligations, the Debtors shall be required to deposit into the Carve-Out Account cash in an amount equal to the difference between the Carve-Out Cap and the balance held in the Carve-Out Account as of the Trigger Notice Date. Notwithstanding anything to the contrary herein, following delivery of a Trigger Notice, the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or disposition of any assets) of the Debtors until the Carve-Out Account has been fully funded as permitted above in an amount equal to all obligations benefiting from the Carve-Out. Any payment or reimbursement made to any Retained Professional in respect of any Professional Fees prior to the delivery of the Trigger Notice shall not reduce the Carve-Out.

The amounts in the Carve-Out Account shall be available only to satisfy Professional Fees and other amounts included in the Carve-Out until such amounts are paid in full. Notwithstanding anything to the contrary herein, (i) the failure of the Carve-Out Account to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out and (ii) in no way shall the Approved Budget, the Carve-Out or Post-Trigger Fee Cap be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise). All funds in the Carve-Out Account shall be used first to pay all obligations benefitting from the Pre-Trigger Fee Cap, until paid in full, and then obligations benefitting from the Post-Trigger Fee Cap. Upon payment in full of all obligations benefitting from the Carve-Out, any amounts remaining in the Carve-Out Account shall revert to the Debtors' estates in accordance with the priorities set forth in the Plan.

Payments from the Carve-Out Account shall be subject to any terms and conditions of the engagement agreements and appurtenant orders for the employment of each Retained Professional. The Debtors shall be permitted to pay compensation and reimbursement of expenses incurred prior to the occurrence of a Termination Event or delivery of a Termination Notice to the extent allowed and payable under sections 330 and 331 of the Bankruptcy Code.

To the extent that professional fees and expenses of the Retained Professionals have been incurred by the Debtors or the Committee at any time before or on the first business day after delivery of a Trigger Notice but have not yet been allowed by the Court, such professional fees and expenses of the Retained Professionals shall constitute Professional Fees benefiting from the Carve-Out upon their allowance by the Court, whether by interim or final compensation order and whether before or after delivery of the

| Local Rule 4001-2 Concise Statements | | Location |
|---|---|---|
| | Trigger Notice, and the Carve-Out Account shall be funded to include such professional fees and expenses. | |
| **Liens on Unencumbered Assets**<br><br>Local Rule 4001–2(a)(i)(G) | None. | N/A |
| **Milestones**<br><br>Local Rule 4001–2(a)(i)(H) | • no later than April 3, 2024, the Debtors shall have filed the Plan, the Disclosure Statement, the First Day Pleadings (including a motion seeking entry of the Cash Collateral Order), the Solicitation Procedures Motion, the Bar Date Motion, the Bidding Procedures Motion, and the Private Sale Motion;<br>• no later than April 5, 2024, the Bankruptcy Court shall have entered the Interim Cash Collateral Order;<br>• no later than April 23, 2024, the Debtors shall have filed their schedules of assets and liabilities and statements of financial affairs;<br>• no later than April 24, 2024, the Bankruptcy Court shall have entered the Private Sale Order, the Final Cash Collateral Order, the Solicitation Procedures Order, and the Bar Date Order;<br>• no later than April 26, 2024, the Debtors shall have commenced solicitation of votes to accept or reject the Plan;<br>• no later than May 10, 2024, the Debtors shall have filed the Plan Supplement;<br>• no later than May 31, 2024, the Bankruptcy Court shall have held a hearing on confirmation of the Plan and approval of any Sale Transaction;<br>• no later than May 31, 2024, the Bankruptcy Court shall have entered the Confirmation Order and the Sale Order approving the sale of the Cable Assets; and<br>• no later than June 6, 2024, the Plan Effective Date shall have occurred and the Sale Transactions shall have closed. | ¶ 10(14) |
| **Prepayment Penalty**<br><br>Local Rule 4001–2(a)(i)(I) | N/A | N/A |
| **Joint Liability**<br><br>Local Rule 4001–2(a)(i)(J) | N/A | N/A |
| **Payment of Secured Parties' Fees Without Review**<br><br>Local Rule 4001–2(a)(i)(K) | N/A | N/A |
| **Use of Estate Funds for Investigations**<br><br>Local Rule 4001–2(a)(i)(L) | Up to $25,000 of the Prepetition Collateral, including Cash Collateral (the "Committee Investigation Budget"), may be used by a Committee appointed in the Debtors' chapter 11 cases to investigate the claims and liens of the Prepetition Secured Parties, solely with respect to the Prepetition Secured Obligations and Prepetition Collateral within the Challenge Period. | ¶ 14 |

| Local Rule 4001-2 Concise Statements | | Location |
|---|---|---|
| **Cross-Collateralization and Administrative Expense Status**<br><br>Local Rule 4001–2(a)(i)(N) | N/A | N/A |
| **Roll Up**<br><br>Local Rule 4001–2(a)(i)(O) | N/A | N/A |
| **Non-Consensual Priming Liens**<br><br>Local Rule 4001–2(a)(i)(P) | N/A | N/A |
| **Binding Effect of the Debtors' Stipulations on Third Parties**<br><br>Local Rule 4001–2(a)(i)(Q) | The acknowledgments, stipulations, admissions, waivers and releases contained in the Interim Order shall be binding upon the Debtors, their estates, and any successor or assigns thereto. Subject to the Challenge Period, the acknowledgments, stipulations, admissions, waivers and releases contained in the Interim Order shall also be binding upon all other parties in interest, including any Committee, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"),. | ¶ 15 |
| **Challenge Period**<br><br>Local Rule 4001–2(a)(i)(Q) | No later than the earlier of (A) confirmation of a chapter 11 plan for the Debtors, (B) entry of an order under Bankruptcy Code section 363 approving the sale of all or substantially all of the Debtors' assets, other than the sale of the Debtors' cloud-native software portfolio and radio access networks businesses and related assets to Lumine Group Holdco, Inc. or (C) seventy-five (75) calendar days from the entry of this Interim Order, subject to further written extension (which writing may be in the form of e-mail by counsel) by the Superpriority Agent (at the direction of the Required Consenting Term Loan Lenders); *provided* that in the event that, prior to the expiration of the Challenge Period, (x) any of these cases is converted to a Successor Case or (y) a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended for a period of thirty (30) days solely with respect to any Trustee, commencing on the occurrence of either of the events described in the foregoing clauses (x) and (y); and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the party asserting any Challenge sustaining any Challenge in such duly filed adversary proceeding or contested matters. | ¶ 15 |
| **Provisions Approving all Terms of the Loan Agreement**<br><br>Local Rule 4001–2(a)(i)(R) | N/A | N/A |
| **Waiver/Modification of Automatic Stay**<br><br>Local Rule | The automatic stay shall be modified to the extent necessary to allow the Prepetition Secured Parties to provide any notices to the Debtors or take any other action as contemplated by and in accordance with this Interim Order. | ¶ 25 |

| Local Rule 4001-2 Concise Statements | | Location |
|---|---|---|
| 4001–2(a)(i)(S) | | |
| **Provisions Limiting Arguments**<br><br>Local Rule 4001–2(a)(i)(T) | N/A | N/A |
| **Liens on Avoidance Actions**<br><br>Local Rule 4001–2(a)(i)(U) | The Proposed Order grants liens on all of the Debtors' property, including, subject to entry of a Final Order, the proceeds of property recovered in respect of any of the Debtors' avoidance actions. | ¶ 6 |
| **Section 506(c) Waiver**<br><br>Local Rule 4001–2(a)(i)(V) | Subject to entry of a Final Order, the Debtors waive any right to surcharge any Prepetition Collateral. | ¶ 20 |
| **Section 552(b) Waiver**<br><br>Local Rule 4001–2(a)(i)(W) | Subject to entry of a Final Order, the "equities of the case" exception under section 522(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties. | ¶ 21 |
| **Marshalling Waiver**<br><br>Local Rule 4001–2(a)(i)(X) | The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the Adequate Protection Collateral, Adequate Protection Obligations, Prepetition Collateral, or the Prepetition Secured Obligations. | ¶ 21 |

9.      As explained below and in the First Day Declarations, the Debtors' use of Cash Collateral is necessary to avoid immediate and irreparable harm; absent consensual use of Cash Collateral, the Debtors will lose access to necessary liquidity.  Based on the Company's Cash Collateral Budget, access to Cash Collateral is necessary to maintain operations in the ordinary course and ensure the viability of the Company without significant deterioration to the detriment of all stakeholders.

10.      The Debtors have determined, in an exercise of their business judgment and following good-faith, arms'-length negotiations, that the Prepetition Lenders would only consent to the Debtors' use of Cash Collateral if the Proposed Order included the foregoing provisions. Accordingly, the Debtors submit that the terms and conditions of the Proposed Order are appropriate under the facts and circumstances of the Chapter 11 Cases.

## **DEBTORS' PREPETITION CAPITAL STRUCTURE**

11. The Debtors' outstanding funded indebtedness is comprised of obligations incurred by the Debtors under (i) the Superpriority Term Loan and (ii) the Stub Term Loan (each as defined herein). As summarized in the following chart, as of the Petition Date, the Debtors' capital structure includes approximately $183.04 million in outstanding prepetition secured debt obligations in the aggregate:

| Debt Facility | Principal Amount Outstanding |
|---|---|
| Superpriority Term Loan | $180.98 million |
| Stub Term Loan | $2.06 million |
| **Total** | **$183.04 million** |

**I. Superpriority Term Loan.**

12. The Debtors are party to a certain Superpriority Credit Agreement, dated as of June 15, 2023 (as amended, amended and restated, or otherwise modified from time in accordance with the terms thereof, the "Superpriority Credit Agreement") by and among Casa Systems, Inc. ("Casa"), as borrower, the lenders from time to time party thereto (the "Superpriority Lenders"), Delaware Trust Company, as successor to JPMorgan Chase Bank, N.A. as administrative agent, and Delaware Trust Company as collateral agent (in such capacities, the "Superpriority Agent" and, together with the Superpriority Lenders, the "Superpriority Secured Parties"). Pursuant to the Superpriority Credit Agreement and the Exchange (as described in further detail in the First Day Declarations), the Superpriority Lenders agreed to the extension of approximately $218.8 million in term loans (the "Superpriority Term Loan"), which are scheduled to mature on December 20, 2027[5].

---

[5] The maturity date is subject to certain springing maturity terms as set forth in the Superpriority Credit Agreement. Failure to meet certain covenants in the Superpriority Credit Agreement would cause the maturity date to be December 20, 2025.

