# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CASA SYSTEMS, INC., *et al.*[1] | Case No. 24-10695 (KBO) |
| Debtors. | (Jointly Administered) |

### SUPPLEMENTAL DECLARATION OF DAVID S. ZUBRICKI
### IN SUPPORT OF THE DEBTORS' CLOUD/RAN SALE MOTION

I, David S. Zubricki, hereby declare under penalty of perjury as follows:

1. On April 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, (II) Approving Assumption and Assignment Procedures in Connection Therewith, (III) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases to the Purchaser, and (IV) Granting Related Relief* [Docket No. 42] (the "Cloud/RAN Sale Motion"). I previously submitted the *Declaration of David S. Zubricki in Support of the Debtors' Bidding Procedures Motion and Cloud/RAN Sale Motion* [Docket No. 47] (the "Prior Declaration").[2]

---

[1] The Debtors in this chapter 11 case, together with the last four digits of the Debtors' federal tax identification number, are Casa Systems, Inc. (8867), Casa Systems Securities Corporation (1151), and Casa Properties LLC (6767). The Debtors' service address is 100 Old River Road, Andover, MA 01810.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Prior Declaration, the Cloud/RAN Sale Motion, or the Cloud/RAN Auction Procedures Order (as defined below), as applicable.

3.     In particular, I believe that approval of the Cloud/RAN Sale Transaction through a sale process on an expedited timeline is necessary under the circumstances to fund these chapter 11 cases and bring them to a successful conclusion.

4.     Although Ducera (as defined below) is being compensated for its work as the investment banker proposed to be retained by the Debtors, I am not being compensated separately for this Declaration or testimony.  Unless otherwise stated herein, all facts, statements, or opinions included in this Declaration are based upon my personal knowledge of the Debtors' operations and financial performance, information learned from my review of relevant financial and operational data regarding the Debtors, information provided to me by Ducera professionals involved in advising the Debtors in these chapter 11 cases, information provided to me or verified by the Debtors or the Debtors' other professional advisors, my involvement with the sale processes for the Debtors' assets, or my experience advising both distressed and non-distressed businesses.  If called upon to testify, I could and would testify to the facts set forth herein on that basis.  I am over the age of 18 years and authorized to submit this Declaration.

**Professional Background and Qualifications**

5.     I am a Managing Director at Ducera Partners LLC ("Ducera"), and a registered representative of Ducera Securities LLC, which maintains its principal office at 11 Times Square, 36th Floor, New York, New York 10036, and the proposed investment banker for the Debtors in the above-captioned chapter 11 cases.

6.     Ducera is an investment banking firm specializing in providing leading-edge capital structure and restructuring advice to companies, creditors, and investors in bankruptcy.  Ducera provides a broad range of corporate and financial services to its clients, including: (a) general corporate advice; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; and

(d) private placements. Ducera and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Ducera's business reorganization professionals have served as financial and strategic advisors in numerous cases, including, among others: *In re Revitalid Pharmaceutical Corp.*, No. 23-11704 (BLS) (Bankr. D. Del. Nov. 15, 2023) [Docket No. 105]; *In re Yellow Corp.*, Case No. 23-11069 (CTG) (Bankr. D. Del. Sept. 25, 2023) [Docket No. 648]; *In re Diebold Holding Co., LLC*, Case No. 23-90602 (DRJ) (Bankr. S.D. Tex. July 18, 2023) [Docket No. 266]; *In re Virgin Orbit Holdings, Inc.*, Case No. 23-10405 (KBO) (Bankr. D. Del. May 15, 2023) [Docket No. 261]; *In re Core Scientific, Inc.*, Case No. 22-90341 (DRJ) (Bankr. S.D. Tex. March 13, 2023) [Docket No. 675]; *In re Endo Int'l plc.*, Case No. 22-22549 (JLG) (Bankr. S.D.N.Y. Oct. 25, 2022) [Docket No. 527]; *In re GBG USA Inc.*, Case No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 22, 2021) [Docket No. 230]; *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Mar. 16, 2021) [Docket No. 1741]; *In re Superior Energy Servs., Inc.*, *et al.*, Case No. 20-35812 (DRJ) (Bankr. S.D. Tex. Feb. 2, 2021) [Docket No. 316]; *In re Remington Outdoor Co.*, Case No. 20-81688 (CRJ) (Bankr. N.D. Ala. Aug. 11, 2020) [Docket No. 283]; *In re Imerys Talc Am., Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Aug. 7, 2019) [Docket No. 927]; *In re Paniolo Cable Co., LLC*, Case No. 18-01319 (RJF) (Bankr. D. Haw. May 7, 2019) [Docket No. 121]; *In re Specialty Retail Shops Holding Corp.*, Case No. 19-80064 (TLS) (Bankr. D. Neb. Jan. 25, 2019) [Docket No. 185]; *In re Sungevity*, *Inc.*, Case No. 17-10561 (KG) (Bankr. D. Del. Apr. 10, 2017) [Docket No. 202]; *In re Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D. Va. Jan. 26, 2018) [Docket No. 1624]; *In re Panda Temple Power, LLC,* Case No. 17-10839 (LSS) (Bankr. D. Del. May 25, 2017) [Docket No. 164]; *In re Dacco Transmission Parts (NY), Inc.*, Case No. 16- 13245 (MKV) (Bankr. S.D.N.Y. Jan. 17, 2017) [Docket No. 205]; *In re Hercules Offshore,*

