## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CASA SYSTEMS, INC., *et al.*,[1] | Case No. 24-10695 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Ref: Docket Nos. 42, 44-47, 85, 90-91, 121, 129, 176, 178, 212, 213 & 214** |

## ORDER (I) APPROVING THE PRIVATE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, WITH SUCH INTERESTS TO ATTACH TO THE PROCEEDS, (II) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES IN CONNECTION THEREWITH, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE PURCHASER, AND (IV) GRANTING RELATED RELIEF

Upon the Motion[2] of Casa Systems, Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), the Debtors seek entry of an order (this "Sale Order"), (a) approving the Debtors' sale of certain cloud-native software portfolio, radio access networks, and related assets of Casa Systems, Inc. (the "Cloud/RAN Assets") to Lumine Group US Holdco Inc. (the "Purchaser"), free and clear of liens, claims, and encumbrances, with such interests to attach to the proceeds, on the terms of set forth herein and in that certain Asset Purchase Agreement by and between Casa Systems, Inc. (the "Debtor Seller"), certain of its Non-Debtor Affiliates (collectively, the "International Sellers" and, together with the Debtor Seller, the "Sellers"), and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are Casa Systems, Inc. (8867), Casa Systems Securities Corporation (1151), and Casa Properties LLC (6767). The Debtors' service address is 100 Old River Road, Andover, MA 01810.

[2] "Motion" shall mean the *Debtors' Motion for Entry of an Order (I) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, (II) Approving Assumption and Assignment Procedures in Connection Therewith, (III) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases to the Purchaser, and (IV) Granting Related Relief* [Docket No. 42]. Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion or in the Cloud/RAN Purchase Agreement, as applicable.

the Purchaser, a copy of which is attached hereto as **Exhibit 1** (including any and all amendments, addenda, exhibits, schedules thereto, and any ancillary documents executed in connection thereto, collectively, the "Cloud/RAN Purchase Agreement"), (b) authorizing and approving the procedures (the "Assumption and Assignment Procedures") for the assumption and assignment by the Debtors to the Purchaser of certain executory contracts and unexpired leases (the "365 Contracts"), (c) authorizing and approving the assumption and assignment of certain of the 365 Contracts to the Purchaser on the terms and conditions set forth in the Cloud/RAN Purchase Agreement (the "Transferred Contracts" and, together with the other Cloud/RAN Assets, the "Transferred Assets"), and (d) granting related relief; and the Court having held status conferences on April 22nd and 24th regarding the relief requested in the Motion; and the court having entered an order on April 24, 2024 approving the Auction Procedures (as defined below); and this Court having conducted a hearing (the "Sale Hearing") to consider approval of the sale of the Transferred Assets, including the assumption and assignment of the Transferred Contracts pursuant to the terms and conditions of the Cloud/RAN Purchase Agreement (the "Cloud/RAN Sale Transaction"), at which time all interested parties were offered an opportunity to be heard with respect to the Cloud/RAN Sale Transaction; and this Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the Cloud/RAN Purchase Agreement, (iii) the Zubricki Declaration,[3] (iv) the Supplemental Zubricki Declaration;[4] (v) the Supplemental Whittman Declaration,[5] and (vi) the Tepner Declaration[6]; the results of the auction held on April 25, 2024

---

[3] Docket No. 47.

[4] "Supplemental Zubricki Declaration" means the *Supplemental Declaration of David S. Zubricki in Support of Debtors' Cloud/RAN Sale Motion* [Docket No. 214].

[5] Docket No. 212.

[6] Docket No. 213.

(the "Auction");[7] and the arguments and representations of counsel made, and the evidence proffered or adduced and the testimony presented at the Sale Hearing; and due and proper notice of the Motion, the Cloud/RAN Purchase Agreement, and this Sale Order having been provided; and all objections, if any, to approval of the Cloud/RAN Sale Transaction having been withdrawn, resolved (including by separate agreement between the objecting party and the Debtors), adjourned, or overruled as provided in this Sale Order; and it appearing that the Cloud/RAN Sale Transaction is in the best interests of the Debtors, their estates and creditors, and all parties in interest in these chapter 11 cases; and upon the record of the Sale Hearing and these chapter 11 cases; and after due deliberation thereon; and sufficient cause appearing therefor,

### THE COURT HEREBY FINDS AND DETERMINES THAT:[8]

A.    **Jurisdiction and Venue.**  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates.** The statutory predicates for the relief granted hereunder are sections 105, 363 and 365 of the Bankruptcy Code.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6003, 6004, 6006, and 9006 and Local Rules 2002-1 and 6004-1.

C.    **Final Order.** This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

---

[7] "Post-Auction Notice" means the *Notice of Successful Bidder and Back-Up Bidder* [Docket No. 206].

[8] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated herein to the extent not inconsistent herewith.

D.      **Notice.** On April 3, 2024 (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.      The Debtors gave due and proper notice of (i) the proposed Cloud/RAN Sale Transaction, and the Sale Hearing by serving notice on April 5, 2024 [Docket No. 91] (the "Sale Notice"), via publication notice on April 5, 2024 (the "Publication Notice"), (ii) the Auction via entry of the order approving the Auction Procedures (as defined below), and (iii) the results of the Auction via notice on April 25, 2024 [Docket No. 206] (the "Post-Auction Notice"). The Sale Notice, the Publication Notice, and the Post-Auction Notice constituted good, sufficient, and appropriate notice of the Cloud/RAN Sale Transaction under the particular circumstances and no further notice need be given with respect to the proposed Cloud/RAN Sale Transaction. As provided by the Sale Notice, the Publication Notice, and the Post-Auction Notice, a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

F.      The Debtors also gave due and proper notice of the potential assumption and assignment of each executory contract or unexpired lease available to be assumed by the Debtors and assigned to the Purchaser to each counterparty under each such executory contract or unexpired lease as reflected on the notice of potential assumption and assignment of the 365 Contracts, filed on April 5, 2024 [Docket No. 85] (together with any supplemental notices, the "Potential Assumption and Assignment Notice"). Such notice was good, sufficient, and appropriate under the particular circumstances, and the counterparties to the 365 Contracts are hereby deemed to consent to the relief granted herein, unless otherwise provided in this Sale Order.

