## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CASA SYSTEMS, INC., *et al.*[1] | Case No. 24-10695 (KBO) |
| Debtors. | (Jointly Administered) |

---

### DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF AN ORDER CONFIRMING THE DEBTORS' THIRD AMENDED JOINT PLAN OF LIQUIDATION OF CASA SYSTEMS, INC. AND ITS DEBTOR AFFILIATES

---

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph Barry (Del. Bar No. 4221)
Joseph M. Mulvihill (Del. Bar No. 6061)
Timothy R. Powell (Del. Bar No. 6894)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jbarry@ycst.com
           jmulvihill@ycst.com
           tpowell@ycst.com

*Co-Counsel to the Debtors and Debtors in Possession*

**SIDLEY AUSTIN LLP**
Stephen E. Hessler (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Margaret R. Alden (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: shessler@sidley.com
           pventer@sidley.com
           malden@sidley.com

Ryan L. Fink (admitted *pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: ryan.fink@sidley.com

Julia Philips Roth (admitted *pro hac vice*)
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501
Email: julia.roth@sidley.com

*Counsel to the Debtors and Debtors in Possession*

Dated:  May 31, 2024

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are Casa Systems, Inc. (8867), Casa Systems Securities Corporation (1151), and Casa Properties LLC (6767). The Debtors' service address is 100 Old River Road, Andover, MA 01810.

31703445.1

## <u>TABLE OF CONTENTS</u>

Preliminary Statement.................................................................................................................1

Argument ....................................................................................................................................2

I.      Case Background. ........................................................................................................3

      A.      Procedural History. ........................................................................................3

      B.      The Plan Settlement. .....................................................................................6

      C.      The Plan Solicitation and Notification Process. ...........................................6

II.     The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code.................7

      A.      The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code. ..................7

            1.      The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.................................................................................8

            2.      The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code.....................................................10

            3.      The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.....................................................12

      B.      The Plan Complies with Section 1123(d) of the Bankruptcy Code.......................22

      C.      The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code. .................23

            1.      The Debtors Complied with Section 1125 of the Bankruptcy Code. ........23

            2.      The Debtors Complied with Section 1126 of the Bankruptcy Code. ........24

      D.      The Plan Was Proposed in Good Faith and Therefore Complies with Section 1129(a)(3) of the Bankruptcy Code. ........................................................25

      E.      The Plan Provides that the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)). ...................................26

      F.      The Plan Does Not Require Additional Disclosures Regarding Directors, Officers, and Insiders (§ 1129(a)(5)). ....................................................................27

      G.      The Plan Does Not Require Governmental Regulatory Approval (§ 1129(a)(6))......................................................................................................28

      H.      The Plan Is in the Best Interests of All the Debtors' Creditors (§ 1129(a)(7))......28

31703445.1

i

I.      The Plan Is Confirmable Notwithstanding the Requirements of
        Section 1129(a)(8) of the Bankruptcy Code. .........................................................30

J.      The Plan Provides for Payment in Full of All Allowed Priority Claims Except
        as Otherwise Agreed (§ 1129(a)(9)). .......................................................................30

K.      At Least One Class of Impaired, Non-Insider Claims Accepted the Plan
        (§ 1129(a)(10)). .........................................................................................................32

L.      The Plan Is Feasible (§ 1129(a)(11)). .......................................................................32

M.      All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)). ...........................34

N.      No Remaining Retiree Benefits Obligations (§ 1129(a)(13)). ................................35

O.      Sections 1129(a)(14) Through 1129(a)(16) Do Not Apply to the Plan. ................35

P.      The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the
        Bankruptcy Code. ......................................................................................................35

        1.      The Plan Is Fair and Equitable (§ 1129(b)(2)(B)(ii))...............................36

        2.      The Plan Does Not Unfairly Discriminate with Respect to the Impaired
                Classes that Have Not Voted to Accept the Plan (§ 1129(b)(1))...............37

Q.      The Debtors Complied with Sections 1129(d) and (e) of the Bankruptcy Code....38

R.      Modifications to the Plan. ..........................................................................................38

S.      Good Cause Exists to Waive the Stay of the Confirmation Order. .......................39

Conclusion .............................................................................................................................40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship.*,
190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am.*,
526 U.S. 434 (1999)...................................................................................................37

*In re 500 Fifth Ave. Assocs.*,
148 B.R. 1010 (Bankr. S.D.N.Y. 1993)..............................................................8, 17

*In re Abeinsa Holding, Inc.*,
562 B.R. 265 (Bankr. D. Del. 2016) ..........................................................................15

*In re Adelphia Commc'ns. Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007)........................................................................28

*In re Aleris Int'l, Inc.*,
2010 WL 3492664 (Bankr. D. Del. May 13, 2010)....................................................23

*In re Am. Cap. Equip., LLC*,
688 F.3d at 156 ..........................................................................................................33

*In re Ambanc La Mesa L.P.*,
115 F.3d 650 (9th Cir. 1997) ..............................................................................36, 37

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (D. Del. 2006).................................................................................7, 8

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999)............................................................................................28, 36

*Beal Bank, S.S.B. v. Jack's Marine, Inc. (In re Beal Bank, S.S.B.)*,
201 B.R. 376 (E.D. Pa. 1996) ...................................................................................39

*In re Blackhawk Mining LLC*,
No. 19-11595 (LSS) (Bankr. D. Del. Aug. 29, 2019)................................................17

*Brite* v. *Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*,
764 F.2d 406 (5th Cir. 1985) .....................................................................................26

*In re Burns & Roe Enters., Inc., No. 08-4191 (GEB)*,
2009 WL 438694 (D. N.J. Feb. 23, 2009) .................................................................39

*In re Capmark Fin. Grp. Inc.*,
No. 09-13684 (CSS), 2011 WL 6013718 (Bankr. D. Del. Oct. 5, 2011) ..................32

*In re Century Glove, Inc.*,
  Civ. A. Nos. 90-400 and 90-401,1993 ...........................................................................26, 28

*In re Chapel Gate Apartments, Ltd.*,
  64 B.R. 569 (Bankr. N.D. Tex. 1986) .....................................................................................26

*In re Coram Healthcare Corp.*,
  315 B.R. 321 (Bankr. D. Del. 2004) ..........................................................................14, 18, 37

*Cosoff v. Rodman* (*In re W.T. Grant Co.*),
  699 F.2d 599 (2d Cir. 1983) ....................................................................................................14

*In re Dex One Corp.*,
  No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013) ...............................................................40

*In re Drexel Burnham Lambert Grp. Inc.*,
  138 B.R. 723 (Bankr. S.D.N.Y. 1992) .......................................................................................8

*In re Enron Corp.*,
  326 B.R. 497 (S.D.N.Y. 2005) .................................................................................................20

*In re Exaeris, Inc.*,
  380 B.R. 741 (Bankr. D. Del. 2008) ........................................................................................14

*In re FAH Liquidating Corp.*,
  No. 13-13087 (KG) (Bankr. D. Del. July 28, 2014) ................................................................19

*In re Federal–Mogul Global Inc.*,
  2007 Bankr. LEXIS 3940 (Bankr. D. Del. 2007) ....................................................................39

*Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship* (*In re T-H New Orleans Ltd. P'ship*),
  116 F.3d 790 (5th Cir. 1997) ...................................................................................................26

*In re Finlay Enters., Inc.*,
  No. 09-14873 JMP, 2010 WL 6580628 (Bankr. S.D.N.Y. June 29, 2010) .............................33

*In re Flintkote Co.*,
  486 B.R. 99 (Bankr. D. Del. 2012) ..........................................................................................32

*In re Freymiller Trucking, Inc.*,
  190 B.R. 913 (Bankr. W.D. Okla. 1996) ..................................................................................37

*Frito-Lay, Inc. v. LTV Steel Co.* (*In re Chateaugay Corp.*),
  10 F.3d 944 (2d Cir. 1993) ........................................................................................................8

*In re Future Energy Corp.*,
  83 B.R. 470 (Bankr. S.D. Ohio 1988) ......................................................................................26

31703445.1

iv

*In re Gatehouse Media, Inc.*,
   No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) ............................................................40

*In re Genesis Health Ventures, Inc.*,
   266 B.R. 591 (Bankr. D. Del. 2001) ......................................................................................7

*In re Geokinetics Inc.*,
   No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) ...........................................................40

*Gillman v. Cont'l Airlines* (*In re Cont'l Airlines*),
   203 F.3d 203 (3d Cir. 2000)..................................................................................................19

*In re Global Safety Textiles Holdings LLC*,
   No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009).............................39

*In re GSE Envtl., Inc.*,
   No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014) ..........................................................40

*In re Heritage Highgate, Inc.*,
   679 F.3d at 142 ......................................................................................................................33

*In re Heritage Org., L.L.C.*,
   375 B.R. 230 (Bankr. N.D. Tex. 2007)................................................................................8, 33

*In re Indianapolis Downs, LLC*,
   486 B.R. .................................................................................................................................18

*In re Indianapolis Downs*,
   LLC, 486 B.R. 286 (Bankr. D. Del. 2013).......................................................14, 15, 16, 21

*In re Jersey City Med. Ctr.*,
   817 F.2d 1055 (3d Cir. 1987)..................................................................................................8

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
   987 F.2d 154 (3d Cir. 1993)..............................................................................................8, 36

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986) ....................................................................................37

*Kane v. Johns-Manville Corp.*,
   843 F.2d 636 (2d Cir. 1988)..............................................................................................32, 33

*In re Kreider*,
   No. 05-15018 (ELF), 2006 WL 3068834 (Bankr. E.D. Pa. Sept. 27, 2006) .........................33

*In re Laboratory Partners, Inc.*,
   No. 13-12769 (PJW) (Bankr. D. Del. July 10, 2014) ..........................................................19

*In re Lapworth*,
  1998 WL 767456 (DWS) (Bankr. E.D. Pa. Nov. 2, 1998) .......................................23

*In re Lason, Inc.*,
  300 B.R. 227 (Bankr. D. Del. 2003) .........................................................................29

*In re Lernout & Hauspie Speech Prods., N.V.*,
  301 B.R. 651 (Bankr. D. Del. 2003) .........................................................................37

*In re Master Mortg. Inv. Fund, Inc.*,
  168 B.R. 930 (Bankr. W.D. Mo. 1994).....................................................................14

*Momentum Mfg. Corp. v. Emp. Creditors Comm.* (*In re Momentum Mfg. Corp.*),
  25 F.3d 1132 (2d Cir. 1994)......................................................................................23

*In re NII Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) .........................................................................26

*In re Nutritional Sourcing Corp.*,
  398 B.R. 816 (Bankr. D. Del. 2008) ...........................................................................7

*In re One Aviation Corp.*,
  No. 18-12309 (CSS) (Bankr. D. Del. Sep. 18, 2019) ...............................................17

*In re Physiotherapy Holdings, Inc*.,
  No. 13-12965 (KG) (Bankr. D. Del. Dec. 23, 2013) ................................................40

*Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*),
  761 F.2d 1374 (9th Cir. 1985) ............................................................................32, 33