13.     As of the Petition Date, the Debtors owe approximately $180.98 million under the Superpriority Credit Agreement.  Subject to the terms of the Intercreditor Agreement (as defined below), the obligations under the Superpriority Credit Agreement are guaranteed by Debtors: Casa Systems Securities Corporation and Casa Properties LLC, as well as by non-Debtor subsidiaries: Casa Communications Limited, Casa Technologies Pty Ltd, Casa Communications Holdings Pty Ltd, NetComm Wireless Pty Ltd, and NetComm Wireless Inc. (collectively, the "Superpriority Guarantors").   The obligations under the Superpriority Credit Agreement are secured by substantially all of the assets of Casa and the Superpriority Guarantors.

## II.     Stub Term Loan.

14.     The Debtors are party to a certain Credit Agreement, dated as of December 16, 2016, by and among Casa, as borrower, the lenders from time to time party thereto (the "Original Credit Agreement Lenders"), and Delaware Trust Company, as administrative agent and collateral agent (in such capacities, the "Stub Agent" and together with the Superpriority Agent, the "Prepetition Agents") (as amended, amended and restated, or otherwise supplemented from time to time, the "Stub Credit Agreement").   Pursuant to the Stub Credit Agreement, after effectuation of the Exchange (as described in further detail in the First Day Declarations), approximately $5 million in principal remained outstanding and owing to certain non-exchanging Original Credit Agreement Lenders (the "Stub Lenders" and together with the Superpriority Lenders, the "Prepetition Lenders" and the Stub Lenders, together with the Stub Agent, the "Stub Secured Parties" and the Stub Secured Parties with the Superpriority Secured Parties, the "Prepetition Secured Parties").

15.     As of the Petition Date, the Debtors owe approximately $2.06 million under the Original Credit Agreement, which is scheduled to mature on September 30, 2024. Subject to the terms of the Intercreditor Agreement (as defined below), the obligations under the Stub Credit

Agreement are secured by substantially all of the assets of Casa.  The liens securing the Superpriority Credit Agreement and the Stub Credit Agreement on the Shared Collateral (as defined below) rank *pari passu* with each other and are each subject to the Intercreditor Agreement.

**III.    The Intercreditor Agreement.**

16.    Certain obligations under the Superpriority Credit Agreement and the Stub Credit Agreement (together, the "Pari Passu Obligations") are secured by the same prepetition collateral, *i.e.*, substantially all of the assets of Casa (the "Shared Collateral").  Pursuant to the terms of that certain Pari Passu Intercreditor Agreement, dated as of January 12, 2024 (the "Intercreditor Agreement") by and among Casa, Casa Properties, LLC, Casa Systems Securities Corporation, NetComm Wireless, Inc., and Casa Communications Limited, as Grantors (the "Grantors") and the Prepetition Agents, the liens granted on the Shared Collateral rank *pari passu* with each other. Additionally, pursuant to the terms of the Intercreditor Agreement, the Stub Secured Parties (other than the Prepetition Secured Parties) agreed that they would not raise an objection to the use of cash collateral under section 363 of the Bankruptcy Code or any liens on any collateral securing the same unless the Superpriority Agent opposes or objects to such use of cash collateral, subject to certain limitations in the Intercreditor Agreement.

**DEBTORS' PROPOSED USE OF CASH COLLATERAL**

17.    "Cash Collateral" constitutes: all cash held in any Bank Account (as defined in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Perform Intercompany Transactions and (II) Granting Related Relief* [ECF. 16] (the "Cash Management Motion")) other than collateral held by the Debtors in the Collateral Accounts (as defined in the Cash Management Motion), which

hold restricted collateral pursuant to standby letters of credit for customer contracts with Claro Colombia and Telecom Italia, and for the leases for the Debtors' leased properties.

18.     Beginning in March 2024, the Debtors and the Prepetition Lenders engaged in extensive arms'-length negotiations regarding the terms and conditions of consensual use of Cash Collateral, culminating in the Proposed Order.   Following negotiations, the Debtors and the Prepetition Agents have agreed upon a 11-week forecast set forth in the Cash Collateral Budget which includes all reasonable and foreseeable expenses to be incurred by the Debtors for the applicable period.   As of the Petition Date, the Debtors had approximately $4.2 million of unrestricted cash on hand.   Without immediate access to the Cash Collateral, the Debtors would be forced to shutter operations and dismiss these chapter 11 cases, damaging the Debtors' prospects as a going concern and denying creditors with the right to fair and impartial distribution of the Debtors' assets in accordance with the principles of bankruptcy law.   Any delay in the Debtors' ability to access Cash Collateral beyond such date would irreparably harm the Debtors and their estates.   Accordingly, the Debtors respectfully request that the Court authorize the use of Cash Collateral on the terms and conditions set forth in the Proposed Order.

## BASIS FOR RELIEF REQUESTED

### I.     Use of Cash Collateral is Warranted and Should be Approved.

19.     Section 363(c) of the Bankruptcy Code governs a debtor's use of a secured creditor's cash collateral.   Section 363(c) provides, in pertinent part, that, a debtor may use cash collateral if "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." 11 U.S.C. § 363(c)(2).   Section 363(e) of the Bankruptcy Code further provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased,

by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

20.     The Bankruptcy Code does not expressly define "adequate protection." Section 361 of the Bankruptcy Code, however, provides a non-exhaustive list of examples of adequate protection, such as granting replacement liens and administrative priority claims.   *See* 11 U.S.C. § 361.   Generally, courts decide what constitutes adequate protection on a case-by-case basis. *See Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re N.J. Affordable Homes Corp.*, No. 05-60442 (DHS), 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept."); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis"); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (*citing* 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

21.     In *Swedeland*, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland*, 16 F.3d at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa. (In re Shaw Indus., Inc.)*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured

creditor receives in value essentially what he bargained for."); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988).

22. The Debtors have satisfied the requirements of sections 363(c)(2) and (e) of the Bankruptcy Code and should be authorized to use Cash Collateral. As described above, the Debtors are providing the Prepetition Lenders with adequate protection in the form of, among other things: superpriority adequate protection liens, administrative expense claims, payment of professional fees, and certain covenants.

23. Without access to Cash Collateral, the Debtors will be unable to continue operations, unable to fund these chapter 11 cases, and unable to preserve the going-concern value of the Debtors' estates. In view of the fact that Cash Collateral is essential to ongoing operations and that the requisite percentage of Prepetition Secured Parties under the Prepetition Credit Documents have consented to the Debtors' limited use of Cash Collateral as provided in the Proposed Order, the Court should grant the Debtors the authority to use Cash Collateral under section 363(c)(2) of the Bankruptcy Code.

24. The Debtors believe the adequate protection provided for in the Proposed Order is fair and reasonable under the circumstances, satisfies the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and is in the best interests of the Debtors, their estates, and all parties in interest and should be approved.

**II. Proposed Carve-Out is Reasonable and Appropriate.**

25. Any security interests or claims granted as Adequate Protection under the Proposed Order are subject to the Carve Out. Without the Carve Out, the Debtors and other parties in interest

20

may be deprived of certain rights and powers because the services for which such professionals may be paid in these Chapter 11 Cases may be restricted.  *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties in interest are sorely prejudiced").  The Carve Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.  Additionally, the Carve Out protects against administrative insolvency during the course of these Chapter 11 Cases by ensuring that assets remain for the payment of fees of the Clerk of the Bankruptcy Court or the Office of the United States Trustee for the District of Delaware as well as fees of the Debtors' professionals and a statutory committee of unsecured creditors, if appointed.

**III.     Automatic Stay Should be Modified on a Limited Basis.**

26.     The relief requested herein contemplates a modification of the automatic stay to permit the Debtors to grant the liens described above to the Prepetition Agents and to perform such acts as may be requested to assure the perfection and priority of such liens.  Stay modifications of this kind are ordinary and standard features for the use of Cash Collateral, and in the Debtors' business judgment, are reasonable and fair under the present circumstances.

**BANKRUPTCY RULE 4001(a)(3) SHOULD BE WAIVED**

27.     The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3).  Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As explained above and in the First Day Declarations, the use of Cash Collateral is essential to prevent irreparable damage to the Debtors' operations.   Accordingly, ample cause exists to justify

the waiver of the 14-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

28.     The Debtors assert that immediate relief is necessary to avoid immediate and irreparable harm.  Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, entry of the Proposed Order is integral to the Debtors' ability to successfully transition into chapter 11 and run an orderly sale process.  Specifically, the relief requested is necessary to avoid a severe disruption of the Debtors' sale process and operations at this critical juncture and, in turn, to preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully requests that the Court approve the relief requested in this Motion.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

29.     The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the First Day Declarations, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors' ongoing operations and value-maximization process.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## RESERVATION OF RIGHTS

30.     Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the

Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

## **NOTICE**

31.     Notice of this Motion has been provided by email, facsimile, or overnight courier to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors; (c) JPMorgan Chase Bank, N.A. or its successor as administrative agent under the Superpriority Credit Agreement; (d) Delaware Trust Company; (e) counsel to the Ad Hoc Group; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) the Federal Communications Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request entry of Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: April 3, 2024
Wilmington, Delaware

/s/ *Joseph M. Mulvihill*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph Barry (Del. Bar No. 4221)
Joseph M. Mulvihill (Del. Bar No. 6061)
Timothy R. Powell (Del. Bar No. 6894)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jbarry@ycst.com
        jmulvihill@ycst.com
        tpowell@ycst.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**SIDLEY AUSTIN LLP**
Stephen E. Hessler (*pro hac vice* pending)
Patrick Venter (*pro hac vice* pending)
Margaret R. Alden (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: shessler@sidley.com
        pventer@sidley.com
        malden@sidley.com

Ryan L. Fink (*pro hac vice* pending)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: ryan.fink@sidley.com

Julia Philips Roth (*pro hac vice* pending)
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 595-9500
Facsimile:  (310) 595-9501
Email: julia.roth@sidley.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CASA SYSTEMS, INC., *et al.*,[1] | Case No. 24-10695 (KBO) |
| Debtors. | (Jointly Administered) |

**INTERIM ORDER (I) AUTHORIZING LIMITED USE OF CASH COLLATERAL;**
**(II) GRANTING ADEQUATE PROTECTION LIENS AND SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE CLAIMS TO PREPETITION SECURED PARTIES;**
**(III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING**
**FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Casa Systems, Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 503, 506 and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 4001-2 and 9013 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things: (i) authorization for the Debtors to (a) use Cash Collateral (as defined below) and (b) provide adequate protection to the Prepetition Secured Parties on account of any Diminution in Value in the Prepetition Collateral (each, as defined below); (ii) modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms of this Interim Order and the Final Order; (iii) waiving any applicable stay and providing for immediate effectiveness of the Interim Order and Final Order; and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are Casa Systems, Inc. (8867), Casa Systems Securities Corporation (1151), and Casa Properties LLC (6767).  The Debtors' service address is 100 Old River Road, Andover, MA 01810.