*Inc.*, Case No. 16-11385 (KJC) (Bankr. D. Del. Aug. 23, 2016) [Docket No. 334]; *In re Illinois Power Generating Co.*, Case No. 16-36326 (MI) (Bankr. S.D. Tex. Jan. 25, 2017) [Docket No. 169]; and *In re Paragon Offshore PLC*, Case No. 16-10386 (JKS) (Bankr. D. Del. May 16, 2017) [Docket No. 1503].

### The Debtors' Prepetition Marketing Efforts

7. As set forth in the Whittman Declaration, the *Supplemental Declaration of Brian Whittman in Support of the Debtors' Motion to Approve the Cloud/RAN Sale*, filed contemporaneously herewith (the "Supplemental Whittman Declaration"), and the Cloud/RAN Sale Motion, the Debtors have faced a months' long liquidity crisis, and, absent an immediate close of the Cloud/RAN Sale Transaction, the Debtors will cease to have sufficient funds to operate by the end of April. As described in my Prior Declaration, in an effort to remedy the Debtors' liquidity situation, the Company has engaged in significant pre- and postpetition marketing efforts in order to seek any and all value-maximizing transactions available to the Debtors. Ultimately, the Debtors commenced these chapter 11 cases to pursue a value-maximizing sale of their assets, with the Cloud/RAN Sale Transaction serving as the Debtors' funding mechanism for these chapter 11 cases.[3] With such funding, the Debtors will be able to facilitate a fulsome postpetition marketing process for the Cable Assets, which the Debtors believe will drive further value for the creditors in these cases.

8. As described in my Prior Declaration, in late 2023 the Debtors decided to explore a wide range of transaction alternatives and engaged Ducera to provide restructuring, financing,

---

[3] As described in my Prior Declaration, in January 2024, the Debtors, with the assistance of Ducera, undertook an extensive outreach process to capital markets to assess whether any financing would be available from a third-party lender to fund these chapter 11 cases. In addition to substantial outreach and engagement with the Debtors' Prepetition Lenders, Ducera considered a wide variety of potential alternative lenders, including third-party financial institutions experienced in distressed lending and financings. Despite the Debtors' and Ducera's outreach efforts, no actionable proposals to obtain postpetition debtor-in-possession financing were received.

and transaction advisory services. In the approximately six months prior to the commencement of these chapter 11 cases, the Debtors pursued an extensive marketing process, and with the assistance of Ducera, contacted more than 26 third parties about potential interest in a sale transaction that could, in the Debtors' determination in consultation with their advisors, be consummated on the timeline dictated by the Debtors' declining liquidity position. This outreach effort included parties who were interested in buying substantially all of the Debtors' assets as well as those who expressed interest in a more limited scope of assets, including the Cloud/RAN Assets. During this time, the Debtors ultimately held substantive discussions with more than 26 parties in connection with potential sale transactions and the Debtors' management team, along with Ducera, engaged in dozens of diligence sessions and other transaction-related conversations with eight parties which expressed a more significant level of interest and requested such further information. Each of these eight parties signed non-disclosure agreements and were provided access to a virtual dataroom, which was populated with more than 3,400 documents comprised of more than 70,000 total pages containing information related to the Debtors' assets. Additionally, I understand that the Debtors' management team conducted informal outreach and conversations with a significant number of additional interested parties. This formal and informal outreach bore significant fruit as the Debtors secured the Cable Stalking Horse Bid and a binding proposal from Lumine Group US Holdco Inc. (the "Prepetition Cloud/RAN Purchaser") with a headline purchase price of $15.0 million (subject to certain reductions) for the Cloud/RAN Assets, which proved critical in garnering the Ad Hoc Group's support for these chapter 11 cases and the postpetition marketing process for the Cable Assets.[4]

---

[4] Despite the Debtors' prepetition marketing efforts, the Debtors received only one actionable indication of interest for the Cloud/RAN Assets prior to the Petition Date—the indication of interest submitted by the Prepetition Cloud/RAN Purchaser.