4

G.      As evidenced by the affidavits of service [Docket Nos. 65, 66] previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the assumption and assignment of the 365 Contracts, the Cloud/RAN Purchase Agreement, this Sale Order and the Cloud/RAN Sale Transaction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9006, 9007, and 9014, and Local Rules 2002-1 and 6004-1.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the assumption and assignment of the 365 Contracts, the Cloud/RAN Purchase Agreement, this Sale Order or the Cloud/RAN Sale Transaction is or shall be required.

H.      A reasonable opportunity to object or be heard regarding the relief provided in this Sale Order was afforded to all parties in interest.

I.      **Marketing and Auction**.  As demonstrated by the testimony proffered and the evidence adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors adequately marketed the Debtors' assets prior to the commencement of and during these Chapter 11 Cases based on the facts and circumstances of the Debtors' cases, and the sale process was conducted in a non-collusive, fair, and good-faith manner, and all  interested parties were provided a full, fair, and reasonable opportunity to make an offer to purchase the Transferred Assets.  The Debtors, the Purchaser, and their respective counsel and other advisors have complied with the court approved auction procedures [Docket No. 184] (the "Auction Procedures").  The Auction was conducted in a reasonable and fair manner in accordance with the Auction Procedures.  Taking into account all relevant factors and circumstances, no other person, or group of persons, has submitted a higher or otherwise better offer or has otherwise offered to purchase

the Transferred Assets for an amount that would give greater value to the Debtors than the value provided by the Purchaser pursuant to the Cloud/RAN Purchase Agreement, which reflects the final bid during the Auction of a Purchase Price in the amount of $32,250,000, and is the highest and best bid for the Cloud/RAN Assets.

J.     **Business Judgment.** The Cloud/RAN Purchase Agreement, including the form and total consideration to be realized by the Debtors under the Cloud/RAN Purchase Agreement, (a) constitutes the highest or otherwise best offer that could reasonably be obtained for the Transferred Assets under the circumstances; (b) is fair and reasonable; and (c) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

K.     The Debtors' determination that the consideration provided by the Purchaser under the Cloud/RAN Purchase Agreement constitutes the highest or otherwise best offer for the Transferred Assets is reasonable and constitutes a valid and sound exercise of the Debtors' business judgment under compelling facts and circumstances as adduced at the Sale Hearing. Based on the testimony proffered and evidence adduced at the Sale Hearing, the Cloud/RAN Sale Transaction must be approved and consummated promptly in order to preserve the viability of the Debtors' business as a going concern and to maximize the value of the Debtors' estates.  Time is of the essence to implement the Cloud/Ran Purchase Agreement and to consummate the Cloud/RAN Sale Transaction contemplated thereby without any interruption.

L.     The releases provided under the Cloud/RAN Purchase Agreement are fair and reasonable, are in the best interests of the Debtors, their estates, their creditors and all other parties in interest, and are being provided in return for fair consideration.

M.     Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Cloud/RAN Sale

Transaction and the performance of their obligations under the Cloud/RAN Purchase Agreement, including, but not limited to, the fact that (a) the consideration provided by the Purchaser under the Cloud/RAN Purchase Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Transferred Assets; and (b) unless the Cloud/RAN Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the Cloud/RAN Purchase Agreement, creditor recoveries will be diminished.

N.      **Corporate Authority.** Subject to entry of this Sale Order, the Debtors (a) have full corporate power and authority to execute and deliver the Cloud/RAN Purchase Agreement and all other documents contemplated thereby, (b) have all of the necessary corporate power and authority to consummate the transactions contemplated by the Cloud/RAN Purchase Agreement, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts, (c) have taken all corporate action necessary to authorize and approve the Cloud/RAN Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts, and (d)  need no consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set forth in the Cloud/RAN Purchase Agreement or this Sale Order, to consummate the transactions contemplated thereby, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts.

O.      **Good Faith.** The sale process engaged in by the Debtors and the Purchaser, including the negotiation of the Cloud/RAN Purchase Agreement, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.  Neither

the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Cloud/RAN Purchase Agreement or the Cloud/RAN Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

P.    The Debtors, and their management, board of directors (including any committees thereof), employees, agents, advisors, and representatives, and the Purchaser and its employees, agents, advisors and representatives, each acted in good faith and without collusion of fraud of any kind.

Q.    The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to the full protection of that provision in respect of the Cloud/RAN Sale Transaction, each term of the Cloud/RAN Purchase Agreement and each term of this Sale Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Neither the Sellers nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.  The Debtors were free to deal with any other party interested in buying or selling some or all of the Transferred Assets on behalf of the Debtors' estates.  The protections afforded by Bankruptcy Code section 363(m) are integral to the Cloud/RAN Sale Transaction and the Purchaser would not consummate the Cloud/RAN Sale Transaction without such protections.

R.    The form and total consideration to be realized by the Debtors under the Cloud/RAN Purchase Agreement constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Transferred Assets.

S.    Neither the Purchaser nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Seller, as that term is defined under section 101(31) of the Bankruptcy Code.  No common identity of

directors, managers, controlling shareholders, or members exists between the Sellers and the Purchaser.