*In re Premier Int'l Holdings, Inc.*,
  2010 WL 2745964 (CSS) (Bankr. D. Del. Apr. 29, 2010) .......................................20

*In re Prussia Assocs.*,
  322 B.R. 572 (Bankr. E.D. Pa. 2005) .......................................................................32

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000)..........................................................................20, 21, 26

*In re S&W Enter.*,
  37 B.R. 153 (Bankr. N.D. Ill. 1984) ...........................................................................7

*In re Samson Resources Corp.*,
  No. 14-11934 (CSS) (Bankr. D.Del. Feb. 13, 2017) ................................................17

*In re Sea Garden Motel & Apartments*,
  195 B.R. 294 (D. N.J. 1996) .....................................................................................32

31703445.1

*In re Source Home Entm't, LLC*,
No. 14-11553 (KG) (Bankr. D. Del, Feb. 20, 2015)............................................................40

*In re Spansion*,
2010 WL 2905001 (Bankr. D. Del. April 16, 2010)..........................................................20

*In re Spansion, Inc.*,
426 B.R. 114 (Bankr. D. Del. 2010) ........................................................................14, 18, 19

*In re Tribune Co.*,
464 B.R. 126 (Bankr. D. Del. 2011), *overruled in part on other grounds*, 464
B.R. 208 (Bankr. D. Del. 2011) .............................................................................................32

*In re U.S. Truck Co.*,
47 B.R. 932 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986) ..............................32, 33

*United Artists Theatre Co. v. Walton*,
315 F.3d 217 (3d Cir. 2000)...................................................................................................19

*In re Verso Corp.*,
No. 16-10163 (KG) (Bankr. D. Del. June 23, 2016) ...........................................................21

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012) ..............................................................................................26, 32

*In re Wash. Mut., Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) ................................................................................. *passim*

*In re World Health Alts., Inc.*,
344 B.R. 291 (Bankr. D. Del. 2006) .....................................................................................14

*In re Zenith Elecs. Corp.*,
241 B.R. 92 (Bankr. D. Del. 1999) ............................................................14, 15, 16, 17

**Statutes**

11 U.S.C. § 101(31) ......................................................................................................................27

11 U.S.C. § 1123(b)(1)–(6)...........................................................................................................12

11 U.S.C. § 1125(b) .....................................................................................................................23

11 U.S.C. § 1126....................................................................................................6, 23, 24, 25

11 U.S.C. § 1129(a)(5)(A)(i) ........................................................................................................27

11 U.S.C. § 1129(a)(5)(A)(ii) .......................................................................................................27

11 U.S.C. § 1129(a)(5)(B) ......................................................................................................27, 28

United States Code title 11 sections 1125 and 1129, 11 U.S.C. §§ 101–1532 ................................1

United States Code title 28 section 1930 ..................................................................................34

Bankruptcy Code chapter 7....................................................................................17, 26, 28, 29

Bankruptcy Code chapter 11 ....................................................................................... *passim*

Bankruptcy Code section 365(f) .............................................................................................40

Bankruptcy Code section 503(b) ............................................................................................30

Bankruptcy Code section 507(a)(2) ...................................................................................30, 34

Bankruptcy Code section 507(a)(8) .........................................................................................31

Bankruptcy Code section 1102 ................................................................................................1

Bankruptcy Code sections 1107(a) and 1108 ...........................................................................1

Bankruptcy Code section 1114 ...............................................................................................35

Bankruptcy Code Section 1122 .....................................................................................8, 9, 10

Bankruptcy Code sections 1122 and 1123.........................................................................7, 38

Bankruptcy Code sections 1122, 1123, and 1129....................................................................7

Bankruptcy Code section 1122(a)............................................................................................7

Bankruptcy Code section 1123 ..............................................................................................14

Bankruptcy Code Section 1123(a) ..........................................................................................10

Bankruptcy Code Section 1123(a)(2) ......................................................................................10

Bankruptcy Code Section 1123(a)(3) ......................................................................................10

Bankruptcy Code Section 1123(a)(4) ......................................................................................10

Bankruptcy Code Section 1123(a)(5) ......................................................................................11

Bankruptcy Code Section 1123(a)(6) ......................................................................................11

Bankruptcy Code Section 1123(a)(7) ......................................................................................12

Bankruptcy Code Section 1123(b)....................................................................................12, 19

Bankruptcy Code Section 1123(b)(3)(A)............................................................................13, 14

Bankruptcy Code Section 1123(d) ................................................................................22

Bankruptcy Code Section 1125 ...................................................................23, 24, 39

Bankruptcy Code sections 1125 and 1126 ...............................................................23

Bankruptcy Code sections 1125(a) and (b) ..............................................................24

Bankruptcy Code section 1125(c) ............................................................................24

Bankruptcy Code section 1126(c) ............................................................................25

Bankruptcy Code section 1126(f) .............................................................................24

Bankruptcy Code section 1126(g) ............................................................................25

Bankruptcy Code section 1127 .................................................................................39

Bankruptcy Code Section 1127(a) ............................................................................38

Bankruptcy Code section 1129 ..............................................................................2, 7

Bankruptcy Code section 1129(a) ............................................................................35

Bankruptcy Code Section 1129(a)(1) .....................................................................7, 22

Bankruptcy Code Section 1129(a)(2) ...........................................................20, 23, 25

Bankruptcy Code Section 1129(a)(3) ...........................................................20, 25, 26

Bankruptcy Code Section 1129(a)(4) .................................................................26, 27

Bankruptcy Code section 1129(a)(5) .................................................................27, 28

Bankruptcy Code Section 1129(a)(6) ........................................................................28

Bankruptcy Code Section 1129(a)(7) .................................................................28, 29

Bankruptcy Code Section 1129(a)(8) ...................................................30, 32, 35, 36

Bankruptcy Code Section 1129(a)(9) .................................................................30, 31

Bankruptcy Code section 1129(a)(9)(A) ............................................................30, 31

Bankruptcy Code Section 1129(a)(9)(B) ............................................................30, 31

Bankruptcy Code Section 1129(a)(9)(C) ...................................................................31

Bankruptcy Code Section 1129(a)(10) ......................................................................32

Bankruptcy Code sections 1129(a)(10) and 1129(b) ...................................................30

Bankruptcy Code Section 1129(a)(11) ........................................................32, 33, 34

Bankruptcy Code Section 1129(a)(12) .......................................................................34

Bankruptcy Code Section 1129(a)(13) .......................................................................35

Bankruptcy Code Section 1129(a)(14) .......................................................................35

Bankruptcy Code section 1129(a)(15) ........................................................................35

Bankruptcy Code section 1129(a)(16) ........................................................................35

Bankruptcy Code Section 1129(b).........................................................................36, 37

Bankruptcy Code Section 1129(b)(1).........................................................35, 37, 38

Bankruptcy Code Section 1129(d) .............................................................................38

Bankruptcy Code section 1129(e) ..............................................................................38

Bankruptcy Code Supplement and section 365 .........................................................22

Securities Act of 1933 section 5 ................................................................................38

**Other Authorities**

Bankruptcy Rule 1015(b)...............................................................................................1

Bankruptcy Rule 3019 ..........................................................................................38, 39

Bankruptcy Rule 3020(e) ............................................................................................39

Bankruptcy Rule 9019 ................................................................................................14

Bankruptcy Rules 3017 and 3018 ...............................................................................23

Bankruptcy Rules 3020, 6004, and 6006 ....................................................................40

Bankruptcy Rules 6004(h) and 6006(d) ......................................................................39

H.R. Rep. No. 95-595, reprinted in 1978 U.S.C. C.A.N. 5963 (1977).............................7

H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977) .......................................................23

S. Rep. No. 95-989, reprinted in 1978 U.S.C. C.A.N. 5787 (1978) ................................7

S. Rep. No. 989, 95th Cong., 2d Sess. (1978) ...........................................................23

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") submit this memorandum of law (this "Memorandum") in support of confirmation of the *Third Amended Joint Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates*, to be filed in advance of the Confirmation Hearing (as modified, amended, or supplemented from time to time, the "Plan").[2]  As demonstrated below, the Plan satisfies the requirements of sections 1125 and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code")[3] and should be confirmed.  In support of confirmation of the Plan, the Debtors respectfully state as follows:

**Preliminary Statement**

1.     Following months of extensive negotiations with its key constituents, the Debtors now stand, remarkably, on the brink of confirming a fully consensual and value-maximizing Plan. Despite the very real prospect of a value destructive chapter 7 conversion merely weeks ago, the Debtors will arrive at the Confirmation Hearing after having (a) conducted two auctions (and consummated one sale), **each of which resulted in bids that more than doubled the Sale Proceeds contemplated by the initial asset purchase agreements filed at the outset of these Chapter 11 Cases**,[4] and (b) executing the Global Settlement Term Sheet, which provides for, among other things, a holistic resolution amongst the Debtors, the Ad Hoc Group, and the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Proposed Confirmation Order (as defined herein), or as later defined herein, as applicable.

[3] A detailed description of the Debtors and their businesses, and the facts and circumstances surrounding the Debtors' Chapter 11 Cases, are set forth in greater detail in the *Declaration of Edward Durkin in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 3].  On April 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 60].  No party has requested the appointment of a trustee or examiner in these chapter 11 cases.  On April 16, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 139].

[4] *See Notice of Designation of Successful Bid and Back-Up Bid* [Docket No. 206] (the "Cloud/Ran Notice") and *Notice of Designation of Successful Bid and Back-Up Bid* [Docket No. 375] (the "Cable Notice").

Committee, and a substantial recovery to Holders of General Unsecured Claims under circumstances where the Debtors' secured lenders remain deeply impaired.[5]

2.      Indeed, the global support for the successful conclusion of these Chapter 11 Cases is further evidenced by the fact that **100% of all voting creditors in both number and amount** voted to support the Plan.  Remarkably, the Debtors received both **zero votes against the Plan and zero formal objections to the Plan**.  Given the history and events that occurred in these Chapter 11 Cases, the Plan is an extraordinary result.  Accordingly, the Debtors are extremely well positioned to expeditiously confirm the Plan and imminently close the sale of their Cable Assets following the Confirmation Hearing, with the Effective Date to follow shortly thereafter.

3.      If approved, the Plan will facilitate, among other things, (i) the prompt distribution of the applicable Sale Proceeds and (ii) the orderly wind-down and liquidation of the Debtors' operations and Estates (to be conducted by the Plan Administrator, the Preserved Actions Administrator, and the Debtors) via an agreed-to post-Effective Date process for monetization and distributions of the Debtors' Net Distributable Assets and proceeds of the Preserved Actions (if any).  Considering the foregoing, the Plan—which is the value-maximizing path forward for liquidating the Debtors' remaining assets and winding down operations—maximizes the value of the Debtors' Estates to the benefit of all stakeholders all while satisfying the requirements of section 1129 of the Bankruptcy Code (as demonstrated herein and in the Declarations).  Accordingly, the Debtors respectfully request that the Court confirm the Plan.