(iv) scheduling a final hearing to consider the relief requested in the Motion on a final basis and entry of the Final Order and approving the form of notice with respect thereto; and upon consideration of the relief requested in the Motion, the First Day Declarations and the evidence submitted and arguments of counsel made at the initial hearing on the Motion on April [__], 2024 (the "Interim Hearing"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice having been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9014 and all applicable Local Rules; and the Initial Hearing to consider the relief requested in the Motion having been held and concluded; and it appearing that approval of the relief granted by this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the hearing on the relief granted herein on a final basis (the "Final Hearing"); and the relief granted hereby otherwise being fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.

A.     <u>Petition Date</u>.  On April 3, 2024 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

B.     <u>Debtors in Possession</u>.  The Debtors continue to administer their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  As of the date hereof, no trustee, examiner or official committee of unsecured creditors has been appointed in these chapter 11 cases.

C.     <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over the chapter 11 cases and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This Court's consideration of the matters covered by this Interim Order constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue for these chapter 11 cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     <u>Notice</u>.  Notice of the Motion and the Interim Hearing and the relief requested in the Motion and granted in this Interim Order has been provided by the Debtors in accordance with Bankruptcy Rules 2002, 4001 and 9014 and  Local Rule 4001-2.  Except as set forth herein with respect to the Final Hearing and the Final Order, no further notice of, or hearing on, the relief requested in the Motion is necessary or required.  The Debtors have represented that notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the  Debtors; (c) Delaware Trust Company, as administrative and collateral agent

3

under the Superpriority Credit Agreement; (d) Delaware Trust Company, as administrative and collateral agent under the Stub Credit Agreement; (e) counsel to the Ad Hoc Group; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) the Federal Communications Commission; (j) Trade Claimants; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.

E.    <u>Debtors' Stipulations</u>.  Subject to the limitations contained in Paragraphs 14 and 15 of this Interim Order, the Debtors, on their own behalf and on behalf of their estates, shall be deemed to admit, stipulate, acknowledge and agree as follows:

(i)    *Superpriority Term Loan Facility.*

(1)    <u>Superpriority Term Loan Facility</u>.   Pursuant to that certain Superpriority Credit Agreement, dated as of June 15, 2023 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "<u>Superpriority Credit Agreement</u>" and, together with all related security agreements, collateral agreements, pledge agreements, control agreements and guarantees, the "<u>Superpriority Credit Documents</u>"), among Casa Systems, Inc. ("<u>Casa</u>"), as the borrower, Delaware Trust Company, as administrative agent (and any of its successors and assigns) (in such capacity, the "<u>Superpriority Administrative Agent</u>"), Delaware Trust Company, as collateral agent (in such capacity, the "<u>Superpriority Collateral Agent</u>" and, together with the Superpriority Administrative Agent, the "<u>Superpriority Agents</u>"), and the lenders party thereto from time to time (the "<u>Superpriority Lenders</u>" and, together with the Superpriority Agents, the "<u>Superpriority Secured Parties</u>"), the Superpriority Lenders provided to Casa secured term loans (the "<u>Superpriority Term Loans</u>") in an initial aggregate principal amount of $218,848,371.05 (the "<u>Superpriority Term Loan Facility</u>").

(2)     Guarantee Obligations.  Casa's obligations under the Superpriority Term Loan Facility are guaranteed by each of the other Debtors and Casa's non-Debtor subsidiaries (other than certain Excluded Subsidiaries (as defined in the Superpriority Credit Documents)) pursuant to the Superpriority Credit Documents.

(3)     Prepetition Superpriority Obligations.  As of the Petition Date, pursuant to the Superpriority Credit Documents, the Debtors were jointly and severally indebted and liable, without defense, counterclaim, or offset of any kind, to the Superpriority Secured Parties, in the aggregate amount of not less than $180,972,634.01 on account of the Superpriority Term Loans, *plus* accrued interest, *plus* all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, additional interest, any other Obligations (as defined in the Superpriority Credit Agreement), and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Superpriority Credit Documents (collectively, the "Prepetition Superpriority Obligations"). The Prepetition Superpriority Obligations constitute legal, valid, binding and non-avoidable obligations against the Debtors and are not subject to avoidance, recharacterization, counterclaim, defense, offset, recoupment, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.  No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Superpriority Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with the Superpriority Term Loan Facility shall be subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

5

(4)　　Prepetition Superpriority Liens.　As of the Petition Date, the Prepetition Superpriority Obligations were secured by valid, binding, non-avoidable, properly perfected and enforceable liens on and security interests (the "Prepetition Superpriority Liens") in the Collateral (as defined in the Superpriority Credit Documents, the "Superpriority Collateral"). The Prepetition Superpriority Liens (a) were granted to, or for the benefit of, the Superpriority Secured Parties for fair consideration and reasonably equivalent value; (b) are equal in priority to the Prepetition Stub Liens (as defined below) on the Prepetition Stub Collateral (as defined below); and (c) are senior in priority to any and all other liens on the Prepetition Collateral, except for the senior liens permitted by the Superpriority Credit Documents and solely to the extent such senior liens were valid, binding and senior to the Prepetition Superpriority Liens as of the Petition Date or were in existence immediately prior to the Petition Date and were perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b)) (the "Prepetition Superpriority Permitted Liens").

(ii)　　*Stub Term Loan Facility*.

(1)　　Stub Term Loan Facility.　Pursuant to that certain Credit Agreement, dated as of December 20, 2016 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Stub Credit Agreement" and, together with all related security agreements, collateral agreements, pledge agreements, control agreements and guarantees, the "Stub Credit Documents" and, together with the Superpriority Credit Documents, the "Prepetition Credit Documents"), among Casa, as the borrower, Delaware Trust Company, as administrative agent and collateral agent (in such capacity, the "Stub Administrative Agent" and, together with the Superpriority Agents, the "Prepetition Agents"), and the lenders party thereto from time to time (the "Stub Lenders" and, together with the Stub Agents, the "Stub Secured

6

Parties" and, together with the Superpriority Secured Parties, the "Prepetition Secured Parties"),
the Stub Lenders provided to Casa secured term loans (the "Stub Term Loans") in an initial
aggregate principal amount of $325,000,000 (the "Stub Term Loan Facility" and, together with
the Superpriority Term Loan Facility, the "Prepetition Credit Facilities").

(2)    Guarantee Obligations.  Casa's obligations under the Stub Term
Loan Facility are not guaranteed; provided, however, that pursuant to that certain Pari Passu
Intercreditor Agreement, dated as of January 12, 2024, by and among the Superpriority Collateral
Agent, Stub Agent, Casa, and the subsidiaries of Casa party thereto (the "Intercreditor
Agreement"), the parties agreed that (x) the Prepetition Superpriority Liens and the Prepetition
Stub Liens on the shared collateral (collectively, the "Shared Collateral" and any assets of the
Debtors not included in the Shared Collateral, the "Non-Shared Collateral") shall be equal in
priority; and (y) notwithstanding the fact that the Stub Term Loan Facility is not guaranteed by the
subsidiaries of Casa and thus the Stub Collateral is less than the Superpriority Collateral, proceeds
from both the Stub Collateral and the Superpriority Collateral (including those attributable to the
Debtors that did not guarantee the Stub Term Loan Facility and proceeds attributable to the
Superpriority Collateral which does not constitute the Stub Collateral) shall be distributed *pro rata*
among the Prepetition Secured Obligations.

(3)    Stub Obligations.  As of the Petition Date, pursuant to the Stub
Credit Documents, Casa was indebted and liable, without defense, counterclaim, or offset of any
kind, to the Stub Secured Parties, in the aggregate amount of not less than $2,063,636.93 on
account of the Stub Term Loans, *plus* accrued interest, *plus* all other fees, costs, expenses,
indemnification obligations, reimbursement obligations, charges, premiums, additional interest,
any other Obligations (as defined in the Prepetition Superpriority Credit Agreement), and all other

obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Stub Credit Documents (collectively, the "Prepetition Stub Obligations" and, together with the Prepetition Superpriority Obligations, the "Prepetition Secured Obligations"). The Prepetition Stub Obligations constitute legal, valid, binding and non-avoidable obligations against Casa and are not subject to avoidance, recharacterization, counterclaim, defense, offset, recoupment, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Stub Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with the Stub Term Loan Facility shall be subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(4)     Prepetition Stub Liens. As of the Petition Date, the Prepetition Stub Obligations were secured by valid, binding, non-avoidable, properly perfected and enforceable liens on and security interests in (the "Prepetition Stub Liens" and, together with the Prepetition Superpriority Liens, the "Prepetition Liens") the Collateral (as defined in the Stub Credit Documents, the "Stub Collateral" and, together with the Superpriority Collateral, the "Prepetition Collateral"). The Prepetition Stub Liens (a) were granted to, or for the benefit of, the Stub Secured Parties for fair consideration and reasonably equivalent value; (b) equal in priority to the Prepetition Superpriority Liens on the Prepetition Stub Collateral; and (c) are senior in priority to any and all other liens on the Prepetition Stub Collateral, except for the senior liens solely to the extent such senior liens were valid, binding and senior to the Prepetition Superpriority Liens as of

the Petition Date or were in existence immediately prior to the Petition Date and were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) (the "Prepetition Stub Permitted Liens" and, together with the Prepetition Superpriority Permitted Liens, the "Prepetition Permitted Liens").

(iii)    No Defenses. No offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Secured Obligations or Prepetition Liens exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors and their estates have no claims, objections, challenges, causes of action, or choses in action, including claims and causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, and 550, or any other avoidance actions under the Bankruptcy Code whether pursuant to federal law or applicable state law or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Agents and the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Credit Facilities and/or the transactions contemplated hereunder or thereunder; and the Debtors waive, discharge, and release any right to challenge any of the Prepetition Secured Obligations or Prepetition Liens.