**The Cloud/RAN Postpetition Marketing Process**

9. Notwithstanding the prepetition execution of an asset purchase agreement for the Cloud/RAN Assets (the "Prepetition Cloud/RAN Offer"), the Debtors and their advisors continued to engage in outreach and assess proposals for the Cloud/RAN Assets on a postpetition basis in the hopes of securing a higher and better offer that could be consummated on the same timeline as the Prepetition Cloud/RAN Offer.[5] Specifically, Ducera conducted outreach to more than 62 parties and provided such parties with an overview of the opportunity including key process dates and related information on the Cloud/RAN Assets, of which twelve parties responded to such outreach, executed a non-disclosure agreement, and engaged in due diligence with the Debtors. Such parties were provided with a sale process letter and access to a virtual dataroom, which was populated with more than 1,600 documents comprised of more than 23,000 total pages containing information related to the Cloud/RAN Assets. Of the twelve parties, five engaged in extensive diligence including more than 20 conference calls with the Debtors' management and advisors. Through this postpetition process, the Debtors ultimately received two non-binding indications of interest and/or modified versions of the Prepetition Cloud/RAN Purchaser's executed asset purchase agreement. Of these two parties, one such party, Skyvera US Holdco, LLC (the "Competing Cloud/RAN Purchaser" and together with the Prepetition Cloud/RAN Purchaser, the "Potential Purchasers"),[6] submitted an executed asset purchase agreement (the "Competing

---

[5] As set forth in the Supplemental Whittman Declaration, any proposal for the Cloud/RAN Assets on a further extended timeline is not possible given the Debtors' dire liquidity position. In addition, to the extent an alternative bidder for the Cloud/RAN Assets was identified on a postpetition basis, the Debtors reserved the right to conduct an expedited auction process for the Cloud/RAN Assets, as appropriate.

[6] The other interested party dropped out of the process citing the Debtors' timing constraints for a close of the Cloud/RAN Sale Transaction.

Cloud/RAN Offer"), which was substantially similar to the Existing Cloud/RAN Offer, but included a headline purchase price of $20.0 million.[7]

10. After further good faith and arm's-length discussions amongst the Debtors, the Prepetition Cloud/RAN Purchaser, the Competing Cloud/RAN Purchaser, the advisors to the official committee of unsecured creditors (the "Committee"), and advisors to the Ad Hoc Group, the Debtors decided to conduct an auction process for the Cloud/RAN Assets given the existence of two competing bids for such assets, as demonstrated by the Proposed Purchasers at the status conference held before the Court on April 24, 2024. The Debtors subsequently filed auction procedures which were approved by the Court in the *Order Approving Auction Procedures in Connection with the Debtors' Motion for Entry of an Order (I) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, (II) Approving Assumption and Assignment Procedures in Connection Therewith, (III) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases to the Purchaser, and (IV) Granting Related Relief* [Docket No. 184] (the "Cloud/RAN Auction Procedures Order"). These auction procedures were designed to promote a competitive and fair auction process between the Potential Purchasers in a controlled, fair, and open fashion following an extensive prepetition and postpetition marketing effort that only resulted in the two received binding bids.

11. In accordance with the auction procedures, the Debtors conducted an auction on April 25, 2024 attended by the Proposed Purchasers. After more than ten rounds of bidding at the auction, the Prepetition Cloud/RAN Purchaser submitted a binding bid for $32.25 million, and the

---

[7] Following receipt of the Competing Cloud/RAN Offer, the Competing Cloud/RAN Purchaser also agreed to various modifications to improve upon its bid.

Competing Cloud/RAN Purchaser subsequently declined to submit a topping bid. Throughout the auction, the Debtors and their advisors, in consultation with the Consultation Parties, discussed the bids received and ultimately determined that the bid from the Prepetition Cloud/RAN Purchaser was the Successful Bid, and that the prior bid from the Competing Cloud/RAN Purchaser in the amount of $32 million would serve as the Back-Up Bid.

12. Under the circumstances of these chapter 11 cases, and in particular the need to expeditiously close the Cloud/RAN Sale Transaction while still maximizing the value of the Cloud/RAN Assets for the benefit of the Debtors' stakeholders, I believe that the auction process and the auction procedures were reasonable under the circumstances and resulted in the highest and best bid for the Cloud/RAN Assets.

13. Given the pre- and postpetition marketing process conducted for the Cloud/RAN Assets, and given the Debtors' imminent liquidity shortfall, I believe that the Successful Bid should be approved. Despite months of outreach to more than 60 parties on a pre- and postpetition basis, the Debtors only received two binding bids for the Cloud/RAN Assets, which resulted in the auction and the ultimate Successful Bid. Accordingly, in my view, the Debtors have conducted a fulsome market check under the circumstances for the Cloud/RAN Assets and the Successful Bid represents the highest and best offer presently available to monetize the Cloud/RAN Assets and to fund a postpetition marketing and sale process for the Cable Assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 25, 2024

/s/ *David S. Zubricki*
David S. Zubricki
Managing Director
Ducera Partners, LLC