T.    **No Fraudulent Transfer.** The consideration provided by the Purchaser for the Transferred Assets pursuant to the Cloud/RAN Purchase Agreement (a) is fair and reasonable, (b) is the highest and best offer for the Transferred Assets, (c) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession, and the District of Columbia.

U.    The Cloud/RAN Purchase Agreement was not entered into, and neither the Sellers nor the Purchaser has entered into the Cloud/RAN Purchase Agreement or proposes to consummate the Cloud/RAN Sale Transaction, for the purpose of (a) escaping liability for any of the Debtors' debts or (b) hindering, delaying or defrauding the Debtors' present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

V.    **Free and Clear.** The transfer of the Transferred Assets to the Purchaser will be a legal, valid, and effective transfer of the Transferred Assets, and will vest the Purchaser with all right, title, and interest of the Debtors to the Transferred Assets free and clear of all claims (including, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof), liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used

in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights, and encumbrances relating to, accruing, or arising any time prior to the Closing Date, including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, senior or subordinated, whether arising prior to or subsequent to the commencement of the chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories (all of the foregoing, but excluding Assumed Liabilities and Permitted Liens (each as

defined in the Cloud/RAN Purchase Agreement), collectively being referred to in this Sale Order as "Claims").

W.      The Debtors, to the extent permitted by applicable law, may transfer the Transferred Assets free and clear of all Claims, including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

X.      Those (a) holders of Claims and (b) non-Debtor parties to the 365 Contracts, in each case who did not object or who withdrew their objections to the relief granted herein, are deemed to have consented to the Cloud/RAN Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  Those (a) holders of Claims, and (b) non-Debtor parties to the 365 Contracts, in each case who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

Y.      The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

Z.      The Purchaser would not have entered into the Cloud/RAN Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts, (a) if the transfer of the Transferred Assets were not free and clear of all Claims, or (b) if the Purchaser would, or in the future could, be liable for or subject to any such Claims.

AA.      The Purchaser will not consummate the transactions contemplated by the Cloud/RAN Purchase Agreement, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts, unless this Court expressly orders that, other than the Purchaser's assumption of the Assumed Liabilities and the Purchaser's obligations

under the Cloud/RAN Purchase Agreement and the Transferred Contracts, none of the Purchaser, its respective affiliates, its respective present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims.

BB.     Not transferring the Transferred Assets free and clear of all Claims would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Transferred Assets other than pursuant to a transfer that is free and clear of all Claims would be of substantially less benefit to the Debtors' estates.

CC.     Neither the Purchaser nor any of its affiliates are a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Purchaser, the Debtors, or any of their respective affiliates, and there is no continuity of enterprise between the Purchaser, the Debtors, or any of their respective affiliates.  Neither the Purchaser nor any of their affiliates are holding themselves out to the public as a continuation of the Debtors.  Neither the Purchaser nor any of their affiliates are a successor to the Debtors or their estates and none of the transactions contemplated by the Cloud/RAN Purchase Agreement, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts amounts to a consolidation, merger, or *de facto* merger of the Purchaser or any of its affiliates with or into the Debtor.

DD.     Without limiting the generality of the foregoing, and other than as may be set forth in the Cloud/RAN Purchase Agreement, none of the Purchaser, its affiliates, the present or contemplated members or shareholders of the Purchaser and its affiliates, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether

at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the Cloud/RAN Purchase Agreement, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts, or that the Debtors have otherwise incurred prior to the consummation of the transactions contemplated by the Cloud/RAN Purchase Agreement.

EE.    **Validity of Transfer.** The consummation of the transactions contemplated by the Cloud/RAN Purchase Agreement, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Cloud/RAN Purchase Agreement.

FF.    The Transferred Assets constitute property of the Debtors' estates and good title to the Transferred Assets is vested in the Debtors' estates within the meaning under section 541(a) of the Bankruptcy Code.  The Debtors are the sole and lawful owners of the Transferred Assets.

GG.    The Cloud/RAN Purchase Agreement has been duly and validly executed and delivered by the Debtors and, subject to the terms of the Cloud/RAN Purchase Agreement, shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with its terms.   The Cloud/RAN Purchase Agreement, the Cloud/RAN Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, any chapter 11 trustee appointed in these chapter 11 cases or any chapter 7 trustee appointed upon conversion of these chapter 11 cases to cases under

chapter 7 of the Bankruptcy Code and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

### 365 Contracts

HH.    The assumption and assignment of the 365 Contracts pursuant to the Potential Assumption and Assignment Notice, the terms of this Sale Order, and the Cloud/RAN Purchase Agreement is integral to the transactions contemplated by the Cloud/RAN Purchase Agreement. Such assumption and assignment is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

II.    Pursuant to the terms of the Cloud/RAN Purchase Agreement and this Sale Order, on or before the Closing Date, as applicable pursuant to the terms of this Sale Order, the Debtors or the Purchaser, as applicable, shall have, except as otherwise provided in the Cloud/RAN Purchase Agreement or this Sale Order, or as otherwise expressly agreed to between the Debtors or the Purchaser, as applicable, and such counterparty: (a)  cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the 365 Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (b) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the 365 Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (c) provided adequate assurance of future performance under the 365 Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

JJ.    **Compelling Circumstances for an Immediate Sale.** To maximize the value of the

14

Transferred Assets, it is essential that the transactions contemplated by the Cloud/RAN Purchase Agreement occur within the time constraints set forth therein.  Time is of the essence in consummating the transactions contemplated by the Cloud/RAN Purchase Agreement, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts.  Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

LL.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Cloud/RAN Purchase Agreement, including, without limitation, the Cloud/RAN Sale Transaction and the assumption and assignment of the 365 Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief provided herein is not granted on an expedited basis.  The transactions contemplated by the Cloud/RAN Purchase Agreement neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a *sub rosa* plan.