### Argument

4.      This Memorandum is divided into two parts.  Part I provides the procedural history of the Plan and Disclosure Statement and the Debtors' solicitation efforts and voting results.  Part II establishes the Plan's compliance with each of the applicable requirements for confirmation, including that certain of the discretionary contents of the Plan, including the Plan's release

---

[5] In addition, while the Global Settlement Term Sheet provides for the preservation of Causes of Action against certain Non-Released Parties, the Debtors and the Committee continue to engage with such Non-Released Parties on the terms of a settlement that, if consummated, would address any such Causes of Action and provide finality to the Non-Released Parties.

31703445.1

provisions, are appropriate and should be approved.  In further support of confirmation of the Plan, the Debtors have attached hereto:

- the *Declaration of Brian Whittman in Support of Confirmation of the Third Amended Joint Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates* (the "Whittman Declaration"), attached as **Exhibit A** hereto;

- the *Declaration of Harvey L. Tepner, Independent Director of Casa Systems, Inc., in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates* (the "Tepner Declaration"), attached as **Exhibit B** hereto; and

- the *Declaration of Emily Young, on Behalf of Epiq Corporate Restructuring, LLC, Regarding Solicitation and Tabulation of Ballots Cast on the Second Amended Joint Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates* (the "Voting Report" and together with the Whittman Declaration and the Tepner Declaration, the "Declarations"), attached as **Exhibit C** hereto.

5.     For the reasons stated herein and in light of the evidentiary support to be offered at the Confirmation Hearing, the Debtors respectfully request that the Court find that the Debtors have satisfied their burden and confirm the Plan.

**I.     Case Background.**

**A.     Procedural History.**

6.     Since the Petition Date, the Debtors have engaged in a multi-faceted process to maximize the value of the Debtors' Estates for their stakeholders, most notably through the marketing and consummation of the Sale Transactions and negotiation and execution of a global settlement term sheet by and among the Debtors, the Committee and the Ad Hoc Group (the "Global Settlement Term Sheet"), notice of which was collectively filed on May 10, 2024

[Docket No. 315]. The Debtors agreed to, among other things, implement the terms of the Global Settlement Term Sheet into the Plan and the Final Cash Collateral Order.[6]

7.      On April 3, 2024, the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") the *Joint Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates* [Docket No. 21] and the *Disclosure Statement for Joint Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates* [Docket No. 22], along with the Disclosure Statement Motion[7] pursuant to which the Debtors sought a hearing on approval of the Disclosure Statement and the related Solicitation and Voting Procedures.

8.      On April 25, 2024, the Debtors filed the *Amended Joint Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates* [Docket No. 207] and the *Amended Disclosure Statement for Joint Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates* [Docket No. 208]. On April 26, 2024, the Court entered the Disclosure Statement Order[8] which, in relevant part: (a) established May 28, 2024, at 5:00 p.m. prevailing Eastern Time, as the deadline to object to the Plan; (b) approved the solicitation procedures set forth in the Disclosure Statement; and (c) approved the form and manner of the Combined Notice (as defined in the Disclosure Statement Orders).[9]

9.      The Debtors caused Epiq Corporate Restructuring, LLC (the "Notice and Claims Agent"), on or about April 30, 2024, with respect to Holders of Term Loan Facility Claims, and

---

[6] *See Final Order (I) Authorizing Limited Use of Cash Collateral; (II) Granting Adequate Protection Liens and Superpriority Administrative Expense Claims to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 323].

[7] *See Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Conditionally Approving the Disclosure Statement, (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation Procedures; (V) Approving the Combined Notice; and (VI) Granting Related Relief* [Docket No. 23] (the "Disclosure Statement Motion").

[8] *See Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Conditionally Approving the Disclosure Statement, (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation Procedures; (V) Approving the Combined Notice; and (VI) Granting Related Relief* [Docket No. 222] (the "Disclosure Statement Order").

[9] Additionally, on May 14, 2024, the Court entered the *Supplemental Order Authorizing the Solicitation of Class 4 General Unsecured Claims and Approving Revised Solicitation Procedures* [Docket No. 329] (the "Supplemental Disclosure Statement Order," and together with the Disclosure Statement Order, the "Disclosure Statement Orders").

on or about May 17, 2024, with respect to Holders of General Unsecured Claims, to serve the Solicitation Packages (as defined in the Disclosure Statement Orders) and the Combined Hearing Notice in accordance with the terms of the Disclosure Statement Orders.[10]  The Debtors caused the Publication Notice (as defined in the Disclosure Statement Orders) to be published in *The New York Times* (national edition) on March 27, 2023, as evidenced by the *Certificate of Publication* [Docket No. 613].

10.    On May 10, 2024, the Debtors filed the *Notice of Filing of Plan Supplement* [Docket No. 316] (the "First Plan Supplement"), which included the: (a) Identity and Compensation of the Plan Administrator; (b) Form of Plan Administrator Agreement; (c) Identity of Known Insiders Employed or Retained by the Plan Administrator; (d) Schedule of Assumed Executory Contracts and Unexpired Leases; and (e) Schedule of Retained Causes of Action.[11]

11.    On May 16, 2024, the Debtors filed the *Second Amended Joint Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates* [Docket No. 332] and the *Second Amended Disclosure Statement for Joint Plan of Liquidation of Casa Systems, Inc. and Its Debtor Affiliates* [Docket No. 333] (as modified, amended, or supplemented from time to time, the "Disclosure Statement").

12.    The deadline for all Holders of Claims and Interests entitled to vote on the Plan to cast their ballots was May 28, 2024 at 5:00 p.m., prevailing Eastern Time.  The deadline to file objections to the Plan was May 28, 2024 at 5:00 p.m., prevailing Eastern Time.  The Confirmation Hearing is scheduled for June 4, 2024 at 2:30 p.m., prevailing Eastern Time.  Prior to the Confirmation Hearing, the Debtors will have submitted a proposed confirmation order (the "Proposed Confirmation Order").

---

[10] *See Notice of (I) Hearing on the Disclosure Statement and Confirmation of the Plan of Liquidation, (III) Deadline to Cast Votes to Accept or Reject the Plan, and (IV) Notice of Objection Deadline* [Docket No. 228] (the "Notice of Solicitation").

[11] Prior to the Effective Date, the Debtors anticipate filing a *Notice of Filing of Second Plan Supplement* (the "Second Plan Supplement," and together with the First Plan Supplement, the "Plan Supplement"), which will add, in addition to revisions to the items disclosed In the First Plan Supplement, the: (a) Identity of the Preserved Actions Administrator and (b) Identity of the Members of the Oversight Committee.

**B.      The Plan Settlement.**

13.      The Plan embodies a good-faith compromise and settlement of Claims, Interests, Causes of Action, and controversies related to the Debtors and the restructuring.  The Plan is designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties in interest.  The Debtors thoroughly analyzed those Claims, Interests, Causes of Action, and controversies and found that the Plan will maximize the value of the Estates and maximize recoveries to Holders of Claims and Interests and is essential to the successful implementation of the Plan.

14.      To effectuate the terms of the Plan, the Plan includes mutual, consensual, and customary releases of claims held by the Debtors and parties in interest.

**C.      The Plan Solicitation and Notification Process.**

15.      The Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein applies separately to each of the Debtors.  The Plan provides for the limited substantive consolidation of all of the Debtors' Estates for limited purposes under the Plan, including making any distributions to Holders of Claims and Interests.

16.      In compliance with the Bankruptcy Code, only Holders of Claims and Interests in Impaired Classes receiving or retaining property on account of such Claims or Interests were entitled to vote on the Plan.[12]  Holders of Claims and Interests were not entitled to vote if their rights are Unimpaired.  The following Classes of Claims and Interests were ***not*** entitled to vote on the Plan, and the Debtors did not solicit votes from Holders of such Claims and Interests:

| Class | Claim or Interest | Status | Voting Rights |
|:---:|:---:|:---:|:---:|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Section 501(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Existing Equity Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

---

[12] *See* 11 U.S.C. § 1126.

17.     The Debtors solicited votes on the Plan only from Holders of Claims in Impaired Classes receiving or retaining property on account of such Claims.  The voting results, as reflected in the Voting Report, are summarized as follows:

| Class | Class Description | Number Accepting | Number Rejecting | Amount Accepting | Amount Rejecting | Class Voting Result |
|-------|-------------------|------------------|------------------|------------------|------------------|---------------------|
| 3 | Term Loan Facility Claims | 101 / 100.00% | 0 / 0.00% | $172,086,856.70 / 100.00% | $0.00 / 0.00% | Accept |
| 4 | General Unsecured Claims | 11 / 100.00% | 0 / 0.00% | $2,473,485.28 / 100.00% | $0.00 / 0.00% | Accept |

18.     As set forth above and in the Voting Report, Holders of Claims and Interests in Classes 3 and 4 were entitled to vote to accept or reject the Plan (collectively, the "Voting Classes").

## II.     The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code.

19.     To confirm the Plan, the Court must find that the Debtors have satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[13]  As set forth herein, the Plan fully complies with all relevant sections of the Bankruptcy Code—including sections 1122, 1123, 1125, 1126, and 1129—as well as the Bankruptcy Rules and applicable non-bankruptcy law.

### A.     The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code.

20.     Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."  The legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision also encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the

---

[13] *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120, n.15 (D. Del. 2006); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 n.23 (Bankr. D. Del. 2001).

contents of a plan, respectively.[14] As explained below, the Plan complies with the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code, as well as other applicable provisions.

### 1. The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.

21. The classification requirement of section 1122(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

22. For a classification structure to satisfy section 1122 of the Bankruptcy Code, not all substantially similar claims or interests need to be grouped in the same class.[15] Instead, claims or interests designated to a particular class must be substantially similar to each other.[16] Courts in this jurisdiction and others have recognized that plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis to do so.[17]

---

[14] S. Rep. No. 95-989, at 126, reprinted in 1978 U.S.C. C.A.N. 5787, 5912 (1978); H.R. Rep. No. 95-595, at 412, reprinted in 1978 U.S.C. C.A.N. 5963, 6368 (1977); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was most directly aimed at were [s]ections 1122 and 1123."); *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008).

[15] *Armstrong World Indus., Inc.*, 348 B.R. at 159.

[16] *Id.*

[17] Courts have identified grounds justifying separate classification, including: (a) where members of a class possess different legal rights and (b) where there are good business reasons for separate classification. *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158–59 (3d Cir. 1993) (holding that, as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed," the classification is proper); *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes); *see also Frito-Lay, Inc. v. LTV Steel Co.* (*In re Chateaugay Corp.*), 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate because classification scheme had a rational basis on account of the bankruptcy court-approved settlement); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 303 (Bankr. N.D. Tex. 2007) (explaining that "the only express prohibition on separate classification is that it may not be done to gerrymander an affirmative vote on a reorganization plan"); *In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010, 1018 (Bankr. S.D.N.Y. 1993) (holding that, although discretion is not unlimited, "the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case") (internal quotations omitted); *In re Drexel Burnham Lambert Grp. Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims. It does not require that similar classes be grouped together").