(iv)    Cash Collateral. All of the cash of the Debtors, including cash on deposit or in any account held by the Debtors as of the Petition Date, as well as all cash generated by the collection of the Debtors' accounts receivable, and any proceeds of other disposition of any Prepetition Collateral, constitute Prepetition Collateral and, more specifically, "Cash Collateral"

of the applicable Prepetition Secured Parties within the meaning of Bankruptcy Code section 363(a). For the avoidance of doubt, collateral held by the Debtors in the Collateral Accounts (as defined in the Cash Management Motion), which hold restricted collateral pursuant to standby letters of credit for customer contracts with Claro Colombia and Telecom Italia, and for the leases for the Debtors' leased properties shall not be considered Cash Collateral.

(v)     <u>Entitlement to Adequate Protection</u>. The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361, 362(c)(2), 363(e), 364(d)(l) and 507, to adequate protection of their respective interests in the applicable Prepetition Collateral, including Cash Collateral, to the extent of any diminution in the value of their interest in the applicable Prepetition Collateral occurring from and after the Petition Date, resulting from the sale, lease or use of the applicable Prepetition Collateral (including applicable Cash Collateral), the imposition of the automatic stay pursuant to Bankruptcy Code section 362, the Carve-Out, and any other reason for which adequate protection may be granted under the Bankruptcy Code (such diminution, a "<u>Diminution in Value</u>").

(vi)    <u>No Control</u>. None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted, or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from this Interim Order, the Prepetition Credit Documents, or the Prepetition Credit Facilities.

F.      <u>Findings Regarding the Use of Cash Collateral</u>.

(i)     Good and sufficient cause has been shown for the entry of this Interim Order and for authorizing the Debtors to use Cash Collateral of the Prepetition Secured Parties and for granting adequate protection to the Prepetition Secured Parties.

(ii)     The Debtors have an ongoing and immediate need to continue using Cash Collateral to the extent provided in this Interim Order, in order to, among other things:  (a) provide working capital and funding for general corporate purposes; and (b) pay certain costs of administration of these cases, in each case, subject to the terms hereof and solely to the extent provided in the Approved Budget, as subject to Permitted Variances.  The Debtors do not have sufficient sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business in order to facilitate the sale of their assets and the administration of these chapter 11 cases during the term this Interim Order is in effect without the use of Cash Collateral.  Absent relief granted in this Interim Order, the Debtors' estates and their businesses will be irreparably harmed.

(iii)     The requisite percentage of Prepetition Secured Parties under the Prepetition Credit Documents have consented to the Debtors' limited use of Cash Collateral, on the terms and conditions set forth in this Interim Order, and the terms of the adequate protection provided in this Interim Order are fair and reasonable and provide the Debtors reasonably equivalent value and fair consideration.

G.    <u>Good Faith</u>.  The terms of the Debtors' use of Cash Collateral pursuant to this Interim Order have been the subject of extensive negotiations conducted in good faith and at arm's length between the Debtors and the Prepetition Secured Parties and, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, the Prepetition Secured Parties are hereby found to have acted in good faith in connection with the negotiation and entry of this Final Order, and each is entitled to the protection provided under Bankruptcy Code section 363(m).

H.    <u>Continuation of Prepetition Liens; Prepetition Permitted Liens</u>.  Subject to Paragraphs 14 and 15 of this Interim Order, the Prepetition Liens are continuing liens, and the

11

Prepetition Collateral will continue to be encumbered by such liens. Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing herein shall prejudice the right of any party in interest, including, but not limited to, any of the Debtors or the Prepetition Secured Parties to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Lien.

I.     <u>Immediate Entry</u>. Good and sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The use of Cash Collateral (and the other Prepetition Collateral), in accordance with this Interim Order, is in the best interests of the Debtors' estates.

Based upon the foregoing findings and conclusions and the record before this Court, and after due consideration and good and sufficient cause appearing thereof:

**IT IS HEREBY ORDERED THAT**:

1.     <u>Disposition</u>. The Motion is granted on an interim basis as set forth herein. Any objections to the relief requested in the Motion on an interim basis that have not previously been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied and overruled on their merits with prejudice. The rights of all parties in interest to object to entry of a Final Order are fully reserved.

2.     <u>Use of Cash Collateral</u>. The Debtors are hereby authorized to use all Cash Collateral solely in accordance with this Interim Order and the Approved Budget (as defined below), as subject to Permitted Variances, including, without limitation, to make payments on account of the Adequate Protection Obligations (as defined below) and other obligations provided for in this Interim Order. The Debtors are enjoined and prohibited from using the Cash Collateral

at any time except on the terms and subject to the conditions of this Interim Order, another order of the Court, or as otherwise agreed to by the Superpriority Agents acting at the direction of the Required Consenting Term Loan Lenders (as defined in that certain Restructuring Support Agreement dated as of April 2, 2024, by and among the Company Parties and the Consenting Term Loan Lenders party thereto).

3.    <u>Approved Budget; Compliance and Reporting</u>.

(a)    Attached to this Interim Order as **<u>Exhibit 1</u>** is a 10-week cash flow forecast for the 10-week period commencing on the Petition Date, approved by the Required Consenting Term Loan Lenders, which reflects on a line-item basis, the Debtors' and non-Debtor affiliates' budgeted cash receipts, disbursements and liquidity (the "<u>Approved Budget</u>"). The Debtors shall deliver an updated budget to the Prepetition Secured Parties on the Friday of every fourth week after the Petition Date covering the 10-week period commencing on the first day (which, for the avoidance of doubt, shall be Tuesday) of each such week, respectively (each, the "<u>Proposed Updated Budget</u>" and, together with the Approved Budget, the "<u>Budgets</u>") and shall deliver to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases any Approved Budget. The Proposed Updated Budget shall constitute an Approved Budget only if such Proposed Updated Budget is acceptable to the Required Consenting Term Loan Lenders in their sole discretion, as set forth in writing by the Required Consenting Term Loan Lenders. Unless the Debtors receive a written acknowledgement from the Required Consenting Term Loan Lenders that a Proposed Updated Budget is acceptable to such lenders in their sole discretion, the then most recent Approved Budget shall remain in full force and effect. Each Proposed Updated Budget shall be accompanied by such supporting documentation as reasonably requested by the

Prepetition Secured Parties.  Each Budget shall be prepared in good faith based upon assumptions believed by the advisors to the Debtors to be reasonable.

(b)    <u>Variance Reports</u>.  On the Friday of each calendar week following the Petition Date and for each calendar week thereafter, by no later than 5:00 p.m. New York City time, the Debtors shall deliver to the Prepetition Agents and the legal and financial advisors to the the Superpriority Lenders (with such advisors permitted to share with the Superpriority Lenders) a variance report (each, a "<u>Variance Report</u>") setting forth, in reasonable detail, cumulative receipts, disbursements and net cash of the Debtors and any variances between the actual amounts and those set forth in the then in effect Approved Budget for the Testing Period (as defined below), together with an informational rolling 10-week cash flow forecast.  For the avoidance of doubt, for the week starting from the Petition Date through the last day of such week, the Debtors shall deliver the Variance Report by April 12, 2024, at 5:00 p.m. New York City time.  The Variance Report shall also provide a reasonably detailed explanation for any variance on a cumulative basis.

(c)    <u>Budget Testing</u>.  The term "<u>Testing Period</u>" shall mean, with respect to any Variance Report (as defined below) required to be delivered, starting with the report to be delivered on April 12, 2024, the period starting from the Petition Date through the last day of the prior week. The Debtors shall not permit the aggregate cumulative actual (i) "total receipts" for any Testing Period to be less than the projected "total receipts" by more than $1,000,000; (ii) "total disbursements" (excluding the fees and expenses of Retained Professionals and counsel and other advisors to the Prepetition Secured Parties) for any Testing Period to exceed the projected "total disbursements" by more than $1,250,000; (iii) "total disbursements" (excluding the fees and expenses of counsel and other advisors to the Prepetition Secured Parties) for any Testing Period to exceed the projected "total disbursements" by more than $2,000,000; or (iv) "net cash flow"

14

(excluding fees and expenses of counsel and other advisors to the Prepetition Secured Parties) for any Testing Period to be less than the projected "net cash flow" by more than $1,000,000 (such permitted variances, the "Permitted Variance" and such limitations, the "Variance Covenant").

(d)     Accounts Payable Reports.  The Debtors shall deliver to the legal and financial advisors, as applicable, to the Prepetition Agents and the Superpriority Lenders on or before 5:00 p.m. (prevailing Eastern Time) on Friday of each week (commencing on the Friday of the first full calendar week following the entry of this Interim Order) an accounts payable report providing the current estimate of the Debtors' accrued and unpaid accounts payable, each of which shall be prepared by the financial advisors to the Debtors as of the last day of the prior week or other period then most recently ended.

(e)     Except as otherwise agreed to by the Superpriority Agents, acting at the direction of the Required Consenting Term Loan Lenders, or as expressly permitted herein, the Debtors' use of the Cash Collateral shall be permitted solely pursuant to the terms of, and in accordance with, the Approved Budget, subject to Permitted Variances.  The Prepetition Secured Parties (i) may assume that the Debtors will comply with the Approved Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be directly or indirectly obligated to pay any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget.  Nothing in any Approved Budget shall constitute an amendment or other modification of the Prepetition Credit Documents or the lending limits set forth therein.  The consent of the Prepetition Secured Parties to the use of Cash Collateral pursuant to this Interim Order shall not be construed as consent to the use of Cash Collateral after the occurrence of an Event of Default (other than funding the Carve-Out as set forth herein), regardless of whether the aggregate funds shown on the Approved Budget have been expended.