MM.   The legal and factual bases set forth in the Motion and the Zubricki Declaration filed in support thereof and presented at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      **<u>Sale Transaction Is Approved</u>**. The Cloud/RAN Sale Transaction is APPROVED, as set forth herein.  For the avoidance of doubt, this Order does not apply to, or

approve, the sale, assignment, transfer, purchase, or assumption of any Non-Debtor Cloud/RAN Assets.

2.      **Objections Overruled**.  Except as stated otherwise herein, all objections to, or reservation of rights regarding, the entry of this Sale Order, or the relief granted herein, including, without limitation, any objections to Cure Amounts or relating to the cure of any defaults under any of the 365 Contracts or to the assumption and assignment of any of the 365 Contracts to the Purchaser by the Debtors, that have not been withdrawn, waived, settled, or adjourned as provided in Paragraph 19 below or otherwise, or that have not otherwise been resolved pursuant to the terms hereof are hereby denied and overruled on the merits with prejudice.  All Persons (as defined in section 101(41) of the Bankruptcy Code) that failed to timely object, or withdrew their objections, to the Motion or the entry of this Sale Order are deemed to consent to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      **Notice**.  Notice of the Cloud/RAN Sale Transaction and Sale Hearing was adequate, appropriate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, and as such no further or other notice is required.

4.      **Approval and Authorization**.  The sale of the Transferred Assets to the Purchaser on the terms and conditions contained in the Cloud/RAN Purchase Agreement, including, without limitation, the closing of the Cloud/RAN Sale Transaction as required by the Cloud/RAN Purchase Agreement, is hereby approved in all respects pursuant to sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform all obligations under and make all payments required by the Cloud/RAN Purchase Agreement as and when due thereunder without further order of this

16

Court.  The Debtors, the Purchaser, and each of their respective officers, employees, and agents are hereby authorized to (i) execute the Cloud/RAN Purchase Agreement, and any prior execution of such agreements, documents, and instruments, is hereby ratified, (ii) perform all obligations under the Cloud/RAN Purchase Agreement, to consummate each of the foregoing, including, without limitation, deeds, assignments, and other instruments of transfer, and to consummate the Cloud/RAN Sale Transaction, and any prior performance of such obligations or any prior consummation of such Cloud/RAN Sale Transaction is hereby ratified, (iii) assume and assign the Transferred Contracts to the Purchaser, and (iv) take all other and further actions as may be reasonably necessary to consummate and implement the Cloud/RAN Sale Transaction and to perform all obligations under the Cloud/RAN Purchase Agreement and the consummation thereof, without any further corporate action or order of this Court.  The Purchaser shall not be obligated to proceed with the Closing under the Cloud/RAN Purchase Agreement until all conditions precedent to its obligation to do so thereunder have been satisfied or waived.

5.      **No Sub Rosa Plan**.  The sale of the Transferred Assets, including, without limitation, the assignment of the Transferred Contracts, pursuant to the Cloud/RAN Purchase Agreement outside a chapter 11 plan neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of the Debtors' subsequent chapter 11 plan.  Neither the Cloud/RAN Purchase Agreement nor the Cloud/RAN Sale Transaction constitutes a sub rosa chapter 11 plan.

6.      **Valid Transfer**.  As of the Closing, the consummation of the Cloud/RAN Sale Transaction shall affect a legal, valid, and enforceable sale and transfer of the Transferred Assets to the Purchaser and shall vest the Purchaser with all legal, equitable, and beneficial right, title, and interest in and to the Transferred Assets.  The Cloud/RAN Purchase Agreement constitutes

valid and binding contracts between the Sellers and the Purchaser and shall be enforceable pursuant to their terms. The Cloud/RAN Purchase Agreement, the Cloud/RAN Sale Transaction itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, the Debtors' estates, their creditors, all counterparties to the Transferred Contracts, all parties in interest, any chapter 11 trustee appointed in these chapter 11 cases or any chapter 7 trustee appointed upon a conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

7.     **Free and Clear**.  Except as expressly provided for in the Cloud/RAN Purchase Agreement or this Sale Order, pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Transferred Assets to the Purchaser and, upon the closing, other than the Purchaser's assumption of the Assumed Liabilities and the Purchaser's obligations under the Cloud/RAN Purchase Agreement and the Transferred Contracts, the Purchaser shall have and take title to and possession of the Transferred Assets free and clear of and shall have no obligation with respect to all Claims (other than Permitted Liens) of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative, or vicarious liabilities; de facto merger, continuation or continuity, or any similar theories under applicable state or federal law or otherwise.  All holders of Claims fall within one or more of the subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims attach to the net proceeds ultimately received by the Debtors and attributable to the Transferred Assets against or in which such Claims are asserted, subject to the terms of such Claims, with the same validity, force, and effect, and in the same order of priority that such Claims now have against the

Transferred Assets or their proceeds as of closing, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto, in addition to any limitations on the use of such proceeds pursuant to any provision of this Sale Order.  This Sale Order: (a) is and shall be effective as a determination that other than Assumed Liabilities or as otherwise provided herein, upon the applicable closing in accordance with the Cloud/RAN Purchase Agreement, all Claims of any kind or nature whatsoever existing as to Transferred Assets, and any tax liability, prior to the applicable closing have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected, with such Claims attaching in order of priority to the proceeds of the Cloud/RAN Sale Transaction, and (b) is and shall be binding upon and shall authorize all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or unites, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Transferred Assets conveyed to the Purchaser.  All recorded Claims against the Transferred Assets from their records, official and otherwise, shall be deemed stricken upon the closing in accordance with the Cloud/RAN Purchase Agreement and the terms of this Sale Order.