23.     The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because the Plan places Claims and Interests into eight (8) separate Classes, with Claims and Interests in each Class differing from the Claims and Interests in each other Class in a legal or factual way or based on other relevant criteria.[18] Specifically, the Plan provides for the separate classification of Claims and Interests into the following Classes:

a.      <u>Class 1</u>: Other Secured Claims;
b.      <u>Class 2</u>: Other Priority Claims;
c.      <u>Class 3</u>: Term Loan Facility Claims;
d.      <u>Class 4</u>: General Unsecured Claims;
e.      <u>Class 5</u>: Intercompany Claims;
f.      <u>Class 6</u>: Section 510(b) Claims;
g.      <u>Class 7</u>: Existing Equity Claims; and
h.      <u>Class 8</u>: Intercompany Interests.

24.     Claims and Interests assigned to each particular Class described above are substantially similar to the other Claims and Interests in such Class.[19]  In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests.[20]  Namely, the Plan separately classifies the Claims because each Holder of such Claims or Interests may hold (or may have held) rights in the estates legally dissimilar to the Claims or Interests in other Classes or because substantial administrative convenience resulted from such classification.[21]

25.     For example, the classification scheme distinguishes between Holders of Term Loan Facility Claims (Class 4) from Section 510(b) Claims (Class 6), because of the different circumstances of each class.  Other Priority Claims (Class 2) are classified separately due to their required treatment under the Bankruptcy Code.[22]  In addition, the Plan classifies Existing Equity

---

[18] *See* Plan, Art. III.

[19] *See* Tepner Decl. ¶¶ 11–12.

[20] *Id.*

[21] *Id*.

[22] Plan, § III.A.

Interests (Class 7) separately from Interests that a Debtor holds in another Debtor because the Debtors' ownership structure is dependent upon maintaining the Intercompany Interests and, therefore, the Intercompany Interests may be preserved under the Plan for the administrative convenience of ensuring the preservation of the Debtors' corporate structure after the Effective Date.[23]

26.      Accordingly, the Claims or Interests assigned to each particular Class described above are substantially similar to the other Claims or Interests in each such Class and the distinctions among Classes are based on valid business, factual, and/or legal distinctions.  The Debtors submit that the Plan fully complies with and satisfies section 1122 of the Bankruptcy Code, and no party has asserted otherwise.

### 2. The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code.

27.      Section 1123(a) of the Bankruptcy Code sets forth seven criteria that every chapter 11 plan must satisfy.  The Plan satisfies each of these requirements, and no party has asserted otherwise.

*(1)    Designation of Classes of Claims and Equity Interests (§ 1123(a)(1)).*

28.      For the reasons set forth above, Article III of the Plan properly designates classes of Claims and Interests and thus satisfies the requirement of section 1122 of the Bankruptcy Code.[24]

*(2)    Specification of Unimpaired Classes (§ 1123(a)(2)).*

29.      Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan."  The Plan meets this requirement by identifying each Class in Article III that is Unimpaired.[25]

---

[23] *Id.*

[24] Tepner Decl. ¶ 13.

[25] *See* Plan, § III.A; Tepner Decl. ¶ 13.

*(3)     Treatment of Impaired Classes (§ 1123(a)(3)).*

30.     Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan." The Plan meets this requirement by setting forth the treatment of each Class in Article III that is Impaired.[26]

*(4)     Equal Treatment within Classes (§ 1123(a)(4)).*

31.     Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."[27] The Plan meets this requirement because holders of Allowed Claims or Interests will receive the same rights and treatment as other holders of Allowed Claims or Interests within such holders' respective Class.[28]

*(5)     Means for Implementation (§ 1123(a)(5)).*

32.     Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.[29] The Plan satisfies this requirement because Article IV of the Plan, as well as other provisions thereof, provide for the means by which the Plan will be implemented.[30] Among other things, Article IV of the Plan provides for: (i) compromise or settlement of Claims and Interests and controversies; (ii) implementation of a wind-down; (iii) funding of distributions; (iv) cancellation of certain existing agreements, obligations, instruments and Interests; and (v) vesting of assets in the Debtors, the appointment of the Plan Administrator and Preserved Actions Administrator, the resignation of the directors and officers of the Debtors, the release of Liens, and the preservation of certain Causes of Action.

33.     The precise terms governing the execution of these transactions are set forth in the applicable definitive documents or forms of agreements included in the Plan Supplement. The Debtors submit that the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

---

[26] *See id.*

[27] 11 U.S.C. § 1123(a)(4).

[28] *See* Tepner Decl. ¶ 13.

[29] 11 U.S.C. § 1123(a)(5).

[30] *See* Tepner Decl. ¶ 13.

31703445.1

*(6)    Issuance of Non-Voting Securities (§ 1123(a)(6)).*

34.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities.[31]    The Plan is a liquidating plan pursuant to which all the Debtors' assets will be liquidated by the Plan Administrator in accordance with the Plan.  As of the Effective Date, all Interests in the Debtors will be canceled, released, and extinguished, and will be of no further force or effect, in accordance with the Plan, and the Plan Administrator and Preserved Actions Administrators each shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan.  As such, the Plan does not provide for the issuance of non-voting equity securities, and the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

*(7)    Directors and Officers (§ 1123(a)(7)).*

35.    Section 1123(a)(7) of the Bankruptcy Code requires that plan provisions with respect to the manner of selection of any director, officer, or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy." In accordance with Article IV.N.4, the persons acting as directors and officers of the Debtors shall be deemed to have been resigned, solely in their capacities as such.  Article IV.N.1 of the Plan also provides for the appointment of the Plan Administrator, which shall, on and after the Effective Date, act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other governing body and may, from time to time, retain certain officers as required under applicable law, including for regulatory purposes.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code, and no party has asserted otherwise.

### 3.    The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.

36.    Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.  Among other things, section 1123(b) of the

---

[31] 11 U.S.C. § 1123(a)(6).

Bankruptcy Code provides that a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) modify or leave unaffected the rights of holders of secured or unsecured claims; (c) provide for the settlement or adjustment of claims against or interests in a debtor or its estate or the retention and enforcement by a debtor, trustee, or other representative of claims or interests; (d) provide for the assumption or rejection of executory contracts and unexpired leases; (e) provide for the sale of all or substantially all of the property of a debtor's estate, and the distribution of the proceeds of such sale among holders of claims or interests; or (f) "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[32]

> *(1)    The Plan Settlement of Claims and Controversies Is Fair and Equitable and Should Be Approved.*

37.    The Plan provides for the compromise and settlement of numerous Claims, Interests, Causes of Action, and controversies designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties in interest. The Plan resolves a host of alleged Claims and Causes of Actions, which are all highly uncertain to succeed and pursuit thereof could cause extensive delay, cost, and uncertainty in these Chapter 11 Cases and otherwise. Accordingly, except as otherwise set forth in the Plan or herein, in consideration for the distribution and other benefits provided under the Plan, including various release, exculpation, and injunction provisions, the Plan shall constitute a good-faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan. Each component of the Plan is an integral, integrated, and inextricably linked part of the global settlement contemplated thereunder.[33]

38.    The compromises set forth in the Plan are critical to bringing closure to these and other matters addressed in the Plan and to permitting the Debtors to maximize the value of the Estate for the benefit of all parties in interest and maximize recoveries for all Holders of Claims and Interests.[34]

---

[32] *See* 11 U.S.C. § 1123(b)(1)–(6).

[33] *See* Tepner Decl. ¶¶ 16–22.

[34] *Id.* at ¶ 22.

31703445.1

> (2)   *The Plan's Release, Exculpation, and Injunction Provisions Satisfy Section 1123(b) of the Bankruptcy Code.*

39.   The Plan also includes certain releases, an exculpation provision, and an injunction provision.  These discretionary provisions are proper because, among other things, they are the product of extensive good-faith, arm's-length negotiations, are supported by the Debtors and their key constituents, and are consistent with applicable precedent.[35]

### (i)   The Debtor Release Is Appropriate.

40.   Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[36]  Further, a debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[37]  Article IX.B of the Plan provides for releases by the Debtors and their Estates, as of the Effective Date, of, among things, certain Claims, rights, and Causes of Action that the Debtors and their Estates may have against the Released Parties (the "Debtor Release").[38]

---

[35] *Id.* at ¶ 16–22.

[36] *See In re Coram Healthcare Corp.*, 315 B.R. 321, 334–35 (Bankr. D. Del. 2004) (holding that standards for approval of settlement under section 1123 of the Bankruptcy Code are generally the same as those under Bankruptcy Rule 9019).  Generally, courts in the Third Circuit approve a settlement by the debtors if the settlement "exceed[s] the lowest point in the range of reasonableness."  *In re Exaeris, Inc.*, 380 B.R. 741, 746– 47 (Bankr. D. Del. 2008) (citation omitted); *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983) (examining whether settlement "fall[s] below the lowest point in the range of reasonableness") (alteration in original) (citation omitted); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (stating that settlement must be within reasonable range of litigation possibilities).

[37] *In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'") (internal citations omitted).

[38] "Released Party" means, each of the following and in each case in its capacity as such: (a) the Debtors; (b) the Holders of Term Loan Facility Claims; (c) the Plan Administrator and the Preserved Actions Administrator; (d) each of the Prepetition Agents; (e) the Committee and its members, each in their capacities as such; (f) all Holders of Claims or Interests; (g) each current and former Affiliate of each Entity in clause (a) through the following clause (h); and (h) each Related Party of each Entity in clause (a) through this clause (h); *provided* that, a Released Party shall only be a Released Party if it is also a Releasing Party; *provided*, *further*, that, in no event shall either of the Non-Released Parties constitute a Released Party under the Plan.  *See* Plan, § I.A.

31703445.1

41.    Courts in this jurisdiction generally analyze five factors when determining the propriety of a debtor release, commonly known as the *Zenith* or *Master Mortgage* factors.[39]  The analysis includes an inquiry into whether there is:  (1) identity of interest between the debtor and non-debtor; (2) substantial contribution to the plan by the non-debtor; (3) the necessity of the release to the reorganization; (4) overwhelming acceptance of the plan and release by creditors and interest holders; and (5) payment of all or substantially all of the claims of the creditors and interest holders.[40]  These factors are "neither exclusive nor conjunctive requirements" but rather serve as guidance to courts in determining fairness of a debtor's releases.[41]

42.    The Debtor Release meets the applicable standard because it is fair, reasonable, and in the best interests of the Debtors' Estates.  As described in the Tepner Declaration,[42] and as an analysis of the *Zenith* factors demonstrates, the Debtor Release embodied in Article IX.B of the Plan should be approved.

> *First*, an identity of interest exists between the Debtors and the parties to be released.  Each of the Released Parties, as a stakeholder and critical participant in the Plan process, shares a common goal with the Debtors in seeing the Plan succeed and would have been unlikely to participate in the negotiations and compromises that led to the ultimate formation of the Plan without the Debtor Releases.  Like the Debtors, these parties seek to confirm the Plan and implement the liquidation contemplated thereunder.[43]  Moreover, with respect to certain of the releases—*e.g.*, those releasing certain of the Debtors' current and former directors, officers, affiliates, and principals—there is a clear identity of interest supporting the release because the Debtors will assume certain indemnification obligations under the Plan that will be honored by the Debtors.[44]  Thus, a lawsuit commenced by the Debtors (or derivatively on behalf of the Debtors) against certain individuals would effectively be a

---

[39] *See In re Indianapolis Downs*, LLC, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (citing *In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr. D. Del. 1999)); *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994).