15

4.      Carve-Out.

(a)      Carve-Out.  Notwithstanding anything to the contrary herein, the Debtors'

obligations to the Prepetition Secured Parties, and the liens, security interests and superpriority

claims granted by this Interim Order or under the Prepetition Credit Documents, and the payment

of all such obligations, shall be subject and subordinate in all respects to payment of the following

fees and expenses: (i) all unpaid fees required to be paid to the Clerk of the Court or statutory fees

payable to the U.S. Trustee under 28 U.S.C. § 1930, with interest at the statutory rate pursuant to

31 U.S.C. § 3717 (the "Government Fees"), which shall not be limited by any Budget; (ii) all

reasonable fees and expenses up to $25,000 incurred by a trustee under Bankruptcy Code section

726(b) (the "Chapter 7 Expenses"), (iii) to the extent allowed at any time (whether by interim

order, final order, procedural order or otherwise), all unpaid fees and expenses (collectively,

the "Professional Fees") incurred by persons or firms retained by the Debtors

(the "Debtor Professionals") or any official committee of unsecured creditors appointed in the

chapter 11 cases (a "Committee" and such professionals to the Committee, the "Committee

Professionals" and together with the Debtor Professionals, the "Retained Professionals") pursuant

to Bankruptcy Code section 327, 328, 363 or 1103, as applicable, at any time before or on the first

business day following delivery of a Trigger Notice (defined below) and without regard to whether

such fees and expenses are provided for in any Approved Budget or were invoiced after the Carve-

Out Trigger Notice Date, whether allowed by the Court prior to or after delivery of the Trigger

Notice (the "Pre-Trigger Fees" and such amounts, the "Pre-Trigger Fee Cap"); and (iv) the

Professional Fees of (x) Debtor Professionals in an aggregate amount not to exceed $750,000 (the

"Debtor Post-Trigger Cap") and (y) Committee Professionals in an aggregate amount not to exceed

$250,000 (the "Committee Post-Trigger Fee Cap" and, together with the Debtor Post-Trigger Cap,

16

the "Post-Trigger Fee Cap" and, together with the Pre-Trigger Fee Cap, the "Carve-Out Cap") incurred after the first business day following delivery of a Trigger Notice (as defined herein) (the "Post-Trigger Fees").  Any payment or reimbursement made to any Retained Professionals on or after the delivery of the Trigger Notice shall permanently reduce the Carve-Out on a dollar-for-dollar basis (the foregoing clauses (i) through (iv), collectively, the "Carve-Out").

(b)  Trigger Notice.  For purposes of the Carve-Out, a "Trigger Notice" is a written notice delivered by the Superpriority Administrative Agent (acting at the direction of the Required Consenting Term Loan Lenders) by email through counsel to (i) the Debtors, (ii) any statutory committee appointed in these chapter 11 cases, (iii) any chapter 11 trustee, chapter 7 trustee or examiner appointed in these cases or subsequent chapter 7 cases, and (iv) the U.S. Trustee (collectively, the "Carve-Out Notice Parties"), in each case following the occurrence and during the continuation of a Termination Event  (as defined below), subject to any applicable grace period, waiver or forbearance, stating that the Post-Trigger Fee Cap has been invoked.   The term "Carve-Out Trigger Notice Date" shall mean the day on which a Trigger Notice is received by the Debtors. On the Carve-Out Trigger Notice Date, the Trigger Notice shall constitute a demand to the Debtors to transfer cash in an amount equal to the Carve-Out Cap less any amount then held in the Carve-Out Account (as defined in paragraph 4(c) below).

(c)  Carve-Out Account. Within three (3) business days of entry of this Order, the Debtors shall fund into a segregated account (the "Carve-Out Account") not subject to the control of the Prepetition Agent or any of the Prepetition Secured Parties an amount equal to the total budgeted Retained Professional fees for the first week set forth in the Approved Budget. Thereafter, the Debtors shall transfer into the Carve-Out Account cash on a weekly basis in an amount equal to the total budgeted Retained Professional fees for that week set forth in the

17

Approved Budget, *plus* or *minus* the difference between the actual fees and expenses incurred by Retained Professionals during the immediately preceding week and such budgeted amount.  The Debtors shall use such funds held in the Carve-Out Account to pay Retained Professional fees as they become allowed and payable pursuant to monthly, interim or final orders from the Court; provided, that the Debtors' obligations to pay the allowed fees and expenses of the Retained Professionals shall not be limited or deemed limited to funds held in the Carve-Out Account.

(d)    Immediately following receipt of a Trigger Notice, and prior to the payment of any Prepetition Secured Obligations, the Debtors shall be required to deposit into the Carve-Out Account cash in an amount equal to the difference between the Carve-Out Cap and the balance held in the Carve-Out Account as of the Trigger Notice Date.  Notwithstanding anything to the contrary herein, following delivery of a Trigger Notice, the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or disposition of any assets) of the Debtors until the Carve-Out Account has been fully funded as permitted above in an amount equal to all obligations benefiting from the Carve-Out.  Any payment or reimbursement made to any Retained Professional in respect of any Professional Fees prior to the delivery of the Trigger Notice shall not reduce the Carve-Out.

(e)    The amounts in the Carve-Out Account shall be available only to satisfy Professional Fees and other amounts included in the Carve-Out until such amounts are paid in full. Notwithstanding anything to the contrary herein, (i) the failure of the Carve-Out Account to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out and (ii) in no way shall the Approved Budget, the Carve-Out or Post-Trigger Fee Cap be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise).  All

18

funds in the Carve-Out Account shall be used first to pay all obligations benefitting from the Pre-Trigger Fee Cap, until paid in full, and then obligations benefitting from the Post-Trigger Fee Cap. Upon payment in full of all obligations benefitting from the Carve-Out, any amounts remaining in the Carve-Out Account shall revert to the Debtors' estates and constitute Cash Collateral of the Prepetition Secured Parties to be distributed in accordance with the priorities set forth in the Plan.

(f)     Payments from the Carve-Out Account shall be subject to any terms and conditions of the engagement agreements and appurtenant orders for the employment of each Retained Professional.  The Debtors shall be permitted to pay compensation and reimbursement of expenses incurred prior to the occurrence of a Termination Event or delivery of a Termination Notice to the extent allowed and payable under sections 330 and 331 of the Bankruptcy Code.

(g)     To the extent that professional fees and expenses of the Retained Professionals have been incurred by the Debtors or the Committee at any time before or on the first business day after delivery of a Trigger Notice but have not yet been allowed by the Court, such professional fees and expenses of the Retained Professionals shall constitute Professional Fees benefiting from the Carve-Out upon their allowance by the Court, whether by interim or final compensation order and whether before or after delivery of the Trigger Notice, and the Carve-Out Account shall be funded to include such professional fees and expenses.

(h)     <u>Limitation on Responsibility of Secured Parties</u>.  None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or expenses of any Retained Professional incurred in connection with these chapter 11 cases or any Successor Cases.  Nothing in this Interim Order shall be construed to obligate the Prepetition Secured Parties to pay compensation to, or to reimburse the expenses of, any Retained Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

5.      <u>Payments Free and Clear</u>.  Subject to the Carve-Out and paragraph 15 of this Interim Order, any and all payments or proceeds remitted to the Prepetition Agents on behalf of the Superpriority Lenders and Stub Lenders (together, the "<u>Prepetition Lenders</u>") pursuant to the provisions of this Interim Order, the Prepetition Credit Documents or any subsequent order of this Court, shall be irrevocable, received free and clear of any claim, interest, charge, assessment or other liability or encumbrance.

6.      <u>Adequate Protection</u>.  The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361, 363(e) and 364, and in consideration of the stipulations and consents set forth herein, to adequate protection of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), to the extent of any Diminution in Value of their interests therein.  As adequate protection, the Prepetition Agents, for the benefit of the Prepetition Secured Parties, are hereby granted the following (collectively, the "<u>Adequate Protection Obligations</u>"):

(1)      <u>Superpriority Adequate Protection Liens</u>. To the extent of any Diminution in Value of their interests in the Prepetition Collateral, the Superpriority Agents, for the benefit of the Superpriority Secured Parties, are hereby granted (effective and automatically perfected upon the Petition Date and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements), additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "<u>Superpriority Adequate Protection Liens</u>") any and all tangible and intangible pre- and postpetition property of the Debtors, whether existing before, on or arising after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, accounts receivable, other

rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, goods, investment property, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under Bankruptcy Code section 552(b) or otherwise, of all the foregoing, excluding causes of action under chapter 5 of the Bankruptcy Code ("Avoidance Actions"), but, upon entry of the Final Order, including proceeds of Avoidance Actions    (collectively, the "Adequate Protection Collateral"), without the necessity of the execution, recordation or other filing of any security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.

(2)    Stub Adequate Protection Liens. To the extent of any Diminution in Value of their interests in the Prepetition Collateral, the Stub Agent, for the benefit of the Stub Secured Parties, is hereby granted (effective and automatically perfected upon the Petition Date and without the necessity of the execution by Casa of security agreements, pledge agreements, mortgages, financing statements or other agreements), additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "Stub Adequate Protection Liens" and, together with the Superpriority Adequate Protection Liens, the "Adequate Protection Liens"), the Adequate Protection Collateral solely of Casa, without the necessity of the execution, recordation or other filing of any security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.

(3)    <u>Ranking of Liens</u>.  The Carve-Out, the Prepetition Permitted Liens, the Prepetition Liens and the Adequate Protection Liens granted hereunder shall have the following priority on the Shared Collateral and Non-Shared Collateral:

| Shared Collateral | Non-Shared Collateral |
|---|---|
| *First*, the Carve-Out | *First*, the Carve-Out |
| *Second*, the Prepetition Permitted Liens | *Second*, the Prepetition Superpriority Permitted Liens |
| *Third*, Adequate Protection Liens[3] | *Third*, the Superpriority Adequate Protection Liens |
| *Fourth*, the Prepetition Liens[4] | *Fourth*, the Prepetition Superpriority Liens |
| | *Fifth*, the Stub Adequate Protection Liens |

(4)    <u>Superpriority Section 507(b) Claims</u>.  To the extent of any Diminution in Value of their interests in the Prepetition Collateral, the Superpriority Agents, for the benefit of the Superpriority Secured Parties, are hereby granted allowed administrative expense claims against each Debtor with the priority set forth in section 507(b) of the Bankruptcy Code (the "<u>Superpriority Adequate Protection Claims</u>"); <u>provided</u>, that the Superpriority Adequate Protection Claims shall be subject and subordinate to the Carve-Out.  The Superpriority Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions.

---

[3] For the avoidance of doubt, the Superpriority Adequate Protection Liens and the Stub Adequate Protection Liens shall be *pari passu*.

[4] For the avoidance of doubt, the Prepetition Superpriority Liens and the Prepetition Stub Liens shall be *pari passu*.

(5)    Stub Section 507(b) Claims. To the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, the Stub Agent, for the benefit of the Stub Secured Parties, is hereby granted an allowed administrative expense claim against Casa with the priority set forth in section 507(b) of the Bankruptcy Code (the "Stub Adequate Protection Claims" and, together with the Superpriority Adequate Protection Claims, the "Adequate Protection Claims"); provided, that, the Stub Adequate Protection Claims shall be subject and subordinate to the Superpriority Adequate Protection Claims and the Carve-Out. The Stub Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral at Casa, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions.

(6)    Reporting. The Debtors shall comply with all reporting requirements set forth in the Superpriority Credit Documents.

7.    Right to Seek Additional Adequate Protection. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request additional or different forms of adequate protection at any time or any party in interest's right to object thereto.