8.      Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Cloud/RAN Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Claims who did object that have a Claim against the Transferred Assets fall within one or more of sections 363(f)(1), 363(f)(3),

363(f)(4), or 363(f)(5) of the Bankruptcy Code and are therefore adequately protected by having their Claims that constitute interests in the Transferred Assets, if any, attach solely to the proceeds of the Cloud/RAN Sale Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force, and effect that such holders had prior to the Cloud/RAN Sale Transaction, subject to any defenses of the Debtors.

9. **Release of Interests**. If any Person that has filed a financing statement, mortgage, mechanic's lien, *lis pendens*, or other document or agreement evidencing a Claim against or in the Transferred Assets shall not have delivered to the Debtors prior to the closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or any other similar documents necessary for the purpose of documenting all Claims that such Person has against or in the Transferred Assets, then with respect to the holders of any such prepetition Claims, so long as the proceeds of the Cloud/RAN Sale Transaction shall have attached to such prepetition Claims in the same order of priority as among such prepetition Claims that existed prior to the Cloud/RAN Sale Transaction and with such prepetition Claims retaining the same validity, force, and effect such prepetition Claims had prior to the Cloud/RAN Sale Transaction, in each case subject to any carve-out or similar provision with respect to such proceeds contained in any order of the Court, including, but not limited to the Carve-Out (as defined in the Interim Cash Collateral Order) (i) the Debtors and/or the Purchaser are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Person with respect to the Transferred Assets, (ii) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims of any kind or nature against or in the Transferred Assets, and (iii) the Purchaser may seek

in this Court, or any other court of appropriate jurisdiction, to compel the appropriate parties to execute termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Claims that such Person has against or in the Transferred Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the sale and assignment of the Transferred Assets free and clear of Claims shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

10.     **Surrender of Transferred Assets**.  All Persons that are presently or on the Closing Date may be in possession of some or all of the Transferred Assets are directed to surrender possession of such Transferred Assets to the Purchaser as of the Closing Date.

11.     **Continuation of Existing Approvals**.  The Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Transferred Assets (subject, in each case, to the terms of the Cloud/RAN Purchase Agreement), and all such licenses, permits, registrations, and governmental authorizations or any other approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.  All existing licenses or permits applicable to the business shall remain active, in place, and, as applicable, shall be renewed for the Purchaser's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.  To the maximum extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or

suspend, or in any way challenge or fail to consent to any renewal of any permit or license relating

to the operation of the Transferred Assets because of the filing or pendency of the Debtors'

chapter 11 cases or the consummation of the Cloud/RAN Sale Transaction.

12.     **Injunction**.  All Persons are hereby prohibited and enjoined from taking any action

that would adversely affect or interfere with, or that would be inconsistent with, the ability of the

Debtors to sell and transfer the Transferred Assets to the Purchaser in accordance with the terms

of the Cloud/RAN Purchase Agreement or this Sale Order.  Except as expressly permitted by the

Cloud/RAN Purchase Agreement with respect to Assumed Liabilities or this Sale Order, all

Persons (and their respective successors and assigns), including, without limitation, all holders of

Claims, lenders, debt security holders, governmental, tax and regulatory authorities, parties to

executory contracts and unexpired leases, creditors, contract counterparties, customers, landlords,

licensors, employees and former employees, litigation claimants, pension plans, labor unions, trade

creditors, and other Persons holding Claims of any kind or nature whatsoever against or in the

Debtors or the Transferred Assets (whether known or unknown, legal or equitable, matured or

unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted,

whether arising prior to or subsequent to the commencement of the Debtors' chapter 11 cases,

whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of,

in connection with, or in any way relating to, the Debtors, the operation of the Debtors' businesses

prior to the Closing, the Transferred Assets, or the transfer of the Transferred Assets to the

Purchaser (including, without limitation, any rights or claims based on any successor, transferee,

derivative, or vicarious liabilities), shall be and hereby are forever barred, estopped, and

permanently enjoined from asserting, prosecuting, or otherwise pursuing any Claims against the

Purchaser, any of its affiliates, officers, directors, members, partners, principals, or shareholders,

any of their respective representatives, successors, designees, or assigns, the property of the foregoing, and the Transferred Assets transferred to the Purchaser or interests of the Debtors in such Transferred Assets (other than permitted interests).  Following the Closing, no holder of a Claims against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Debtors' former interests in the Transferred Assets, including, without limitation, taking any of the following actions with respect to or based on any Claim relating to the Transferred Assets or the transfer of the Transferred Assets to the Purchaser (other than Assumed Liabilities): (a) commencing or continuing in any manner any action or other proceeding against the Purchaser or its successors or assigns, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser or its successor, or assigns, assets, or properties; (c) creating, perfecting, or enforcing any Claim against the Purchaser, its successors or assigns, assets (including the Transferred Assets), or properties; (d) asserting any interest as a setoff, right of subrogation, or recoupment of any kind against any obligation due Purchaser or its successors or assigns; (e) commencing or continuing any action in any manner or place that does not comply or is inconsistent with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof; (f) interfering with, preventing, restricting, prohibiting, or otherwise enjoining the consummation of the Cloud/RAN Sale Transactions; or (g) enforcing any provision of any Transferred Contract that prohibits, restricts or conditions, or which purports to terminate or modify, or permits a party other than the Debtors to terminate or modify, any such Transferred Contract, or any right or obligation under such Transferred Contract, because of the assumption and assignment of such Transferred Contract by the Sellers to the Purchaser.  For the avoidance of doubt, and without limiting the generality of the foregoing or the operability of any other relief obtained pursuant to this Sale Order, any provision

in a Transferred Contract, any other document, or any applicable law that prohibits, restricts, or otherwise impairs assignment of the Transferred Contracts or the Purchaser's ability to operate any business with respect to the Transferred Assets is hereby void and of no force and effect with respect to the Cloud/RAN Sale Transaction, including without limitation any provision that (a) terminates or modifies any right or obligation of the Purchaser under such Transferred Contract; (b) cross-defaults to or from any other lease or executory contract that is not a Transferred Contract; (c) contains operating covenants or "go-dark" provisions that would purport to terminate or modify any Transferred Contract before assumption and assignment to the Purchaser; or (d) requires a third party's consent prior to assignment of the Transferred Contract to the Purchaser.