[40] *See In re Washington Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011) (citing *In re Zenith Elecs. Corp.*, 241 B.R. at 110 and In re Master Mortg. Inv. Fund, Inc., 168 B.R. at 937)

[41] *Id.* (citing *In re Master Mortg.*, 168 B.R. at 935).

[42] *See* Tepner Decl. ¶¶ 23–25.

[43] *See In re Abeinsa Holding, Inc.*, 562 B.R. 265, 284 (Bankr. D. Del. 2016) (finding that "there is an identity of interest between the Debtors and the released parties arising out the shared common goal of confirming and implementing the Plan."); *see also Zenith*, 241 B.R. at 110 (concluding that certain releasees who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed and the company reorganize").

[44] *See In re Indianapolis Downs, LLC*, 486 B.R. at 303 ("An identity of interest exists when, among other things, the debtor has a duty to indemnify the nondebtor receiving the release.").

lawsuit against the Debtors themselves other than any lawsuit that may be commenced against the Non-Released Parties, the proceeds of which, if any, shall be distributed to Holders of General Unsecured Claims in accordance with the Plan.

**Second**, the substantial contributions are clear. The Released Parties played an integral role in the formation of the Plan and have expended significant time and resources analyzing and negotiating the issues present in these Chapter 11 Cases to reach a value-maximizing transaction and avoid a liquidation. As Delaware bankruptcy courts have recognized, a wide variety of acts may illustrate a substantial contribution to a debtor's reorganization.[45] Moreover, the Released Parties have expended considerable time and resources negotiating, formulating, and ultimately, effecting the transactions contemplated in the Plan and the compromises and settlements set forth in Global Settlement Term Sheet.[46] Here, the value contributed by the Released Parties is certainly substantial. Without the contributions of each of these parties, the Plan and the transaction contemplated therein would not be possible.

**Third**, the Debtor Release is essential to the Debtors' reorganization because it constitutes an integral term of the Plan. The Debtor Release under the Plan incorporates the releases approved in the Global Settlement Term Sheet and releases the Released Parties from, among other things, any and all Claims and Causes of Action that the Debtors, their Estates or Affiliates would have been legally entitled to assert based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof) or their Estates, the purchase, sale, or recission of the purchase or sale of any security of the Debtors or the Debtor Affiliates, including, for the avoidance of doubt, any sale of any of the CAD Assets, the Term Loan Credit Documents, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, including any of the Debtors' prepetition debt transactions, the distribution of any Cash or other property of the Debtors to any Released Party (to the extent consistent with the terms of this Plan and the Bankruptcy Code), the assertion of rights or remedies against the Debtors by any Released Party, the Debtors' in- or out-of-court restructuring efforts (including in connection with the Exchange Agreement), intercompany transactions, the Restructuring Transactions, the Term Loan Credit Facilities, the Sale Transactions, the Chapter 11 Cases, any Non-Debtor Insolvency Proceedings, the formulation, preparation, dissemination, negotiation, Filing, or consummation of the Disclosure Statement, the Sale Transactions, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the Filing of the Chapter 11 Cases, the Cash Collateral Order, the pursuit of Confirmation, the pursuit of Consummation, and the

---

[45] *See id*. at 304 (finding that the non-debtor party had substantially contributed by performing services for the debtors post-petition without receiving compensation); *In re Wash. Mut., Inc*., 442 B.R. at 347 (finding substantial contribution required the contribution of "cash or anything else of a tangible value to the [plan of reorganization] or to creditors"); *In re Zenith Elecs. Corp*., 241 B.R. at 111 (finding that prepetition contribution of work in negotiating a plan constituted adequate consideration for debtor's release).

[46] Tepner Decl. ¶¶ 23, 27.

administration and implementation of the Plan. Indeed, absent the Debtor Release, it is highly unlikely the Released Parties would have agreed to support the Plan. As described above, each of the Released Parties contributed substantial value to these Chapter 11 Cases, and did so with the understanding that they would receive releases from the Debtors. In the absence of these parties' support, the Debtors would not be in a position to confirm the Plan and emerge from chapter 11. The Debtor Release, therefore, is essential to the Debtors' reorganization.

*Fourth*, as evidenced by the Voting Report and noted herein, the Debtor Release was resoundingly approved, as evidenced by the overwhelming acceptance of the Plan by creditors that submitted ballots.[47] In fact, of 112 voting creditors, zero rejected the Plan.[48] Given the critical nature of the Debtor Release, this figure evidences the Debtors' key stakeholders' support for the Debtor Release and the Plan. Even if the Court determined that this support does not constitute "overwhelming acceptance," as noted above, these factors are neither exclusive nor conjunctive.[49]

*Fifth*, the Plan provides for meaningful recoveries under the circumstances for all creditors potentially giving up colorable claims under the releases. As demonstrated by the transaction and marketing process and the Liquidation Analysis (as defined herein) attached as Exhibit D to the Disclosure Statement, the ranges of recoveries for all Holders of Term Loan Facility Claims and General Unsecured Claims are materially higher under the Plan than they would have been in a chapter 7 liquidation scenario or the relevant classes of such Holders have voted in favor of the Plan. The transactions set forth in the Plan maximize value and provide meaningful recoveries for all stakeholders under the circumstances.

43.     For the reasons set forth above, and as supported by the Tepner Declaration, the *Zenith* factors supports approval of the Debtor Release. Moreover, the breadth of the Debtor Release is consistent with those regularly approved in this jurisdiction and others.[50] The Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan. The Debtor Release easily meets the applicable standard because it is fair, reasonable, and in the best interests of the Debtors' Estates. Thus, the Court should approve the Debtor Release in the Plan.

---

[47] *See* Voting Report, Ex. A

[48] *Id.*

[49] *See In re Washington Mut., Inc.*, 442 B.R. at 346.

[50] *See, e.g.*, *In re One Aviation Corp.*, No. 18-12309 (CSS) (Bankr. D. Del. Sep. 18, 2019) (approving Plan providing for definition of Released Parties including, among others, the Debtors' directors and officers); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 29, 2019) (same); In re Checkout Holding Corp., No. 18-12794 (KG) (Bankr. D. Del. Jan. 31, 2019) (same); In re TK Holdings Inc., No. 17-11375 (BLS) (Bankr. D. Del. Feb. 21, 2018) (same); *In re Samson Resources Corp.*, No. 14-11934 (CSS) (Bankr. D.Del. Feb. 13, 2017) (same).

### (ii) The Third-Party Release Is Wholly Consensual and Is Appropriate.

44. Specifically, Article IX.C of the Plan provides for the release of each Released Party from Causes of Action of the Debtor and certain non-debtor Releasing Parties (the "Third-Party Releases"). These releases have the same subject matter nexus as the Debtor Release described above. Courts in this jurisdiction routinely approve such release provisions when, as here, they are consensual.[51] The Third-Party Releases are consensual, consistent with established Third Circuit law, and integral to the Plan, and therefore should be approved.

45. Consensual releases are permissible on the basis of general principles of contract law.[52] The law is clear that a release is consensual where parties have received sufficient notice of a plan's release provisions and have had an opportunity to object to and opt in to the releases. In this case, all parties in interest had ample opportunity to evaluate the Third-Party Releases or object to the Plan. All parties in interest were provided extensive notice of these Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan. Moreover, the Disclosure Statement, the cover letter to the Solicitation Package, the notice of the Confirmation Hearing, the notices of non-voting status and the ballots provided recipients with timely, sufficient, appropriate, and adequate notice of the Third-Party Releases.[53] The Debtors required all Holders of Claims or Interests that abstained from voting on the Plan that were deemed to accept or deemed to reject the Plan, or voted to reject the Plan to affirmatively opt in to the Third-Party Releases in the Plan in order to provide such releases.[54] Thus, the Third-Party Releases are wholly consensual and the factors governing non-consensual third-party releases under *Continental* and its progeny are

---

[51] *See In re Indianapolis Downs, LLC*, 486 B.R. at 304–05 (approving third-party release that applied to unimpaired holders of claims deemed to accept the plan as consensual); *In re Spansion, Inc*., 426 B.R. at 144 (same); *In re Wash. Mut., Inc*., 442 B.R. at 352 (observing that consensual third-party releases are permissible).

[52] *See In re Coram Healthcare Corp*., 315 B.R. 321, 336 (Bankr. D. Del. 2004).

[53] *See* Disclosure Statement § IX.C; Disclosure Statement Order ¶ 4.

[54] *See* Plan, § IX.C; Disclosure Statement, § IX.C.

31703445.1

inapplicable.[55]  The Third-Party Release is consensual, consistent with established Third Circuit law, and integral to the Plan and therefore should be approved.

### (iii)    The Exculpation Provision Is Appropriate.

46.    Article IX.D of the Plan provides for the exculpation of the Exculpated Parties.  The exculpation is fair and appropriate under both applicable law[56] and the facts and circumstances of these Chapter 11 Cases.  The Plan's exculpation provision is the product of arms'-length negotiations, was critical to obtaining the support of various constituencies for the Plan, and, as part of the Plan, has received support from the Debtors' major stakeholders.[57]  The exculpation provision was important to the development of a feasible, confirmable Plan, and the Exculpated Parties participated in these Chapter 11 Cases in reliance upon the protections afforded to those constituents by the exculpation.[58]

47.    Courts evaluate the appropriateness of exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether liability is limited, and

---

[55] Even if the Court were to determine that the Third-Party Releases are non-consensual, the Third-Party Releases are appropriate and should be approved.  Courts in the Third Circuit have held that a non-consensual release may be approved if such release is fair and necessary to the reorganization and fair consideration is given in exchange for the release.  *See United Artists Theatre Co. v. Walton*, 315 F.3d 217, 227 (3d Cir. 2000); *Gillman v. Cont'l Airlines* (*In re Cont'l Airlines*), 203 F.3d 203, 213–14 (3d Cir. 2000); *In re Spansion, Inc.*, 426 B.R. at 144 ("hallmarks" of permissible nonconsensual releases include: "(i) the non-consensual release is necessary to the success of the reorganization; (ii) releasees have provided a critical financial contribution to the Debtors' plan; (iii) the releasee's financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, *i.e.*, whether the non-consenting creditors received reasonable compensation in exchange for the release").  The Third-Party Releases are integral to the Plan and the settlements incorporated therein, and are fair and appropriate.  Without the efforts and contributions of the Released Parties as set out above, the Debtors would not be poised to confirm a plan and would be forced to liquidate, leaving less recoveries for all stakeholders than those provided under the Plan.  The Third-Party Releases were a material inducement for the respective support (financial and otherwise) that the Released Parties have provided in connection with the Plan and the Debtors' restructuring.  Finally, the contributions made by the Released Parties are sufficient consideration to the third parties bound by the Releases to justify the Third-Party Releases, as indicated by the unanimous support of the Plan among Releasing Parties and the near unanimous support globally.