8.    Perfection of Adequate Protection Liens.

(a)    The Prepetition Agents are hereby authorized, but not required, to execute in the name of the applicable Debtors, as their true and lawful attorneys, with full power of substitution (to the maximum extent permitted by law) and to file or record any financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the Adequate Protection Liens. Whether or not the Prepetition Agents, in their sole discretion, choose

to file or record any such financing instruments, and subject to paragraph 15 herein and the entry of the Final Order, the Adequate Protection Liens shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order. Upon the request of the Prepetition Agents, the Debtors, without any further consent of any party, are authorized to take, execute, deliver, and file such instruments (in the case of the Prepetition Secured Parties, without representation or warranty of any kind) to enable the Prepetition Agents, to further validate, perfect, preserve and enforce the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Interim Order may, in the discretion of the applicable Prepetition Agents, be filed with or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing or recording offices are hereby authorized to accept such copy of this Interim Order for filing or recording.

(c)     Any provision of any lease, license, contract or other agreement that requires (i) the consent or approval of one or more third party or (ii) the payment of any fees or incurrence of obligations, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any the Debtors' interests in any lease, license, or other agreement, or the proceeds thereof, or other collateral related thereto in connection with the granting of the Adequate Protection Liens, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Thereupon, any such provision shall have no force and effect with respect to the granting of the Adequate Protection Liens on the Debtors' interests in any lease, license, or other agreement or

24

the proceeds of any assignment, and/or sale thereof by any Debtor in accordance with the terms of this Interim Order.

9.      <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate them for any Diminution in Value. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties with respect to the existence or non-existence of any Diminution in Value.

10.      <u>Termination Events</u>.  Unless a Termination Event is waived by the Superpriority Agent (acting at the direction of the Required Consenting Term Loan Lenders) in writing, subject to the applicable notice periods and other terms set forth in Paragraph 11 below, the Debtors' right to use Cash Collateral shall terminate, without prior order of this Court or any further action by the Prepetition Secured Parties, on the earliest to occur of any of the following (each, a "<u>Termination Event</u>"):

(1)      the Debtors' failure to comply with any provision of this Interim Order and such failure to comply (if curable) shall not have been cured within three (3) business days following provision of notice of such failure from the Superpriority Agent;

(2)      the Debtors shall have breached the Variance Covenant for any Testing Period with respect to an Approved Budget;

(3)      the failure of the Debtors to make any payment due under this Interim Order within five (5) business days after such payment becomes due;

(4)      the date of the Debtors' filing of an application, motion, or other pleading seeking to amend, modify, reverse, revoke, stay, rescind, vacate, supplement, or extend

this Interim Order without the prior written consent of the Required Consenting Term Loan Lenders;

(5)     this Interim Order ceases, for any reason to be in full force and effect;

(6)     the Court shall have entered an order amending, reversing, revoking, staying, rescinding, vacating, supplementing, extending, or otherwise modifying this Interim Order without the consent of the Required Consenting Term Loan Lenders, or allowing the use of Prepetition Collateral or Adequate Protection Collateral on any terms other than as set forth in this Interim Order without the consent of the Required Consenting Term Loan Lenders;

(7)     the date of the Debtors' filing of any application, motion, or other pleading seeking approval of debtor in possession financing without the consent of the Required Consenting Term Loan Lenders, or the entry of an order approving debtor in possession financing for the Debtors without the consent of the Required Consenting Term Loan Lenders;

(8)     the entry of any postpetition judgment against the Debtors in excess of $500,000;

(9)     except with respect to applications for the payment of fees of Retained Professionals, the date an application, motion, or other pleading is filed by the Debtors for the approval of any superpriority claim or any lien that is *pari passu* with or senior to the Adequate Protection Claims, the Adequate Protection Liens, the Prepetition Liens or the Prepetition Secured Obligations without the prior written consent of the Required Consenting Term Loan Lenders;

(10)     the date any of the Debtors or any affiliate of the Debtors files any pleading or commences any action against any Prepetition Secured Party challenging the validity

26

or enforceability of any of the Prepetition Secured Obligations or any of the Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition Secured Parties arising under or related to any of the Prepetition Secured Obligations;

(11)    the date any court enters an order dismissing these chapter 11 cases, converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (each, a "Successor Case"), appointing a chapter 11 trustee in any of these chapter 11 cases, or an examiner with expanded powers relating to the operation of the Debtors or administration of any of these chapter 11 cases, or terminates the Debtors' exclusive periods under Bankruptcy Code section 1121, unless, in each case, consented to in writing by the Required Consenting Term Loan Lenders;

(12)    the Court has entered an order granting relief from the automatic stay in order to permit any party to proceed against any Prepetition Collateral or Adequate Protection Collateral with a fair market value in excess of $500,000; and

(13)    the Restructuring Support Agreement shall have been terminated in accordance with its terms;

(14)    the following milestones (the "Milestones") are not met, unless extended or waived by the Required Consenting Term Loan Lenders (as defined in the Restructuring Support Agreement):[5]

(i)    no later than April 3, 2024, the Debtors shall have filed the Plan, the Disclosure Statement, the First Day Pleadings (including a motion seeking

---

[5] Capitalized terms used but not defined in this paragraph 10 shall have the meanings ascribed to them in section 1 of the Restructuring Support Agreement.

entry of the Cash Collateral Order), the Solicitation Procedures Motion, the Bar Date Motion, the Bidding Procedures Motion, and the Private Sale Motion;

(ii)     no later than April 5, 2024, the Bankruptcy Court shall have entered this Interim Cash Collateral Order;

(iii)    no later than April 23, 2024, the Debtors shall have filed their schedules of assets and liabilities and statements of financial affairs;

(iv)    no later than April 24, 2024, the Bankruptcy Court shall have entered the Private Sale Order, the Final Cash Collateral Order, the Solicitation Procedures Order, and the Bar Date Order;

(v)     no later than April 26, 2024, the Debtors shall have commenced solicitation of votes to accept or reject the Plan;

(vi)    no later than May 10, 2024, the Debtors shall have filed the Plan Supplement;

(vii)   no later than May 31, 2024, the Bankruptcy Court shall have held a hearing on confirmation of the Plan and approval of any Sale Transaction;

(viii)  no later than May 31, 2024, the Bankruptcy Court shall have entered the Confirmation Order, an order granting final approval of the Disclosure Statement and the Sale Order approving the sale of the Cable Assets; and

(ix)    no later than June 6, 2024, the Plan Effective Date shall have occurred and the Sale Transactions shall have closed.

11.     Remedies Upon a Termination Event.  The Debtors shall provide notice to counsel to the Prepetition Agents, counsel to any statutory committee appointed in these chapter 11 cases, and the U.S. Trustee immediately upon knowledge of the occurrence of any Termination Event.

Upon the occurrence of a Termination Event, following the giving of not less than four (4) business days' (the "Notice Period") written notice (the "Enforcement Notice"), which may be given by email, to counsel to the Debtors, the U.S. Trustee, counsel to any official committee of unsecured creditors, (i) the authorization for the Debtors' use of Cash Collateral shall terminate, and (ii) the Superpriority Secured Parties may seek to exercise any rights and remedies available to them under the Prepetition Credit Documents, this Interim Order or applicable law, subject to the Carve-Out (and the automatic stay shall be automatically terminated at the end of the Notice Period to allow them to do so, unless the Court orders otherwise).  The Debtors shall be entitled to seek an emergency hearing during the Notice Period, or such other time as this Court can schedule the hearing in accordance with the Local Rules.  The Debtors and the Prepetition Secured Parties agree not to oppose a request by any party for an expedited hearing filed during such Notice Period.

12.     Preservation of Rights Granted Under this Interim Order.

(a)     Subject to the Carve-Out, other than as set forth in this Interim Order, the Adequate Protection Liens shall not be made subject to, or *pari passu* with, any lien or security interest granted in any of these chapter 11 cases (other than a lien that is perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code) or any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

(b)     In the event this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, the validity and priority of any liens or claims granted to the Prepetition Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal, or modification shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the

Prepetition Secured Parties shall be entitled to the protections afforded in Bankruptcy Code section 363(m) with respect to all uses of the Prepetition Collateral (including Cash Collateral) and all Adequate Protection Obligations.

(c)     Notwithstanding any order dismissing any of these cases under Bankruptcy Code section 1112 or otherwise, (x) the Adequate Protection Liens, the Adequate Protection Claims and the other administrative rights and benefits granted pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations and Prepetition Secured Obligations are indefeasibly paid in full, in cash; (y) all Adequate Protection Liens, Adequate Protection Claims and other rights and benefits granted pursuant to this Interim Order shall remain binding on all parties in interest; and (z) this Court shall retain jurisdiction for the purposes of enforcing the rights, claims, liens, and security interests referred to in this Paragraph to the extent allowed by applicable law.

(d)     Except as expressly provided in this Interim Order,  the Adequate Protection Liens, the Adequate Protection Claims, and all other rights and remedies of the Prepetition Secured Parties granted by this Interim Order shall survive, shall maintain their priority as provided in this Interim Order, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of these chapter 11 cases to a Successor Case, dismissing any of the cases, terminating the joint administration of the cases, or (ii) the entry of an order confirming a plan in any of these cases.  The terms and provisions of this Interim Order shall continue in these chapter 11 cases, in any Successor Cases, or if these cases are no longer jointly administered.  The Adequate Protection Liens and the Adequate Protection Claims and all other rights and remedies of the Prepetition Secured Parties granted by this Interim Order shall continue in full force and effect until the effective date of the Plan.

30

13.    <u>Professional Fees</u>.

(a)    The Debtors are authorized and directed to pay, without further Court order, the reasonable and documented fees and expenses whether incurred before or after the Petition Date of (i) professionals retained by the ad hoc group of Superpriority Lenders (the "<u>Ad Hoc Group Professionals</u>"), including but not limited to (A) Akin Gump Strauss Hauer & Feld LLP, as counsel, (B) FTI Consulting, Inc., as financial advisor, (C) Ashurst LLP, as Australian counsel and (d) Blank Rome LLP, as Delaware counsel; and (ii) Paul Hastings LLP, as counsel to the Prepetition Agents, and, if necessary, local counsel to the Prepetition Agents (collectively, the "<u>Lender Professionals</u>").  The Lender Professionals shall not be required to file motions or applications with respect to the fees and expenses incurred by the Lender Professionals (the "<u>Lender Professionals Fees</u>"); *provided*, *however* that any time such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee and counsel to any Committee (collectively, the "<u>Fee Notice Parties</u>"). If no objection to payment of the requested Lender Professional Fees and expenses is made, in writing, by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "<u>Fee Objection Period</u>"), then such invoice shall be promptly paid, without further order of, or application to, the Court or notice to any other party, and, in any case, within five (5) calendar days following the expiration of the Fee Objection Period and shall not be subject to any

further review, challenge, or disgorgement.  For the avoidance of doubt, the provisions of such

invoices shall not constitute a waiver of attorney-client privilege or any benefits of the attorney

work product doctrine.  If within the Fee Objection Period, a Fee Notice Party sends to the affected

professional and files with the Court a written objection to such invoice, then only the disputed

portion of such Lender Professionals Fees shall not be paid until the objection is resolved by the

applicable parties in good faith or by order of the Court, and any undisputed portion shall be paid

within five (5) calendar days following the expiration of the Fee Objection Period.