13.   **General Assignment**.  As of the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Transferred Assets and/or a bill of sale or assignment transferring indefeasible title and interest in the Transferred Assets, including the Transferred Contracts, to the Purchaser.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Cloud/RAN Sale Transaction and to reflect the effectiveness of the Cloud/RAN Sale Transaction.

14.   **No Successor, Transferee, or Similar Liability**.  To the fullest extent permitted by applicable law, except as otherwise expressly set forth herein or in the Cloud/RAN Purchase Agreement, the Purchaser, its affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent) and any of their respective representatives, agents, predecessors, successors, or assigns shall not be and

shall not be deemed, as a result of the consummation of the Cloud/RAN Sale Transaction or otherwise, (i) to be a successor of, successor employer of, successor entity of, to have successorship obligations relating to, or to otherwise be deemed a successor, to the Debtors or the Debtors' estates, including with respect to any labor, employment, employee, personnel, or worker related matter, law, or agreement, any employee benefit plans, any defined benefit pension plan, or any multiemployer plans, and the Purchaser and/or its affiliates, as applicable, shall instead be, and be deemed to be, a new employer, including with respect to, among other things, any and all federal or state unemployment laws, including the Fair Labor Standards Act, any employee wage and hour law, privacy law, worker classification law, minimum wage law, overtime law, compensation or benefit law, meal or rest break law, time keeping law, employee record or documentation law, workers compensation law, unemployment compensation or tax laws, or any other similar federal or state laws (provided that the Purchaser shall pay employee-related liabilities solely to the extent expressly included in the Assumed Liabilities or as otherwise set forth in the Cloud/RAN Purchase Agreement); (ii) be the successor of or a successor employer (as defined under COBRA and applicable regulations thereunder, common law, or otherwise) to the Debtors; (iii) to have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors or any of the Debtors' estates, (iv) have a common identity with the Debtors; (v) to be an alter ego, joint employer, single employer, a continuation or substantial continuation, or to be holding itself out as a mere continuation, of any of the Debtors or their respective estates, or any enterprise of any of the Debtors; (vi) be liable for any acts or omissions of the Debtors or their predecessors related to the Transferred Assets or otherwise; or (vii) to have any successor liability, transferee liability, derivative liability, vicarious liability, or any similar theories of any kind or character including, without limitation, under any theory of foreign, federal, state, or local antitrust, tax,

ERISA, successor, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, regulation, or doctrine with respect to the Debtors' businesses, operations, or obligations, including under any pending, threatened, or potential Claim, litigation, arbitration, settlement, investigation, fact circumstance, or event disclosed in the Cloud/RAN Purchase Agreement, in each case whether known or unknown as of the Closing Date, whether now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated.  Any so-called "bulk sales," "bulk transfer," or other similar laws shall be waived in all necessary jurisdictions, including those relating to taxes.

15.    Without limiting the generality of the foregoing, and except as otherwise expressly set forth herein or in the Cloud/RAN Purchase Agreement, the Purchaser, its affiliates, officers, directors, members, partners, principals, and shareholders (or equivalent) and any of their respective representatives, successors, or assigns shall not have any liability or responsibility whatsoever with respect to (i) any liability or other obligation of the Debtors related to the any Transferred Assets or any Excluded Assets or Excluded Liabilities, or (ii) any Claims against the Debtors or any of their predecessors, insiders, or affiliates; *provided* that, notwithstanding anything contained herein or the Cloud/RAN Purchase Agreement to the contrary, the Purchaser shall be bound by and comply with all of the provisions of the Transferred Contracts, except as otherwise provided in this Sale Order or applicable law.

16.    **<u>Good Faith of the Purchaser</u>**.  The Cloud/RAN Sale Transaction specified in the Cloud/RAN Purchase Agreement is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Cloud/RAN Sale Transaction, including, without limitation, the

assumption and assignment of the Transferred Contracts, unless such authorization and consummation of the sale are duly and properly stayed pending such appeal. The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

17.     **No Avoidance of Cloud/RAN Purchase Agreement**. Neither the Sellers nor the Purchaser have engaged in any conduct that would cause or permit the Cloud/RAN Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Cloud/RAN Purchase Agreement and the Cloud/RAN Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Cloud/RAN Purchase Agreement or the Cloud/RAN Sale Transaction.

18.     **Cure and Cure Dispute Resolution**. All defaults or other obligations of the Debtors under the Transferred Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) as to which no objections were interposed and remain pending as of the date of this Sale Order are deemed satisfied by the payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under such Transferred Contract in those amounts set forth in the Potential Assumption and Assignment Notice. For all Transferred Contracts for which a Potential Assumption and Assignment Notice was served, the Purchaser is authorized and directed to pay all Cure Amounts required to be paid by such parties upon the later of (a) the Closing, or (b) for any Transferred Contract for which an objection has been filed to the assumption and assignment of such agreement or the Cure Amounts relating thereto and such objection remains pending as of the date of this Sale Order (a "Cure Dispute"), within ten (10) business days of the