[56] *See In re Laboratory Partners, Inc.*, No. 13-12769 (PJW) (Bankr. D. Del. July 10, 2014) (finding that exculpation was appropriately extended to secured lender who funded the chapter 11 case); *In re FAH Liquidating Corp.*, No. 13-13087 (KG) (Bankr. D. Del. July 28, 2014) (finding that exculpation as applied to a non-debtor Plan Sponsor was appropriate under section 1123(b)).

[57] Tepner Decl. ¶ 16.

[58] *Id.* ¶¶ 29–31.

whether the exculpation provision was necessary for plan negotiations.[59]  Exculpation provisions that are limited to claims not involving actual fraud, willful misconduct, or gross negligence, are customary and generally approved in this district under appropriate circumstances.[60]  Unlike third-party releases, exculpation provisions do not affect the liability of third parties *per se*, but rather set a standard of care of gross negligence or willful misconduct in future litigation by a non-releasing party against an "Exculpated Party" for acts arising out of the Debtors' restructuring.[61]

48.    The Exculpated Parties have participated in good faith in formulating and negotiating the Plan as it relates to the Debtors, and they should be entitled to protection from exposure to any lawsuits filed by disgruntled creditors or other unsatisfied parties.[62]  Moreover, the exculpation provision and the liability standard it sets represent a conclusion of law that flows logically from certain findings of fact that the Court must reach in confirming the Plan as it relates to the Debtors.  As discussed above, this Court must find, under section 1129(a)(2), that the Debtors have complied with the applicable provisions of the Bankruptcy Code.  Additionally, this Court must find, under section 1129(a)(3), that the Plan has been proposed in good faith and not by any means forbidden by law.  These findings apply to the Debtors and, by extension, to the Debtors' officers, directors, employees, and professionals.  Further, these findings imply that the Plan was negotiated at arms'-length and in good faith.

---

[59] *See, e.g.*, *In re Enron Corp.*, 326 B.R. 497, 503 (S.D.N.Y. 2005) (evaluating the exculpation clause based on the manner in which the clause was made a part of the agreement, the necessity of the limited liability to the plan negotiations, and that those who participated in proposing the plan did so in good faith).

[60] *See Wash. Mut.*, 442 B.R. at 350–51 (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the [d]ebtors' directors and officers" was appropriate).

[61] *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (finding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"); *see also In re Premier Int'l Holdings, Inc.*, 2010 WL 2745964, at *10 (CSS) (Bankr. D. Del. Apr. 29, 2010) (approving a similar exculpation provision as that provided for under the Plan); *In re Spansion*, 2010 WL 2905001, at *16 (Bankr. D. Del. April 16, 2010) (same).

[62] Tepner Decl. ¶¶ 29–31.

49.     Here, the Debtors and their officers, directors, and professionals, actively negotiated with Holders of Claims and Interests across the Debtors' capital structure in connection with the Plan and these Chapter 11 Cases.[63]  Such negotiations were extensive and the resulting agreements were implemented in good faith with a high degree of transparency, and as a result, the Plan enjoys support from Holders of Claims entitled to vote.[64]  The Exculpated Parties played a critical role in negotiating, formulating, and implementing the Disclosure Statement, the Plan, and, to the extent applicable, and related documents in furtherance of the consummation of the Sale Transaction and any Restructuring Transaction contemplated by the Plan.[65]  Furthermore, the exculpation provision is limited to acts during these Chapter 11 Cases and does not extend beyond such time period.   Accordingly, the Court's findings of good faith vis-à-vis the Debtors' Chapter 11 Cases should also extend to the Exculpated Parties.

50.     Additionally, the promise of exculpation played a significant role in facilitating Plan negotiations.[66]  All of the Exculpated Parties played a key role in developing the Plan that paved the way for a successful reorganization, and likely would not have been so inclined to participate in the plan process without the promise of exculpation.[67]  An exculpation for parties participating in the plan process is appropriate where plan negotiations could not have occurred without protection from liability.

51.     Under the circumstances, it is appropriate for the Court to approve the exculpation provision, and to find that the Exculpated Parties have acted in good faith and in compliance with the law.[68]

---

[63] *Id.*

[64] *See generally* Voting Report.

[65] *In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del. June 23, 2016) ("[T]he debtors did not do this alone; they did it with the help of many others.").

[66] Tepner Decl. ¶ 31.

[67] *Id.*

[68] *See PWS Holding Corp.*, 228 F.3d at 246–47 (approving plan exculpation provision with willful misconduct and gross negligence exceptions); *In re Indianapolis Downs, LLC*, 486 B.R. at 306 (same).

31703445.1

### (iv)   The Injunction Provision Is Appropriate.

52.     The injunction provision set forth in Article IX.E of the Plan merely implements the Plan's release, discharge, and exculpation provisions, in part, by permanently enjoining all entities from commencing or maintaining any action against the Debtors, the Exculpated Parties, or the other Released Parties on account of or in connection with or with respect to any such claims or interests released, discharged, or subject to exculpation. Thus, the injunction provision is a key provision of the Plan because it enforces the release, discharge, and exculpation provisions that are centrally important to the Plan. As such, to the extent the Court finds that the exculpation and release provisions are appropriate, the Debtors respectfully submit that the injunction provision must also be appropriate. Moreover, this injunction provision is narrowly tailored to achieve its purpose.

### B.     The Plan Complies with Section 1123(d) of the Bankruptcy Code.

53.     Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and nonbankruptcy law."[69]

54.     The Plan complies with section 1123(d) of the Bankruptcy Code. The Plan provides for the satisfaction of monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan by payment of the default amount, if any, on the Effective Date, subject to the limitations described in Article V of the Plan or the Proposed Confirmation Order.[70] In accordance with the Proposed Confirmation Order and the amounts set forth in the Plan Supplement and section 365 of the Bankruptcy Code, the Debtors will satisfy monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases otherwise agree.

---

[69] *Integrated Res.*, 147 B.R. at 656 (citations omitted). the Debtors submit that the Plan fully complies with and satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

[70] *See* Plan § V.B.

31703445.1

**C.      The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code.**

55.      The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code.[71] The legislative history to section 1129(a)(2) provides that section 1129(a)(2) is intended to encompass the disclosure and solicitation requirements set forth in section 1125 and the plan acceptance requirements set forth in section 1126 of the Bankruptcy Code.[72] As set forth below, the Debtors have complied with these provisions, including sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018, by distributing the Disclosure Statement and soliciting acceptances of the Plan through their Notice and Claims Agent in accordance with the Disclosure Statement Orders.

**1.      The Debtors Complied with Section 1125 of the Bankruptcy Code.**

56.      Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[73] Section 1125 ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision whether to approve or reject the plan.[74]

57.      Section 1125 is satisfied here.  Before the Debtors solicited votes on the Plan, the Court approved the Disclosure Statement in accordance with section 1125(a)(1).[75]  The Court also

---

[71] *See* 11 U.S.C. § 1129(a)(2).

[72] *See In re Lapworth*, 1998 WL 767456, at *3 (DWS) (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Aleris Int'l, Inc.*, 2010 WL 3492664, at *20 (Bankr. D. Del. May 13, 2010) ("[S]ection 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the solicitation and disclosure requirements under sections 1125 and 1126 of the Bankruptcy Code."); S. Rep. No. 989, 95th Cong., 2d Sess., at 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977).

[73] 11 U.S.C. § 1125(b).

[74] *See Momentum Mfg. Corp. v. Emp. Creditors Comm.* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

[75] *See generally* Disclosure Statement Orders.

approved the contents of the solicitation materials provided to Holders of Claims entitled to vote on the Plan, the non-voting materials provided to parties not entitled to vote on the Plan, and the relevant dates for voting and objecting to the Plan.[76]  As stated in the Voting Report, the Debtors, through the Notice and Claims Agent, complied with the content and delivery requirements of the Disclosure Statement Orders, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code. The Debtors also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class. Here, the Debtors caused the Disclosure Statement to be transmitted to all parties entitled to vote on the Plan and parties deemed to reject the Plan.[77]

58.     Based on the foregoing, the Debtors submit that they have complied in all respects with the solicitation requirements of section 1125 of the Bankruptcy Code and the Disclosure Statement Orders, and no party has asserted otherwise.

### 2.     The Debtors Complied with Section 1126 of the Bankruptcy Code.

59.     Section 1126 of the Bankruptcy Code provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[78]  As noted above, the Debtors did not solicit votes on the Plan from the following Classes:

60.     Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) (collectively, the "Unimpaired Classes").[79]  Pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims in the Unimpaired Classes are conclusively presumed to have accepted the Plan and, therefore, were not entitled to vote on the Plan.

61.     To the extent Impaired, Classes 5 (Intercompany Claims), 6 (Section 510(b) Claims), 7 (Existing Equity Interests), and 8 (Intercompany Interests) are Impaired under the Plan

---

[76] *See generally* Voting Report.

[77] *Id.*

[78] *See* 11 U.S.C. § 1126.

[79] *See* Plan, § III.A.

(the "Deemed Rejecting Classes").[80]  Pursuant to section 1126(g) of the Bankruptcy Code, holders

of Claims and Interests in the Deemed Rejecting Classes are deemed to have rejected the Plan and,

therefore, were not entitled to vote on the Plan.

62.    Accordingly, the Debtors solicited votes only from the Voting Classes, Holders of

Allowed Claims and Interests in Classes 3 and 4 because these Classes are Impaired and entitled

to receive a distribution under the Plan.[81]  With respect to the Voting Classes of Claims,

section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been
> accepted by creditors, other than any entity designated under
> subsection (e) of [section 1126], that hold at least two-thirds in
> amount and more than one-half in number of the allowed
> claims of such class held by creditors, other than any entity
> designated under subsection (e) of [section 1126], that have
> accepted or rejected such plan.[82]

63.    The Voting Report, summarized above, reflects the results of the voting process in

accordance with section 1126 of the Bankruptcy Code.[83]  Based on the foregoing, the Debtors

submit that they have satisfied the requirements of section 1129(a)(2), and no party has asserted

otherwise.

## D.    The Plan Was Proposed in Good Faith and Therefore Complies with Section 1129(a)(3) of the Bankruptcy Code.

64.    Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be

"proposed in good faith and not by any means forbidden by law."  Where a plan satisfies the

purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement

---

[80] *Id.*

[81] *See generally* Voting Report, Ex. A.

[82] 11 U.S.C. § 1126(c).

[83] *See generally* Voting Report, Ex. A.

of section 1129(a)(3) of the Bankruptcy Code is satisfied.[84]  To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[85]

65.    The Plan was proposed with honesty, good intentions, and with the goal of maximizing stakeholder recoveries.  Throughout these Chapter 11 Cases, the Debtors, their directors, and their management team have upheld their fiduciary duties to stakeholders and protected the interests of all constituents, including the individual borrowers.  The Plan facilitates transactions that will provide significant value to the Debtors' stakeholders compared to the alternative of a chapter 7 liquidation.[86]  Importantly, the Plan is supported by the Debtors' key economic stakeholders, namely, the Ad Hoc Group and the Committee.  Accordingly, the Plan and the Debtors' conduct satisfy section 1129(a)(3) of the Bankruptcy Code.