       (b)     In addition, the Debtors will indemnify the Prepetition Secured Parties and

the Prepetition Agents and their respective affiliates, and hold them harmless from and against

reasonable and documented out-of-pocket costs, expenses and liabilities arising out of, in

connection with, or by reason of the transactions contemplated hereby, including in respect of the

granting of Adequate Protection Liens, Adequate Protection Claims, and all documents related to

and all transactions contemplated by the foregoing.

     14.   <u>Limitation on Use of Cash Collateral</u>.  Subject to Paragraph 15, none of the

Adequate Protection Collateral, Prepetition Collateral, Cash Collateral, or the Carve-Out may be

used to:  (i) investigate, initiate, prosecute, join, or finance the initiation or prosecution of any

claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense,

or other litigation of any type (a) against any of the Prepetition Secured Parties (each in their

capacities as such), (b) seeking to invalidate, set aside, avoid or subordinate, in whole or in part,

any Prepetition Secured Obligations or Prepetition Liens or (c) for monetary, injunctive, or other

affirmative relief against any of the Prepetition Secured Parties (in their capacities as such);

(ii) object to challenge in any way the legality, validity, extent, priority, perfection or

enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf

of each of the Prepetition Secured Parties related to the Prepetition Secured Obligations; (iii) assert, commence or prosecute any claims or causes of action against any Prepetition Secured Party; (iv) prosecute an objection to, contest in any manner or raise any defenses to, the validity, extent, amount, perfection, priority or enforceability of any of the Prepetition Liens or any other rights or interests of any of the Prepetition Secured Parties related to the Prepetition Secured Obligations or (v) take any action that, if successful, would be reasonably likely to result in a Termination Event; *provided* that up to $25,000 of the Prepetition Collateral, including Cash Collateral (the "Committee Investigation Budget"), may be used by a Committee appointed in the Debtors' chapter 11 cases to investigate the claims and liens of the Prepetition Secured Parties, solely with respect to the Prepetition Secured Obligations and Prepetition Collateral within the Challenge Period (as defined below).

15.    Effect of Stipulations on Third Parties.

(a)    The acknowledgments, stipulations, admissions, waivers and releases contained herein shall be binding upon the Debtors, their estates, and any successor or assigns thereto upon entry of this Interim Order.  The acknowledgments, stipulations, admissions, waivers and releases contained in this Interim Order shall also be binding upon all other parties in interest, including any Committee, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (i) such party, having obtained the requisite standing, has duly filed an adversary proceeding or contested matter challenging the validity, perfection, priority, extent, or enforceability of the Prepetition Liens or the Prepetition Secured Obligations, or otherwise asserting or prosecuting any other claims, counterclaims or causes of action, objections, contests, or defenses (each, a "Challenge") against the Prepetition Secured Parties in connection with any matter related to the Prepetition Credit Documents, the Prepetition Collateral, the

Prepetition Liens, or the Prepetition Secured Obligations by no later than the earlier of (A) confirmation of a chapter 11 plan for the Debtors, (B) entry of an order under Bankruptcy Code section 363 approving the sale of all or substantially all of the Debtors' assets, other than the sale of the Debtors' cloud-native software portfolio and radio access networks businesses and related assets to Lumine Group Holdco, Inc. or (C) seventy-five (75) calendar days from the entry of this Interim Order, subject to further written extension (which writing may be in the form of e-mail by counsel) by the Superpriority Agents (at the direction of the Required Consenting Term Loan Lenders) (the "Challenge Period"); *provided* that in the event that, prior to the expiration of the Challenge Period, (x) any of these cases is converted to a Successor Case or (y) a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended for a period of thirty (30) days solely with respect to any Trustee, commencing on the occurrence of either of the events described in the foregoing clauses (x) and (y); and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the party asserting any Challenge sustaining any Challenge in such duly filed adversary proceeding or contested matters. If no such adversary proceeding or contested matter is filed prior to the expiration of the Challenge Period, without further order of this Court: (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to any Challenge (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in the chapter 11 cases and any Successor Cases, if any; (y) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding,

perfected, non-avoidable liens, not subject to setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery; and (z) the Prepetition Secured Obligations, the Prepetition Liens, and the Prepetition Secured Parties (in their capacities as such) shall not be subject to any other or further Challenge and all parties in interest (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period) shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action.  If an adversary proceeding or contested matter is timely filed by a party that has been granted standing prior to the expiration of the Challenge Period, (i) the stipulations and admissions contained in this Interim Order shall nonetheless remain binding and preclusive on all parties in interest, except for the party that has timely filed such adversary proceeding and solely as to the stipulations or admissions that are specifically and expressly challenged in such adversary proceeding or contested matter; and (ii) any Challenge not brought in such adversary proceeding or contested matter shall be forever waived; *provided* that, if and to the extent any Challenge to a particular stipulation or admission is withdrawn, denied or overruled by entry of an order by a court of competent jurisdiction, such order shall be binding on the Debtors' estates and all parties in interest.  For the avoidance of doubt, any chapter 7 trustee appointed or elected in these cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations and stipulations of the Debtors in this interim order.  For the avoidance of doubt, no professional

fees or expenses of any party shall be funded by the Debtors' estates in connection with any Challenge and any fees incurred in respect thereof shall not be required to be paid from Adequate Protection Collateral or Prepetition Collateral (including Cash Collateral) in order for the Debtors to confirm a chapter 11 plan and have such plan go effective or consummate any sale of assets under Bankruptcy Code section 363.

(b)     Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any Challenge or any claims or causes of action belonging to the Debtors or their estates.

16.     <u>Insurance</u>.  At all times the Debtors shall maintain casualty and loss insurance coverage of the Prepetition Collateral on substantially the same terms as that maintained prior to the Petition Date.

17.     <u>Credit Bidding</u>.  In the sale or other disposition of any assets of the Debtors, whether it is sale pursuant to Bankruptcy Code section 363, pursuant to a plan of reorganization or liquidation, or by a chapter 11 or chapter 7 trustee, subject to Bankruptcy Code section 363(k), the Superpriority Agents (on behalf, and at the direction, of the Required Consenting Term Loan Lenders) shall have the unqualified and unconditional right to credit bid: (x) up to the full amount of the Prepetition Superpriority Obligations and (y) the Adequate Protection Obligations with respect to the Superpriority Secured Parties. Each Superpriority Secured Party shall automatically be deemed a "qualified bidder" with respect to any such disposition of assets of the Debtors.  The Superpriority Agents, on behalf, and at the direction, of the Required Consenting Term Loan

Lenders, shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid to any acquisition entity or joint venture formed in connection with such credit bid.

18.    <u>Cloud/RAN Expense Reimbursement Amounts</u>.[6]    The Expense Reimbursement Amount is hereby approved and shall constitute allowed an allowed administrative expense under section 503(b) of the Bankruptcy Code.    In the event that the Cloud/RAN Asset Purchase Agreement is terminated pursuant to section 9.1(b), section 9.1(c), or section 9.1(f) therein, (a) the Debtors are hereby authorized and directed to pay up to $375,000 of the Expense Reimbursement Amount (the "<u>Initial Portion</u>") on a senior basis to the Prepetition Secured Obligations and any other liens of the Prepetition Secured Parties, including the liens granted in this Order; and (b) any remaining portion of the Expense Reimbursement Amount after payment of the Initial Portion set forth in the preceding clause (c) (the "<u>Remaining Portion</u>") shall have the priority of an allowed administrative expense under the Bankruptcy Code; *provided* that such Remaining Portion shall be payable only be payable on or after the effective date after a confirmed chapter 11 plan; *provided further* that in the event of a chapter 7 liquidation, claims with respect to the Remaining Portion shall be valid administrative claims against the Debtors' estates.

19.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Debtors or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Credit Documents, or applicable law shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

20.    <u>Limitation on Charging Expenses</u>. Subject to entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of these chapter 11 cases or any

---

[6] Capitalized terms used but not defined in this paragraph 18 shall have the meanings provided in section 1.1 of that certain Asset Purchase Agreement dated April 2, 2024 by and among Casa Systems, Inc. and certain of its Non-Debtor Affiliates as Sellers and Lumine Group Holdco Inc. as Purchaser.

37

Successor Cases at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the Prepetition Agents or the Prepetition Secured Parties, respectively, upon the Prepetition Collateral, shall be charged against or recovered from the Prepetition Collateral, whether pursuant to Bankruptcy Code section 506(c), any other legal or equitable doctrine (including unjust enrichment) or otherwise, without the prior written consent of the Required Consenting Term Loan Lenders, and no such consent shall be implied, directly or indirectly, from anything contained in this Interim Order (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties.

21.     <u>No Marshaling; Section 552(b) Waiver</u>. Subject to entry of the Final Order, in no event shall the Prepetition Agents or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Adequate Protection Collateral, Adequate Protection Obligations, Prepetition Collateral or the Prepetition Secured Obligations, and all proceeds shall be received and applied in accordance with the Prepetition Loan Documents. Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and in no event shall the "equities of the case" exception in Bankruptcy Code section 552(b) apply to the Prepetition Secured Parties or the Prepetition Collateral.

22.     <u>Binding Effect; Successors and Assigns</u>.  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the Prepetition Secured Parties, any Committee, the Debtors, and their respective successors and assigns (including any Trustee, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any

of the Debtors or with respect to the property of their estates) and shall inure to the benefit of the

Prepetition Secured Parties.

23.     <u>Limitation of Liability</u>.  In permitting the use of their Cash Collateral, or exercising

any rights or remedies as and when permitted pursuant to this Interim Order, the Prepetition

Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting

as a "responsible person" or "owner or operator" with respect to the operation or management of

the Debtors or their business, nor shall they owe any fiduciary duty to any of the Debtors, their

creditors or estates, or constitute or be deemed to constitute a joint venture or partnership with any

of the Debtors.   Furthermore, nothing in this Interim Order shall in any way be construed or

interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability

for any claims arising from the prepetition or postpetition activities of any of the Debtors and their

respective affiliates (as defined in Bankruptcy Code section 101(2)).