resolution of such objection by settlement or order of this Court.  Any non-Debtor counterparty to a Transferred Contract that has not filed an objection on or before the deadline as set forth in the relevant Potential Assumption and Assignment Notice, or received an informal extension by the Debtors, shall thereafter be barred from objecting or asserting monetary or non-monetary defaults with respect to any such Transferred Contract other than the applicable amount set forth in the Potential Assumption and Assignment Notice, and such Transferred Contract shall be deemed assumed by the Debtors and assigned to the Purchaser on the Closing Date.  To the extent that any Cure Dispute cannot be consensually resolved by the applicable parties, whether before or after the Closing Date, such Transferred Contracts shall be assumed and assigned only upon satisfactory resolution of the Cure Dispute, to be determined in the Purchaser's reasonable discretion.  To the extent a Cure Dispute exists, the Transferred Contracts may be conditionally assumed and assigned, subject to the consent of the Purchaser, pending a resolution of the Cure Dispute by agreement of the parties or after notice and a hearing.  If a Cure Dispute is not satisfactorily resolved, the Purchaser may determine that such Transferred Contracts should not be included on their schedule of Transferred Contracts and should be rejected and not assigned, in which case the Purchaser will not be responsible for any Cure Amounts to the contract counterparty.  The Debtors may then seek to reject the applicable contract or lease pursuant to Section 365 of the Bankruptcy Code.

19.     **Determination of Cure Amounts**.  Unless a counterparty to any Transferred Contract files a timely Cure Objection, the Cure Amounts set forth on the Potential Assumption and Assignment Notice shall constitute findings of this Court and shall be final and binding on the counterparties to the Transferred Contracts and their successors and designees upon the Closing and shall not be subject to further dispute or audit based on performance prior to the time of

assumption and assignment, irrespective of the terms and conditions of such Transferred Contracts. Each counterparty to a Transferred Contract (other than a counterparty who filed a timely Cure Objection) shall be forever barred, estopped, and permanently enjoined from (i) asserting against the Purchaser or its property (including, without limitation, the Transferred Assets), any default arising prior to or existing as of the Closing, or any counterclaim, defense, recoupment, setoff, or any other interest asserted or assertable against the Debtors (except as otherwise provided herein), and (ii) imposing or charging against the Purchaser or its affiliates, any accelerations, assignment fees, increases, or any other fees or charges as a result of the Debtors' assumption and assignment to the Purchaser of the Transferred Contracts in connection with the Cloud/RAN Sale Transaction approved by this Sale Order. To the extent a counterparty to any of the Transferred Contracts received notice of the Debtors' proposed Cure Amount and fails to file a Cure Objection by the applicable deadline, such party shall be deemed to have (a) consented to the assumption and assignment of the applicable Transferred Contract and the payment of the Cure Amount provided in the Potential Assumption and Assignment Notice and (b) waived any right to assert or collect any other cure amount or enforce any default that may arise or have arisen prior to or as of the Closing.

20.     **Payment of Cure Amounts**. With respect to the Transferred Contracts, to the extent there are any Cure Amounts unpaid as of the Closing Date, the Purchaser shall be obligated, and is hereby directed, to pay or cause to be paid such Cure Amounts, unless the Debtors elect or are otherwise required under applicable law to make such payments prior to the Closing, in which case the Debtors shall obtain the Purchaser's written consent before making such payments and Purchaser shall reimburse the Debtors for such amounts paid by the Debtors, provided that the Purchaser shall receive a credit to the Purchase Price (as defined in the Cloud/RAN Purchase

Agreement) for any such Cure Amounts.  The Purchaser's promise to perform the obligations under the Transferred Contracts arising after their assumption and assignment to the Purchaser shall constitute adequate assurance of future performance within the meaning of sections 365(b) and 365(f)(2) of the Bankruptcy Code.  Subject in all respects to the Cloud/RAN Purchase Agreement, commencing on the Closing Date, with respect to the Transferred Contracts, the Purchaser in the ordinary course shall pay any unpaid monthly payments for the month in which the Closing occurs.  On the Closing Date, subject in all respects to the terms of this Sale Order, the Purchaser shall be deemed to be substituted for the Debtor Seller (and/or any of the other Debtors, to the extent it holds any rights, title, or interests in any of the Transferred Contracts) as a party to the applicable Transferred Contracts, and the Debtor Seller (and or any of the other Debtors, as applicable) shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Transferred Contracts.

21.    **Ipso Facto Clauses Ineffective**.  Upon the Debtors' assumption and assignment of the Transferred Contracts to the Purchaser pursuant to this Sale Order and the payment of the Cure Amounts in accordance with this Sale Order and the Cloud/RAN Purchase Agreement, no default shall exist under any Transferred Contract and no counterparty to any such Transferred Contract shall be permitted to declare or enforce a default by the Debtors or the Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtor's financial condition, change in control, bankruptcy, or failure to perform any of its obligations under the applicable Transferred Contract.  For the avoidance of doubt, and without limiting the generality of the foregoing or the operability of any other relief obtained pursuant to this Sale Order, any provision in a Transferred Contract that prohibits or conditions, whether directly or indirectly, the assignment of such Transferred Contract (including, without limitation, the granting of an interest

therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment shall be deemed an unenforceable anti-assignment provision that is void and of no force and effect with respect to the Cloud/RAN Sale Transaction as approved by this Sale Order.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions or of the Debtors' or the Purchaser's right, as applicable, to enforce every term and condition of such Transferred Contract.

22.     **Binding Effect**.  This Sale Order and the Cloud/RAN Purchase Agreement shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Transferred Assets.  The terms and provisions of the Cloud/RAN Purchase Agreement and this Sale Order shall be binding in all respects upon the Debtors and their respective affiliates and subsidiaries and such parties' successors and assigns, the Debtors' estates, all creditors thereof (whether known or unknown), all holders of equity interests in any Debtors, holders of Claims in, against, or on all or any portion of the Transferred Assets, all non-Debtor parties to the Transferred Contracts, the Purchaser and its respective successors and assigns, and any and all third parties, notwithstanding any subsequent appointment of any trustee, examiners, "responsible persons" or other fiduciaries (collectively, the "Trustee") of the Debtors under any chapter of the Bankruptcy Code, as to which Trustee such terms and provisions likewise shall be binding, and the Cloud/RAN

Purchase Agreement (including the Transferred Contracts) shall not be subject to rejection or avoidance under any circumstances.