**E.    The Plan Provides that the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)).**

66.    Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable.  Courts have construed this section to require that all payments of professional fees paid out of estate assets be subject to review and approval by the Court as to their reasonableness.[87]

---

[84] *E.g.*, *PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)); *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship* (*In re T-H New Orleans Ltd. P'ship*), 116 F.3d 790, 802 (5th Cir. 1997) (quoting *Brite* v. *Sun Country Dev., Inc.* (*In re Sun Country Dev., Inc.*), 764 F.2d 406, 408 (5th Cir. 1985)); *In re Century Glove, Inc.*, Civ. A. Nos. 90-400 and 90-401,1993 WL 239489, at *4 (D. Del. Feb. 10, 1993); *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002).

[85] *E.g.*, *T-H New Orleans*, 116 F.3d at 802 (quoting *In re Sun Country Dev., Inc.*, 764 F.2d at 408); *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012); *Century Glove*, 1993 WL 239489, at *4.

[86] *See* Whittman Decl. ¶ 6.

[87] *Lisanti Foods*, 329 B.R. at 503 ("Pursuant to § 1129(a)(4), a [p]lan should not be confirmed unless fees and expenses related to the [p]lan have been approved, or are subject to the approval, of the Bankruptcy Court"), *aff'd*, 241 F. App'x 1 (3d Cir. 2007); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988*); In re Chapel Gate Apartments, Ltd*., 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

67.     The Plan satisfies section 1129(a)(4) of the Bankruptcy Code.[88]  All payments made or to be made by the Debtors for services or for costs or expenses in connection with these Chapter 11 Cases prior to the Confirmation Date, including all Professional Fee Claims, have been approved by, or are subject to approval of, the Court.[89]  Article II.B of the Plan provides that all final requests for payment of Professional Fee Claims shall be filed no later than 45 days after the Confirmation Date for determination by the Court, after notice and a hearing, in accordance with the procedures established by the Court.[90]  Accordingly, the Plan fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code, and no party has asserted otherwise.

**F.     The Plan Does Not Require Additional Disclosures Regarding Directors, Officers, and Insiders (§ 1129(a)(5)).**

68.     The Bankruptcy Code requires the plan proponent to disclose the affiliation of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan.[91]  Section 1129(a)(5)(A)(ii) further requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[92]

69.     Here, Article IV.N of the Plan provides that the persons acting as directors and officers of the Debtors shall be deemed to have been resigned, solely in their capacities as such. As such, section 1129(a)(5) of the Bankruptcy Code is inapplicable to the Plan.  To the extent section 1129(a)(5) applies to the Plan Administrator, it will have satisfied the requirements of this provision by, among other things, disclosing the manner by which the Oversight Committee members will be selected in the Plan Supplement.

70.     In addition, section 1129(a)(5)(B) also requires a plan proponent to disclose the identity of any "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the

---

[88] *See* Whittman Decl. ¶ 5.

[89] *See* Plan, Art. II.

[90] *Id.*

[91] 11 U.S.C. § 1129(a)(5)(A)(i).

[92] 11 U.S.C. § 1129(a)(5)(A)(ii).

reorganized debtor and the nature of any compensation for such insider.[93]  Here, the Plan

Supplement identifies any insider to be employed by the Plan Administrator in compliance with

section 1129(a)(5)(B).[94]  Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy

Code are satisfied, and no party has asserted otherwise.

> **G.    The Plan Does Not Require Governmental Regulatory Approval (§ 1129(a)(6)).**

71.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any

regulatory commission that has or will have jurisdiction over a debtor after confirmation has

approved any rate change provided for in the plan.  Section 1129(a)(6) of the Bankruptcy Code is

inapplicable to these Chapter 11 Cases.

> **H.    The Plan Is in the Best Interests of All the Debtors' Creditors (§ 1129(a)(7)).**

72.    Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests

test," provides, in relevant part:

> With respect to each impaired class of claims or interests—
> (A)    each holder of a claim or interest of such class—
> > (i)    has accepted the plan; or
> > (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date . . . .

73.    The best interests test applies to individual dissenting holders of impaired claims

and interests rather than classes, and is generally satisfied through a comparison of the estimated

recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate

against the estimated recoveries under that debtor's plan of reorganization.[95]  As section 1129(a)(7)

---

[93] 11 U.S.C. § 1129(a)(5)(B).

[94] 11 U.S.C. § 1129(a)(5)(B).

[95] *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan**.");** *Century Glove*, 1993 WL 239489, at \*7; *In re Adelphia Commc'ns. Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

of the Bankruptcy Code makes clear, the best interests test applies only to holders of non-accepting impaired claims or interests.  Classes 3 and 4 have voted to accept the Plan. The Deemed Rejecting Classes did not vote on the Plan.  Accordingly, to satisfy the best interests test, the Debtors must demonstrate that each Holder of a Claim in the Deemed Rejecting Classes will receive at least as much under the Plan as that Holder would receive in a chapter 7 liquidation.[96]

74.    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test.  As set forth in the Disclosure Statement[97] and the Whittman Declaration,[98] the Debtors, with the assistance of Alvarez and Marsal North America, LLC, the Debtors' restructuring advisors, prepared an unaudited liquidation analysis (the "Liquidation Analysis"), which is attached to the Disclosure Statement.[99]  The Liquidation Analysis compares the projected range of recoveries that would result from the liquidation of the Debtors in a hypothetical case under chapter 7 of the Bankruptcy Code with the estimated distributions to Holders of Allowed Claims and Interests under the Plan.[100]  The Liquidation Analysis is based on the value of the Debtors' assets and liabilities as of a certain date and incorporates various estimates and assumptions, including a hypothetical conversion to a chapter 7 liquidation as of a certain date.[101]  Further, the Liquidation Analysis is subject to potentially material changes, including with respect to economic and business conditions and legal rulings.[102]

75.    Based on the unaudited Liquidation Analysis, and the assumptions included therein, the value of any distributions if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code would be no greater than the value of distributions under the Plan or the

---

[96] *See In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'") (internal citations omitted).

[97] *See* Disclosure Statement, Ex. D.

[98] Whittman Decl. ¶ 6.

[99] *See* Disclosure Statement, Ex. D.

[100] *See* Whittman Decl. ¶ 6.

[101] *See id.*

[102] *See id.*

applicable classes have otherwise voted in favor of the Plan.[103]  As a result, Holders of Claims and Interests in all Impaired Classes will recover at least as much as a result of confirmation of the Plan as they would recover through a hypothetical chapter 7 liquidation or otherwise consent to their treatment in the Plan.[104]  Based on the recoveries set forth above, the Plan satisfies the best interests test as required by the Bankruptcy Code.

 **I.**  **The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code.**

  76. Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  Holders of Claims and Interests in the Deemed Rejecting Classes are deemed to have rejected the Plan and, thus, were not entitled to vote.  Consequently, while the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Deemed Rejecting Classes, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.

 **J.**  **The Plan Provides for Payment in Full of All Allowed Priority Claims Except as Otherwise Agreed (§ 1129(a)(9)).**

  77. Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments.  In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims.  Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a

---

[103] *See id.*

[104] *See id.*

value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).  Finally, section 1129(a)(9)(C) of the Bankruptcy Code provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.

78.    The Plan satisfies section 1129(a)(9) of the Bankruptcy Code.  *First*, Article II.A of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each Holder of an Allowed Administrative Claim shall receive payment as follows: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than forty-five (45) days after the date on which an order allowing such Administrative Claim becomes a Final Order; (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.[105]  The Plan's process to resolve or pursue adjudication of asserted Claims will be overseen by the Plan Administrator and the Debtors, consistent with the terms of the Plan and the Proposed Confirmation Order.[106]

79.    *Second*, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no holders of the types of Claims specified by 1129(a)(9)(B) are Impaired under the Plan and such Claims have been paid in the ordinary course.

80.    *Third*, Article II.C of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it provides that holders of Allowed Priority Tax Claims payment in full in Cash on the Effective Date.  The Plan thus satisfies each of the requirements of section 1129(a)(9) of the Bankruptcy Code.

---

[105] *See* Tepner Decl. ¶¶ 47–49.

[106] *Id.*

31703445.1

**K.    At Least One Class of Impaired, Non-Insider Claims Accepted the Plan (§ 1129(a)(10)).**

81.    Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider," as an alternative to the requirement under section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept the plan or be unimpaired under the plan.

82.    Class 3 and Class 4, which are Impaired, voted to accept the Plan independent of any insiders' votes.    Thus, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**L.    The Plan Is Feasible (§ 1129(a)(11)).**

83.    Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that a plan is feasible as a condition precedent to confirmation. Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[107]

84.    To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success.[108]    Rather, a debtor must provide only a reasonable assurance of success.[109]    There is a relatively low threshold of proof necessary to satisfy the feasibility requirement.[110]    The feasibility

---

[107] 11 U.S.C. § 1129(a)(11).

[108] *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012); *W.R. Grace & Co.*, 475 B.R. at 115; *In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed."), *aff'd*, 800 F.2d 581 (6th Cir. 1986).

[109] *Kane*, 843 F.2d at 649; *Flintkote Co.*, 486 B.R. at 139; *W.R. Grace & Co.*, 475 B.R. at 115; *see also Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*), 761 F.2d 1374, 1382 (9th Cir. 1985) (citations omitted) (holding that "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation"); *accord In re Capmark Fin. Grp. Inc.*, No. 09-13684 (CSS), 2011 WL 6013718, at *61 (Bankr. D. Del. Oct. 5, 2011) (same).

[110] *See, e.g., In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) (quoting approvingly that "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility") (internal citations omitted); *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 305 (D. N.J. 1996); *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del. 2011), *overruled in part on other grounds*, 464 B.R. 208 (Bankr. D. Del. 2011).

test set forth in section 1129(a)(11) does not require the Debtors to "prove" that the Plan will succeed.  The Debtors need only demonstrate that the Amended Plan has "a reasonable likelihood of success" or a "reasonable probability" that the provisions of the Plan may be performed.[111]

85.     The purpose of the feasibility test under section 1129(a)(11) is to "prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."[112]  The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.[113]  Bankruptcy courts have found that feasibility is established where a debtor has "sufficient resources" to meet its obligations under a liquidating plan, including its "obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Cases."[114]  Other courts have said that, to demonstrate that a liquidating plan is feasible, a plan proponent need only show that "the successful performance of [the plan's] terms is not dependent or contingent upon any future, uncertain event."[115]

86.     Here, the Plan is feasible.  The Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code by providing for a clear path to emergence from these Chapter 11 Cases and the ability of the Debtors to satisfy their obligations under the Plan.  As explained in the Tepner Declaration, the Plan and the transactions contemplated therein will provide sufficient liquidity to pursue the Debtors' wind-down activity, pay all allowed administrative and priority claims (unless a holder has agreed to alternative treatment), and reflect

---

[111] *See Energy Res.*, 495 U.S. at 549; *Kane*, 843 F.2d at 649; *In re Am. Cap. Equip., LLC*, 688 F.3d at 156 (noting that section 1129(a)(11) "does not require a plan's success to be guaranteed"); and *In re Heritage Highgate, Inc.*, 679 F.3d at 142 (quoting *In re TCI 2 Holdings, LLC*, 428 B.R. at 148).

[112] *Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*), 761 F.2d 1374, 1382 (9th Cir. 1985); *In re Kreider*, No. 05-15018 (ELF), 2006 WL 3068834, at *5 (Bankr. E.D. Pa. Sept. 27, 2006).

[113] *See In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985), *aff'd sub nom. Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co.* (*In re U.S. Truck Co.*), 800 F.2d 581 (6th Cir. 1986).

[114] *In re Finlay Enters., Inc.,* No. 09-14873 JMP, 2010 WL 6580628, at *7 (Bankr. S.D.N.Y. June 29, 2010).

[115] *In re Heritage Org., L.L.C.*, 375 B.R. 230, 311 (Bankr. N.D. Tex. Aug. 31, 2007) (holding that the creation of a creditor trust with res consisting of estate cash and the proceeds of any future successful litigation in addition to a fixed trust governance mechanism qualified as feasible).

the most efficient and appropriate means of maximizing the value of the Debtors' estates.[116]  The Debtors project that all Allowed Priority Tax and Allowed Administrative Claims under the Plan will be satisfied as outlined in the Plan and Confirmation Order.

87.     The value of the Debtors' estates under the Plan includes, among other items:

- The Debtors' cash on hand as of the Effective Date;

- The value created by the monetization of the Net Distributable Assets; and

- The retention by the estate of certain Causes of Action.

88.     The Debtors project that the distributable value of the estate will be sufficient to satisfy all Allowed Priority Tax Claims and Allowed Administrative Claims consistent with the terms of the Plan and Confirmation Order.[117]  In addition, the Debtors and their advisors have carefully reviewed the filed Claims and assets and received input from the Debtors' management and employees who have extensive knowledge of the Debtors' assets and liabilities.

89.     Accordingly, the Amended Plan satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

**M.     All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)).**

90.     Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan."  Section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.

91.     The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article XII.D of the Plan provides that all fees due and payable pursuant to section 1930 of title 28 of the United States Code, including any interest accruing thereon, shall be paid by the Debtors (or

---

[116] *See* Whittman Decl. ¶¶ 7–9.

[117] *Id.*

the Disbursing Agent on behalf of each of the Debtors) on and after the Effective Date for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

### N.      No Remaining Retiree Benefits Obligations (§ 1129(a)(13)).

92.      Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.  The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).  Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

### O.      Sections 1129(a)(14) Through 1129(a)(16) Do Not Apply to the Plan.

93.      Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations.  Since the Debtors are not subject to any domestic support obligations, the requirements of section 1129(a)(14) of the Bankruptcy Code do not apply.[118]  Likewise, section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" as defined in the Bankruptcy Code.  Because none of the Debtors is an "individual," the requirements of section 1129(a)(15) of the Bankruptcy Code do not apply.[119]  Finally, each of the Debtors are a moneyed, business, or commercial corporation and therefore section 1129(a)(16) of the Bankruptcy Code, which provides that property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust be made in accordance with any applicable provisions of nonbankruptcy law, is not applicable to these Chapter 11 Cases.[120]

### P.      The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code.

94.      Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of

---

[118] *See* Tepner Decl. ¶ 52.

[119] *See id.*

[120] *See id.*

31703445.1

the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied. To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[121]

### 1. The Plan Is Fair and Equitable (§ 1129(b)(2)(B)(ii)).

95. A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[122] This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.

96. The Plan satisfies section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes are deemed to have rejected the Plan, the Plan is confirmable.[123] There are no Claims or Interests that are junior to the Term Loan Facility Claims and General Unsecured Claims that are receiving any recovery under the Plan before any Class that is senior in priority, nor is any Holder of a Claim or Interest receiving more than payment in full of its Claim or Interest. Accordingly, the Plan is "fair and equitable" with respect to all Impaired Classes of Claims and Interests and satisfies section 1129(b) of the Bankruptcy Code.

---

[121] *John Hancock*, 987 F.2d at 157 n.5; *In re Ambanc La Mesa L.P.*, 115 F.3d 650, 653 (9th Cir. 1997) ("the [p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that the [p]lan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired class that has not accepted the [p]lan.").

[122] *Bank of Am.*, 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,'§ 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").

[123] To the extent any rejecting class amends its vote and determines to accept the Plan, the Debtors will file an amended Voting Report to reflect such update.

2.      **The Plan Does Not Unfairly Discriminate with Respect to the Impaired Classes that Have Not Voted to Accept the Plan (§ 1129(b)(1)).**

97.     Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination.[124]   In general, courts have held that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so.[125]   A threshold inquiry to assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.

98.     Here, the Plan's treatment of the non-accepting Impaired Class (*i.e.*, the Deemed Rejecting Classes) is proper because all similarly situated Holders of Claims and Interests will receive substantially similar treatment and the Plan's classification scheme rests on a legally acceptable rationale.  Claims in the Deemed Rejecting Classes are not similarly situated to any other Classes, given their distinctly different legal character from all other Claims and Interests. The Plan's treatment of the Deemed Rejecting Classes is proper because no similarly situated class will receive more favorable treatment.  Furthermore, where the Plan provides differing treatment for certain Classes of Claims or Interests, the Debtors have a rational basis for doing so.

---

[124] *In re 203 N. LaSalle St. Ltd. P'ship*., 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am*., 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); In re Aztec Co., 107 B.R. 585, 589–91 (Bankr. M.D. Tenn. 1989) ("Courts interpreting language elsewhere in the Code, similar in words and function to § 1129(b)(1), have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

[125] *See Coram*, 315 B.R. at 349 (citing cases and noting that separate classification and treatment of claims is acceptable if the separate classification is justified because such claims are essential to a reorganized debtor's ongoing business); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination); *Ambanc La Mesa*, 115 F.3d at 656–57 (same); *Aztec Co.*, 107 B.R. at 589–91 (stating that plan which preserved assets for insiders at the expense of other creditors unfairly discriminated); *In re Johns-Manville Corp*., 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (stating that interests of objecting class were not similar or comparable to those of any other class and thus there was no unfair discrimination).

99.     For the reasons set forth above, the Plan does not discriminate unfairly in contravention of section 1129(b)(1) of the Bankruptcy Code and the Plan may be confirmed notwithstanding the rejection by the deemed rejection by the Deemed Rejecting Classes.

**Q.     The Debtors Complied with Sections 1129(d) and (e) of the Bankruptcy Code.**

100.     Section 1129(d) of the Bankruptcy Code provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[126]  The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.  Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

101.     Lastly, section 1129(e) of the Bankruptcy Code is inapplicable because the Chapter 11 Cases are not a "small business case."[127]  Thus, the Plan satisfies the Bankruptcy Code's mandatory confirmation requirements.

**R.     Modifications to the Plan.**

102.     Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Further, when the proponent of a plan files the plan with modifications with the court, the plan as modified becomes the plan.  Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.  Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed

---

[126] *See* 11 U.S.C. § 1129(d).

[127] *See* 11 U.S.C. § 1129(e).

accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[128]

103.    The Debtors previously revised the Plan with certain technical modifications mainly to incorporate comments from stakeholders and to reflect the Court's requested changes with respect to "opt-in" ballots.  Following the launch of the solicitation process, the Debtors (i) filed a second amended Plan, which reflects certain modifications to resolve formal and informal comments to the Plan by parties in interest and to set forth the terms agreed to in the Global Settlement Term Sheet, including with respect to the releases contained therein (the "Initial Modifications"), and (ii) will file a third amended Plan, which will reflect certain modifications to resolve formal and informal comments to the Plan by the U.S. Trustee and other changes (the "Subsequent Modifications" and, together with the Initial Modifications, the "Modifications").  The Modifications do not adversely affect the treatment of creditors and stakeholders and thus comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Nor do any of the Modifications revise the classification structure of the Plan or the treatment of any particular classes.  Accordingly, the Debtors submit that no additional solicitation or disclosure is required on account of the Modifications, and that such Modifications should be deemed accepted by all creditors that previously accepted the Plan.

### S.    Good Cause Exists to Waive the Stay of the Confirmation Order.

104.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale or lease of

---

[128] *See, e.g.*, *In re Federal–Mogul Global Inc.*, 2007 Bankr. LEXIS 3940, *113 (Bankr. D. Del. 2007) (additional disclosure under section 1125 is not required where plan "modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor"); *Beal Bank, S.S.B. v. Jack's Marine, Inc.*, (*In re Beal Bank, S.S.B.*), 201 B.R. 376, 380 n. 4 (E.D. Pa. 1996) (further disclosure and solicitation not required under section 1127(b) and (c) where modifications to the plan were immaterial); *In re Global Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation); *In re Burns & Roe Enters., Inc., No. 08-4191 (GEB)*, 2009 WL 438694, at *23 (D. N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code. Each rule also permits modification of the imposed stay upon court order.

105. The Debtors submit that good cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Confirmation Order will be effective immediately upon its entry.[129] As noted above, these Chapter 11 Cases and the related transactions have been negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information. Additionally, each day the Debtors remain in chapter 11 they incur significant administrative and professional costs.[130]

106. Based on the foregoing, the Debtors request a waiver of any stay imposed by the Bankruptcy Rules so that the Confirmation Order may be effective immediately upon its entry.

## <u>Conclusion</u>

107. For all of the reasons set forth herein and in the Declarations, and as will be further shown at the Confirmation Hearing, the Debtors respectfully request that the Court confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Proposed Confirmation Order and granting such other and further relief as is just and proper.

*[Remainder of page intentionally left blank.]*

---

[129] *See, e.g.*, *In re Source Home Entm't, LLC*, No. 14-11553 (KG) (Bankr. D. Del, Feb. 20, 2015) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re GSE Envtl., Inc.*, No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 23, 2013) (same); *In re Gatehouse Media, Inc.*, No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013) (same); *In re Geokinetics Inc.*, No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) (same).

[130] *See* Tepner Decl. ¶ 62.

Dated: May 31, 2024
       Wilmington, Delaware

*/s/ Timothy R. Powell*

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Joseph Barry (Del. Bar No. 4221)
Joseph M. Mulvihill (Del. Bar No. 6061)
Timothy R. Powell (Del. Bar No. 6894)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jbarry@ycst.com
      jmulvihill@ycst.com
      tpowell@ycst.com

*Co-Counsel to the Debtors and Debtors in
Possession*

**SIDLEY AUSTIN LLP**
Stephen E. Hessler (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Margaret R. Alden (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: shessler@sidley.com
      pventer@sidley.com
      malden@sidley.com

Ryan L. Fink (admitted *pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: ryan.fink@sidley.com

Julia Philips Roth (admitted *pro hac vice*)
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501
Email: julia.roth@sidley.com

*Counsel to the Debtors and Debtors in
Possession*

31703445.1