24.     <u>Master Proofs of Claim</u>.  None of the Prepetition Secured Parties shall be required

to file a proof of claim in any of these chapter 11 cases or successor cases, as applicable, and the

Debtors' Stipulations set forth herein shall be deemed to constitute a timely filed proof of claim

(but as to which the Debtors may not object), with respect to the Prepetition Secured Obligations.

However, notwithstanding the foregoing or anything to the contrary in the Motion or this Interim

Order, the Prepetition Agents are authorized, but not directed or required, to file one master proof

of claim on behalf of the Prepetition Secured Parties on account of any and all claims arising under

the Prepetition Credit Documents or hereunder (a "<u>Master Proof of Claim</u>").   For administrative

convenience, any such Master Proof of Claim may be filed in the case of Debtor Casa Systems,

Inc., and such Master Proof of Claim shall be deemed to have been filed and asserted against all

Debtors.   For the avoidance of doubt, the provisions set forth in this Paragraph and any Master

Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest, including, without limitation, the numerosity requirements set forth in Bankruptcy Code section 1126. The Prepetition Agents shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the Prepetition Secured Parties, which instruments, agreements, or other documents will be provided upon written request to counsel to the Prepetition Agents.

25.     Automatic Stay Modified.   The automatic stay shall be modified to the extent necessary to allow the Prepetition Secured Parties to provide any notices to the Debtors or take any other action as contemplated by and in accordance with this Interim Order.

26.     No Third-Party Rights.   Except as explicitly provided for in this Interim Order, any rights and obligations granted in this Interim Order inure solely for the benefit of the Prepetition Secured Parties, and no third party shall have any rights hereunder.

27.     Necessary Action.   The Debtors are authorized to take any and all actions and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms of this Interim Order and the transactions contemplated hereby.

28.     Effectiveness.   This Interim Order shall constitute findings of fact and conclusions of law and shall be effective as of the Petition Date.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, this Interim Order shall

be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

29.     <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

30.     <u>Final Hearing</u>.  The Final Hearing shall be held on April [●], 2024, at [●], prevailing Eastern Time; provided that the Final Hearing may be adjourned or otherwise postponed upon the Debtors filing a notice of such adjournment if the Required Consenting Term Loan Lenders so consent.  The Debtors shall provide notice of the Final Hearing and the proposed Final Order in accordance with the Local Rules to all parties having been given notice of the Hearing and to any other party entitled to notice pursuant to Local Rule 9013-(m) and Bankruptcy Rule 2002.  Any objections or responses to entry of the Final Order shall be filed on or before [●], prevailing Eastern Time, on April [●], 2024 and shall be served upon: (i) the Debtors, 100 Old River Road, Andover, MA 01810; (ii) counsel to the Debtors, (a) Sidley Austin LLP, 787 Seventh Ave, New York, New York 10019, Attn:   Steven E. Hessler, Esq. (shessler@sidley.com), Patrick Venter, Esq (pventer@sidley.com), and Margaret R. Alden (malden@sidley.com) and (b) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801, Attn:     Joseph   Barry,   Esq.   (jbarry@ycst.com)   and   Joseph   M.   Mulvihill,   Esq. (jmulvihill@ycst.com); (iii) counsel to the Ad Hoc Group, (a) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn:  Philip C. Dublin (pdublin@akingump.com), Kevin Eide (keide@akingump.com), and Melanie A. Miller (melanie.miller@akingump.com), and (b) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801 (Attn: Stanley B. Tarr (stanley.tarr@blankrome.com); (iv) counsel to the Prepetition Agents, Paul Hastings LLP, 200 Park Avenue, New York, NY 10036 (Attn: Alex Cota (alexcota@paulhastings.com) and Sam

41

Lawand (samlawand@paulhastings.com)); (v) counsel to the Committee, if any; and (vi) the Office of the U.S. Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Wilmington, DE 19801, Attn:  Jane M. Leamy and Malcom M. Bates (jane.m.leamy@usdoj.gov and malcom.m.bates@usdoj.gov).

      31.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to resolve any and all disputes arising under or related to the provisions of this Interim Order, and to enforce all of the conditions of this Interim Order.

**<u>Exhibit 1</u>**

**Approved Budget**

**Casa Systems, Inc.**
Cash Collateral Budget

*($ in millions)*

Petition Date: 4/3

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | Total Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Week No. >>* | | | | | | | | | | | | |
| *Week Ending >>* | 4/1/24 | 4/8/24 | 4/15/24 | 4/22/24 | 4/29/24 | 5/6/24 | 5/13/24 | 5/20/24 | 5/27/24 | 6/3/24 | 6/10/24 | |
| **Total Receipts** | 4.8 | 0.1 | 3.4 | 2.2 | 2.0 | 1.4 | 1.6 | 7.2 | 1.2 | 1.3 | 0.5 | 25.7 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Vendor Payments | (0.8) | (0.1) | (0.1) | (0.1) | (0.8) | (0.2) | (0.0) | (0.3) | (1.4) | (1.0) | (2.7) | (7.6) |
| Payroll & Benefits | (1.9) | (0.3) | (2.2) | (0.8) | (2.4) | (0.8) | (2.3) | (0.1) | (1.4) | (0.2) | (0.9) | (13.1) |
| Rent & Utilities | - | - | - | (0.4) | - | - | - | - | (0.4) | - | - | (0.8) |
| All Other | - | - | - | - | - | - | (0.8) | - | - | - | (0.8) | (1.5) |
| **Total Operating Disbursements** | (2.6) | (0.4) | (2.3) | (1.3) | (3.1) | (1.0) | (3.1) | (0.4) | (3.3) | (1.3) | (4.4) | (23.1) |
| **Operating Cash Flow** | $ 2.2 | $ (0.3) | $ 1.1 | $ 1.0 | $ (1.1) | $ 0.4 | $ (1.5) | $ 6.8 | $ (2.1) | $ (0.0) | $ (3.9) | $ 2.6 |
| **Non-Operating Disbursements** | | | | | | | | | | | | |
| Capital Expenditures | - | (0.1) | - | - | - | - | (0.1) | - | - | - | (0.1) | (0.3) |
| Debt service (payments) / proceeds | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Operating Disbursements** | - | (0.1) | - | - | - | - | (0.1) | - | - | - | (0.1) | (0.3) |
| **Restructuring Adjustments** | | | | | | | | | | | | |
| Professional Fees | (3.6) | (1.2) | (1.1) | (1.2) | (3.8) | (1.2) | (1.2) | (1.2) | (1.2) | (1.1) | (1.2) | (18.0) |
| RIF/Severance | (0.1) | - | - | - | - | - | (0.0) | - | - | - | - | (0.1) |
| FDM Relief | - | - | (0.3) | (0.3) | (0.3) | (0.3) | (0.3) | (0.3) | (0.3) | (0.3) | - | (2.0) |
| Cloud Sale Proceeds | - | - | - | - | 15.0 | - | - | - | - | - | - | 15.0 |
| Utility Deposit | - | (0.2) | - | - | - | - | - | - | - | - | - | (0.2) |
| **Total Restructuring Adjustments** | (3.7) | (1.4) | (1.4) | (1.4) | 11.0 | (1.4) | (1.4) | (1.5) | (1.4) | (1.4) | (1.2) | (5.2) |
| **Net Cash Flow** | $ (1.5) | $ (1.8) | $ (0.3) | $ (0.5) | $ 9.9 | $ (1.0) | $ (3.0) | $ 5.4 | $ (3.5) | $ (1.4) | $ (5.2) | $ (2.9) |
| Beginning Cash Balance | $ 10.5 | $ 9.1 | $ 7.3 | $ 7.0 | $ 6.6 | $ 16.5 | $ 15.5 | $ 12.4 | $ 17.8 | $ 14.3 | $ 12.9 | $ 10.5 |
| Net Cash Flow | (1.5) | (1.8) | 0.3 | (0.5) | 9.9 | (1.0) | (3.0) | 5.4 | (3.5) | (1.4) | (5.2) | (2.9) |
| **Ending Book Cash Balance** | $ 9.1 | $ 7.3 | $ 7.0 | $ 6.6 | $ 16.5 | $ 15.5 | $ 12.4 | $ 17.8 | $ 14.3 | $ 12.9 | $ 7.6 | $ 7.6 |
| Less: Restricted cash | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) |
| Less: China | (0.8) | (0.7) | (0.2) | (0.1) | (0.5) | (0.1) | (0.1) | (0.6) | (0.4) | (0.1) | (0.4) | (0.4) |
| **Ending Available Cash** | $ 6.2 | $ 4.5 | $ 4.7 | $ 4.4 | $ 13.9 | $ 13.3 | $ 10.3 | $ 15.2 | $ 11.9 | $ 10.8 | $ 5.2 | $ 5.2 |
| Less: Intl Cash | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) |
| **Ending Available Cash - US** | $ 4.2 | $ 2.6 | $ 2.7 | $ 2.4 | $ 11.9 | $ 11.3 | $ 8.3 | $ 13.2 | $ 9.9 | $ 8.8 | $ 3.2 | $ 3.2 |
| Contingency and Minimum Cash | - | - | - | - | - | - | - | - | - | - | (2.0) | (2.0) |
| **Ending Cash (Shortfall) - US** | $ 4.2 | $ 2.6 | $ 2.7 | $ 2.4 | $ 11.9 | $ 11.3 | $ 8.3 | $ 13.2 | $ 9.9 | $ 6.8 | $ 1.2 | $ 1.2 |
| | | | | | Bid Procedures Approved / Cloud Sale Close | | Bid Deadline | Auction | | Cable Sale Closing | | |
| *Memo:* | | | | | | | | | | | | |
| Casa US Available Cash | $ 4.2 | $ 2.6 | $ 2.7 | $ 2.4 | $ 11.9 | $ 11.3 | $ 8.3 | $ 13.2 | $ 9.9 | $ 8.8 | $ 3.2 | $ 3.2 |
| Casa Intl Available Cash | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 |
| **Total** | $ 6.2 | $ 4.5 | $ 4.7 | $ 4.4 | $ 13.9 | $ 13.3 | $ 10.3 | $ 15.2 | $ 11.9 | $ 10.8 | $ 5.2 | $ 5.2 |

**Note:**
Includes both Debtors and Non-Debtors Excluding NetComm Entities