23.    **Release, Discharge, and Termination of Interests**.  This Sale Order shall be effective as a determination that, on the Closing, all interests of any kind or nature whatsoever existing prior to the Closing have been unconditionally released, discharged, and terminated as to the Transferred Assets (other than the Permitted Liens), and that the conveyances described herein have been effected.

24.    **No Material Modifications**.  The Cloud/RAN Purchase Agreement may be modified, amended, or supplemented by the Sellers and the Purchaser, in a writing signed by such parties, and in accordance with the terms thereof, without further order of this Court; *provided*, that (i) any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates, and (ii) has been agreed to between the Sellers and the Purchaser (with such consent not to be unreasonably withheld).  The Debtors shall provide two (2) days' notice of any such modification, amendment, or supplement, including, for the avoidance of doubt, all material modifications, amendments, or supplements to counsel for the official committee of unsecured creditors, if any.  For the avoidance of doubt, any material modification, amendment, or supplement to the Cloud/RAN Purchase Agreement must be approved by order of this Court following a motion on notice to all interested parties.

25.    **Subsequent Orders and Plan Provisions**.    Nothing contained in any chapter 11 plan confirmed in the Debtors' chapter 11 cases or any subsequent order of this Court, including, without limitation, any order confirming any such chapter 11 plan, any order authorizing the sale of assets of the Debtors pursuant to any section of the Bankruptcy Code, and any order approving wind-down or dismissal of any Debtor's chapter 11 case or any subsequent

chapter 7 case shall change, supersede, abrogate, nullify, restrict, or conflict with the provisions of the Cloud/RAN Purchase Agreement or this Sale Order, or in any way prevent or interfere with the consummation or performance of the Cloud/RAN Sale Transaction.

26.    **Failure to Specify Provisions**.    The failure to specify or include any particular provisions of the Cloud/RAN Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Cloud/RAN Purchase Agreement and the Cloud/RAN Sale Transaction be authorized and approved in their entirety.

27.    **Automatic Stay**.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary to (i) allow the Purchaser to deliver any notice provided for in the Cloud/RAN Purchase Agreement, and (ii) allow the Purchaser to take any and all actions permitted under the Cloud/RAN Purchase Agreement in accordance with the terms and conditions thereof.    The automatic stay imposed by section 362 of the Bankruptcy Code shall be modified solely to the extent necessary to implement the preceding sentence, and this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

28.    **Bankruptcy Rules Satisfied or Waived**.    The requirements set forth in Bankruptcy Rules 6004 and 6006 have been satisfied or are otherwise deemed to be waived.  As provided by Bankruptcy Rule 9014, the terms of this Sale Order shall be effective and enforceable immediately upon entry and shall not be subject to stay provisions contained in Bankruptcy Rules 6004(h) and 6004(d).  Time is of the essence in closing the Cloud/RAN Sale Transaction and the Debtors and the Purchaser intend to close the sale as soon as possible.

29.    **Conflicts Between Sale Order and Cloud/RAN Purchase Agreement**.    To the extent anything contained in this Sale Order conflicts with a provision in the Cloud/RAN Purchase Agreement, this Sale Order shall govern and control.  Notwithstanding the foregoing, nothing in

this Sale Order shall modify or waive any closing conditions or termination rights in the Cloud/RAN Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

30.     **Provisions Nonseverable and Mutually Dependent**.  The provisions of this Sale Order and the Cloud/RAN Purchase Agreement are non-severable and mutually dependent.

31.     **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of the Cloud/RAN Purchase Agreement and this Sale Order, and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned to the Purchaser by the Debtors, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Cloud/RAN Sale Transaction.  This Court retains jurisdiction to compel delivery of the Transferred Assets, to protect the Purchaser and its assets, including the Transferred Assets, against any interests or successor or transferee liability and to enter orders, as appropriate, pursuant to sections 105(a), 363, or 365 (or other applicable sections) of the Bankruptcy Code necessary to transfer the Transferred Assets and the Transferred Contracts to the Purchaser.  In the event this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter referenced in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

32.     **Non-Debtor Cloud/RAN  Assets**. The Cloud/RAN Purchase Agreement also provides for the sale, assignment, transfer, purchase, or assumption of certain assets and liabilities of the International Sellers (collectively, the "Non-Debtor Cloud/RAN Assets").   For the

avoidance of doubt, this Order does not apply to the sale, assignment, transfer, purchase, or assumption of such Non-Debtor Cloud/RAN Assets.

33.    **Exemptions from Recording, Stamp, and Similar Taxes**.  Notwithstanding anything to the contrary in the Cloud/RAN Purchase Agreement, the transactions contemplated by the Cloud/RAN Purchase Agreement and this Sale Order, and the execution, delivery and/or recordation of any and all documents or instruments necessary or desirable to consummate the Cloud/RAN Sale Transaction, are exempt from any and all transfer, documentary, sales, use, excise, stock transfer, stamp, recording, registration and other similar taxes (excluding VAT), levies, duties and fees (including any penalties, fines and interest) incurred or assessed by any federal, state, local, or foreign taxing authority pursuant to section 1146(a) of the Bankruptcy Code, because the Debtors intend to seek confirmation of a chapter 11 plan of which the consummation of Cloud/RAN Sale Transaction is an integral component and necessary prerequisite.

Dated: April 26th, 2024
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE